# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA<br><br>*Plaintiffs,*<br><br>v.<br><br>**HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE**<br><br>*Defendants.* | CASE NO. 1:22-cv-10202-JGD<br><br>**LEAVE TO FILE EXCESS PAGES GRANTED ON MAY 31, 2022** |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNTS ONE THROUGH NINE OF PLAINTIFFS' COMPLAINT

 /s/ *Victoria L. Steinberg*
Victoria L. Steinberg, BBO #666482
Julien M. Mundele, BBO #694001
Rachel C. Hutchinson, BBO #696739
TODD & WELD LLP
One Federal Street
Boston, MA  02110
Telephone:     (617) 624-4714
Facsimile:      (617) 624-4814
vsteinberg@toddweld.com
jmundele@toddweld.com
rhutchinson@toddweld.com

Martin F. Murphy, BBO #363250
Madeleine K. Rodriguez, BBO #684394
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mmurphy@foleyhoag.com
mrodriguez@foleyhoag.com

*Attorneys for Defendant*
*President and Fellows of Harvard College*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

    Plaintiff Amulya Mandava ................................................................................ 4

    Plaintiff Margaret Czerwienski ........................................................................ 6

    Plaintiff Lilia Kilburn ....................................................................................... 7

    Plaintiffs' Complaints and The ODR Investigations ...................................... 8

    Sanctions Issued Against Comaroff ............................................................... 10

STANDARD OF REVIEW ............................................................................................. 11

ARGUMENT ................................................................................................................... 11

I.      **Counts One, Two, and Three, Alleging Violations of
Title IX, Must Be Dismissed** ........................................................................ 11

      A.    Count One, Alleging a Title IX Violation Based
on Deliberate Indifference to a Sexually Hostile
Educational Environment, Must Be Dismissed ...................................... 12

               i.    Count One is Barred by the Statute of Limitations .............................. 12

                      a.  Mandava and Czerwienski's Title IX Hostile
Environment Claim Accrued, at the latest, in
2017 and Count One is Thus Time-Barred .................................. 13

                      b.  The Relevant Conduct Alleged by
Kilburn Occurred Outside of the
Limitations Period ...................................................................... 14

                      c.  Later Allegations Concerning Kilburn Do Not
Render Count One Timely ........................................................ 15

               ii.   Count One Must Be Dismissed Pursuant to
Fed. R. Civ. P. 12(b)(6) ...................................................................... 18

      B.    Count Two, Alleging Retaliation in Violation of Title IX,
Must Be Dismissed ............................................................................... 22

i.      Under Title IX, Harvard is Only Potentially Liable for Its Own Allegedly Retaliatory Actions, and Plaintiffs Do Not Allege Retaliatory Action By Harvard ................................... 23

ii.     The Allegations of Comaroff's Retaliatory Conduct Against Mandava and Czerwienski Are Not Timely ........................... 24

iii.    The Allegations of Others' Retaliatory Conduct Do Not State a Claim for Actionable Retaliation Against Harvard Under Title IX .................................................. 25

iv.    Comaroff's Allegedly Retaliatory Conduct Toward Kilburn is Not Actionable Under Title IX ........................... 26

C.   Count Three, Alleging Gender Discrimination Under Title IX, Must Be Dismissed ................................................. 27

II.    **M.G.L. ch. 214, § 1C Independently Bars Plaintiffs' MCRA and MERA Claims (Counts Four and Six)** ........................... 28

III.   **The Statutory Claims (Count Four, Five, and Six) Must Be Dismissed For the Independent Reason That They Are Time-Barred and Fail to State a Claim** ........................................................ 29

IV.   **Count Seven, Alleging Negligent Hiring & Supervision, Must Be Dismissed Because it is Untimely** .......................... 31

V.    **Count Eight, Alleging Breach of Contract, Must Be Dismissed For Failure to State a Claim** ...................................... 32

VI.   **Count Nine, Alleging Breach of the Implied Covenant of Good Faith and Fair Dealing, Must Be Dismissed** ........................ 34

CONCLUSION ............................................................................... 35

**Introduction**

Harvard has in place robust and thorough policies and procedures reflecting its steadfast commitment to maintaining a healthy and supportive educational and work environment in which all members of the Harvard community can flourish and do their best work and no member  is excluded from participation in, denied the benefits of, or subjected to discrimination in any University program or activity as a result of harassment or discrimination.  Sexual harassment and other forms of gender bias flatly contradict Harvard's values and violate the policies applicable to all members of the Harvard community.  Harvard has developed and implemented its robust policies and procedures, as well as wide-reaching resources, in order to prevent sexual harassment in all of its forms, thoroughly address allegations of impropriety, support members of the community who have been impacted by misconduct, and sanction those who violate its policies and fundamental community norms.  Included among those policies and procedures are the Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts and Sciences (the "FAS Policy and Procedures"), which adopts the Harvard University Sexual and Gender-Based Harassment Policy ("the University Policy") (together, "Harvard's Title IX Policy").[1]  In accordance with Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§1681–1688 ("Title IX"), the Policy prohibits "unwelcome conduct of a sexual nature . . . sufficiently severe, persistent, or pervasive" to interfere with a student's education or use of the school's programs or activities.  *See* University Policy at 1-2; 20 U.S.C. § 1681 ("Title IX");

---

[1] The University Policy and the FAS Policy and Procedures are available at https://odr.harvard.edu/. On a motion to dismiss, a court may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *accord Clorox Co. Puerto Rico v. Proctor and Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *Perkins v. City of Attleboro*, 969 F.Supp.2d 158, 164-165 (D. Mass. 2013) (accepting Magistrate Recommendations including consideration of letter on motion to dismiss because of "repeated references to the letter in [the] Complaint" and because "the letter is central to [plaintiff's] claim"); *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 191 (W.D.N.Y. 2013) (considering defendant university's standards of student conduct in granting motion to dismiss in action for Title IX and negligence action where documents "were incorporated by reference [in the complaint] and since [the plaintiff] obviously possessed them and relied on them in drafting [the complaint]").  The Complaint invokes the University Policy and FAS Policy and Procedures throughout its factual allegations and claims.  *See, e.g.,* Complaint ¶¶ 14 n.9, 50-51, 55, 139, 152, 248-55, 257, 262.  Accordingly, they are incorporated by reference and may properly be considered by the Court at this stage.

Compl. at ¶ 14, n.9.  Harvard holds as a core value its commitment to providing all community

members a learning environment that supports their well-being.  Harvard's policies are consistent

with the requirements set forth in Title IX, which, as a general matter, obligate recipients of federal

funding to ensure that they are not "deliberately indifferent" to complaints of harassment.

It is settled law that disagreement with the outcome of a Title IX investigation does not

provide a basis for the type of legal claims raised in Plaintiffs' Complaint.  Rather, a university has

broad discretion to address sexual harassment complaints within the bounds of Title IX and will only

be liable if Plaintiffs meet the "stringent standard" of showing that the university was "deliberately

indifferent" to their complaints.  Plaintiffs, however, can point to no case successfully advancing

allegations under Title IX where a university has undertaken the type of searching and thorough

process followed by Harvard here.[2]

Plaintiffs in this case are three current Harvard graduate students in the Anthropology

Department.  Plaintiffs claim that when they raised concerns about Harvard faculty member John

Comaroff, Harvard "ignored" them.  Compl. ¶ 64.  The Complaint itself demonstrates that this is

flatly untrue.  Although it recounts only a portion of Harvard's extensive response to Plaintiffs'

concerns, the Complaint makes clear that Harvard repeatedly took appropriate action, culminating in

four thorough investigations, interim measures provided to Plaintiffs, and sanctions issued against

Comaroff.[3]  In responding to Plaintiffs' concerns, Harvard—like all universities complying with Title

IX—simultaneously attended to, among other requirements under state and federal law: its

---

[2] To the contrary, the Harvard Title IX Policies that Plaintiffs reference as applicable in this case is substantially the same as the Harvard policy found not deliberately indifferent by this Court.  *See Leader v. President & Fellows of Harvard Coll.*, 2018 WL 3213490, at *4 (D. Mass. June 29, 2018) (granting summary judgment for Harvard because its investigation of sexual harassment and other misconduct did not constitute "deliberate indifference," including because its alleged failure to initiate an investigation "was not an unjustified delay, but was rather justified by [the complainant's] choice not to file a complaint at the time" she initially reported allegedly harassing behavior to Harvard).  The Court in *Leader* also rejected that plaintiff's conclusory allegations that Harvard had a "'policy of indifference' towards sexual misconduct on campus."  *Id.* at *5.  *Compare* Compl. ¶ 17 (alleging a "policy of indifference").

[3] Because this is a motion to dismiss, the University recites any factual allegations in the Complaint for purposes of this motion only, and does not contest their accuracy at this stage.

commitment to ensuring a safe community; the agency of complainants in making certain decisions about how and when to raise complaints; and the provision of due process to all participants in its processes.  In addition, Title IX-related policies and procedures at Harvard (as at all institutions) evolve over time, and Harvard constantly endeavors to improve its policies and procedures, including by seeking input from the Harvard community in the review and improvement of its processes.  However, Plaintiffs' case cannot proceed where it is grounded in their disappointment at the outcome of the investigations, their desire for Harvard to implement certain processes they believe are superior to those in place, or their preference for Harvard to impose different sanctions in this case.

Each and every one of the Counts in Plaintiffs' Complaint should be dismissed.  In sum:

- Count One alleges that Harvard is liable for a violation of Title IX based on Harvard's alleged deliberate indifference to a sexually hostile educational environment created by Comaroff.  This Count should be dismissed because it is barred by the statute of limitations and because the Complaint itself demonstrates that Harvard's actions did not come close to satisfying the First Circuit's exacting requirements to state a claim for deliberate indifference under Title IX.

- Count Two seeks to hold Harvard liable for purported retaliation by Comaroff and other Harvard faculty members.  This Count should be dismissed because Plaintiffs do not allege that Harvard retaliated, but rather seek to hold Harvard strictly liable for the purported retaliation of Comaroff and others.  There is no such cause of action under Title IX.  Moreover, even if Harvard could be held liable for the alleged retaliation of others, the alleged conduct does not constitute retaliatory action under Title IX, and is barred by the statute of limitations in any event.

- Count Three alleges a violation of Title IX based on disparate treatment by Harvard based upon Plaintiffs' gender.  However, Plaintiffs assert no factual allegations linking the conduct of which they complain to any gender bias.  Instead, they rely on conclusory generalizations, which are insufficient to state a claim under Title IX.

- Counts Four, Five, and Six, alleging a violation of the Massachusetts Civil Rights Act ("MCRA"), sexual harassment under Mass. Gen. Laws Ch. 214, § 1C, and a violation of the Mass. Equal Rights Act ("MERA"), must be dismissed because they are time-barred, and fail to state a claim.  In addition, Chapter 214 § 1C, bars the other two statutory claims.

- Count Seven, alleging negligent hiring and supervision, must be dismissed because it is time-barred.  Comaroff was hired in 2012.  Plaintiffs allege that he engaged in misconduct in 2017, and that they were aware of the misconduct, made Harvard aware, and experienced negative effects as a result of Comaroff's conduct and the alleged lack of

response by Harvard.  Accepting the allegations in the Complaint as true for purposes of this motion, as the Court must, Plaintiffs' negligent supervision claims accrued, at the latest, in 2017 and the statute of limitations has long since run.

- Count Eight, alleging a breach of contract, fails because Plaintiffs do not allege with the requisite particularity what purported agreement(s) and term(s) were breached.  Where certain alleged promises are recounted in the Complaint, they are precisely the type of generalized statements of policy that courts in this jurisdiction do not permit Plaintiffs to enforce against universities.

- Likewise, Count Nine, alleging a breach of the covenant of good faith and fair dealing, does not allege any cognizable terms that were allegedly violated, nor does it assert facts to support conclusory allegations of "bad faith."  Thus, this claim must be dismissed.[4]

## BACKGROUND

The Complaint carefully elides certain relevant acts and dates, creating significant misimpressions and misleadingly suggesting a lack of action on Harvard's part.  When read carefully, however, the Complaint and its incorporated documents set forth the following allegations:

## Plaintiff Amulya Mandava

Mandava is a doctoral student in Harvard's Anthropology Department.  Complaint ("Compl.") ¶ 21.  She enrolled in 2012 and has worked as a teaching fellow at Harvard.  *Id.*  Mandava alleges that Comaroff engaged in a single act of wrongdoing toward her at Harvard: he purportedly stated to her, during a conversation on October 13, 2017, that people who spread rumors about him would not get jobs.  *See* Compl. ¶¶ 56-59.  Mandava did not report this comment or file a formal complaint at the time.  *Id.* ¶ 65.

---

[4] Harvard is filing, simultaneously with this motion, a Motion for Summary Judgment seeking dismissal of Count Ten (alleging a violation of plaintiff Kilburn's privacy rights).  Cases in this jurisdiction support the view that a partial motion to dismiss stays the requirement to answer the remaining counts.  *See Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. CIV.A. 12-11874-DJC, 2013 WL 3335022, at *6 (D. Mass. July 1, 2013), *aff'd sub nom. Emps. Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25 (1st Cir. 2014), citing Fed.R.Civ.P. 12(a)(4) and *Tingley Sys., Inc. v. CSC Consulting, Inc.,* 152 F.Supp.2d 95, 122 (D. Mass. 2001) ("a partial motion to dismiss suspends the time to answer the claims not subject to the motion"); *accord Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001).  Should the Court disagree, Harvard respectfully moves to extend the deadline for filing an Answer on Count Ten until after the Court rules on the later of this Motion to Dismiss or the Motion for Summary Judgment on Count Ten filed by Harvard today.

Dr. Seth Avakian, a Program Officer for Title IX and Professional Conduct at Harvard, filed a Complaint with Harvard's Office of Dispute Resolution ("ODR")[5] on Mandava's behalf on May 18, 2020, alleging that the October 13, 2017 statement violated Harvard's Title IX Policy. *Id.* ¶ 103[6]; Ex. A (Mandava Final Report) at 1. Mandava filed her own ODR Complaint on July 31, 2020, which superseded Avakian's complaint. Compl. ¶ 123; FAS Policy & Procedures at 21-22.

During the course of its investigation of Mandava's complaint, ODR interviewed nineteen witnesses, including each of the eight witnesses identified by Mandava. *See* Ex. A at 6. ODR issued its Final Report in Mandava's case on August 27, 2021. Compl. ¶ 144. Attached hereto as Exhibit A is a copy of ODR's Final Report of its investigation of Mandava's Complaint (Mandava Final Report).[7] The Mandava Final Report was 75 pages long and attached 24 exhibits. *See* Ex. A, *passim*. ODR concluded as to Mandava's allegation that the evidence did not support a conclusion that Comaroff had violated Harvard's Title IX Policy. Compl. ¶ 144; Exhibit A. Mandava disagreed with the outcome of that Final Report. *See id.* ¶¶ 144-146. She appealed pursuant to the Policies, based on three alleged procedural violations. The appeal was denied. *Id.* ¶ 148.

---

[5] ODR is a neutral body that impartially investigates complaints of sexual harassment and/or other sexual misconduct against students, staff, and faculty. ODR investigations are handled by professional investigators who work together with ODR staff. *See* Harvard University Office Of Dispute Resolution, *About Us*, available at https://odr.harvard.edu/about-us. ODR investigates complaints using a preponderance of the evidence standard, as Title IX requires. FAS Policy and Procedures at 25.

[6] *See also* FAS Policy and Procedures at 22. The Procedures allow a third party, designated a "Reporter," to file a complaint on behalf of a potential complainant. ODR then contacts the individual identified as the potential complainant to gather information and determine whether they want to participate in the investigation. *Id*. at 22-23.

[7] As with the University and FAS Policy and Procedures, Plaintiffs incorporate the ODR Final Reports into their Complaint by invoking and relying upon them repeatedly. *See, e.g.,* Complaint ¶¶ 103, 123, 125, 127, 132, 134-48, 150, 170. These reports are therefore "incorporated into the complaint by reference," and the court may properly consider them on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 191 (W.D.N.Y. 2013) (considering university's written findings in granting motion to dismiss in action for Title IX and negligence action where documents "were incorporated by reference [in the complaint] and since [the plaintiff] obviously possessed them and relied on them in drafting [the complaint]").

**Plaintiff Margaret Czerwienski**

Plaintiff Margaret Czerwienski began her studies in Harvard's Anthropology Department in 2014, and "has worked as a Ph.D. student and teaching fellow." *Id.* ¶ 19.  Czerwienski alleges that Comaroff engaged in a single instance of misconduct related to her.  Compl. ¶¶ 10, 56-60.  She does not allege that she was present when he engaged in that conduct.  *Id.*  Rather, Czerwienski alleges that on October 13, 2017, Comaroff told Mandava that Czerwienski was spreading rumors about him, and that people who spread rumors about him had trouble getting jobs. *Id.* ¶¶ 57-60.

Czerwienski alleges that on October 16, 2017, she told Avakian, a Program Officer for Title IX and Professional Conduct at Harvard, about Comaroff's alleged conversation with Mandava.  *Id.* ¶ 63.  Czerwienski did not file a formal report at this time.  *Id.*  Czerwienski and Mandava separately spoke to several individuals in the Department about concerns regarding Comaroff, and some of those individuals spoke to Avakian.  *Id.* ¶¶ 45, 48, 49; 99, 100.  Avakian filed a Complaint with Harvard's ODR on Czerwienski's behalf on May 18, 2020.  *Id.* ¶ 103; Exhibit B.  Czerwienski filed her own ODR Complaint on July 15, 2020, which superseded Avakian's complaint.  *Id.* ¶ 123.

During the course of its investigation of Czerwienski's complaint, ODR interviewed eighteen witnesses, including the four witnesses suggested by Czerwienski.  *See* Ex. B at 5-6.  ODR issued its Final Report in Czerwienski's matter on August 27, 2021.  *Id.* ¶ 144.  Attached hereto as Exhibit B is a copy of ODR's Final Report of its investigation of Czerwienski's Complaint (Czerwienski Final Report).[8]  The Czerwienski Final Report was 47 pages long and attached 21 exhibits.  ODR concluded that the evidence did not support a finding that Comaroff had violated Harvard's Title IX Policy as to Czerwienski's allegation.  Compl. ¶ 144.  Czerwienski disagreed with the outcome of that Final Report.  *See id.* ¶¶ 144-146.  She filed an appeal pursuant to the Policies, based on two alleged procedural violations.  That appeal was denied.  *Id.* ¶ 148.

---

[8] As explained above, Plaintiffs incorporate the ODR Final Reports into their Complaint by invoking and relying upon them repeatedly, and these reports are therefore "incorporated into the complaint by reference." *Tellabs*, 551 U.S. at 322.

**Plaintiff Lilia Kilburn**

Plaintiff Lilia Kilburn joined Harvard's Anthropology Department in 2017.  *Id.* ¶ 20.  She

alleges that the earliest misconduct toward her by Comaroff took place in February 2017, before she

began her studies at Harvard.  *Id.* ¶ 71.  Kilburn alleges that Comaroff engaged in the following

wrongful conduct toward her: (1) in February 2017, before Kilburn joined Harvard, Comaroff

allegedly hugged and kissed her without her consent, *id.* ¶ 71; (2) on or about August 2017, he

allegedly made a comment about her potentially being raped and killed if she went to South Africa

because of her sexual orientation, *id.* ¶ 74; (3) on or about September 24, 2017, he allegedly hugged

and kissed her on the cheek and mouth, and placed his hand uncomfortably on her lower back, *id.* ¶

77; and (4) in February 2018, he allegedly squeezed her thigh in public, *id.* ¶ 88.

Kilburn alleges that she first reported misconduct toward her by Comaroff in May 2019.  *Id.* ¶

94.  She did not file an ODR complaint at that time.  She alleges that she did, however, speak to

several Harvard faculty members about her experiences, and that some of the faculty, in turn, relayed

information to Avakian, a Harvard Program Officer for Title IX and Professional Conduct.  *Id.* ¶ 100.

On May 18, 2020, despite Kilburn not filing an ODR complaint, Avakian filed an ODR complaint as

a Reporter, raising the allegations against Comaroff involving Kilburn.  *Id.* ¶ 103.  Kilburn filed her

own ODR complaint on July 16, 2020, superseding Avakian's complaint.  *Id.* at 123.[9]

During the course of its investigation of Kilburn's complaint, ODR interviewed fifteen

witnesses, including eight identified by Kilburn.  ODR issued its Final Report in Kilburn's matter on

August 27, 2021, a copy of which is attached hereto as Exhibit C (Kilburn Final Report). [10]  The

Kilburn Final Report is 78 pages long and attaches 26 exhibits.  ODR concluded that evidence

---

[9] The Complaint incorrectly states that Kilburn filed her complaint on May 18, 2020.  However, as set forth in Exhibit C (Kilburn Final Report), *infra*, at 1, Kilburn did not file her own complaint until July 16, 2020.  *See infra*, fn. 11 (where Complaint contradicts incorporated document, the incorrect allegations are not to be taken as true).

[10] Again, as explained above, Plaintiffs incorporate the ODR Final Reports into their Complaint by repeatedly invoking and relying upon them, and they are therefore "incorporated into the complaint by reference." *Tellabs*, 551 U.S. at 322.

supported that Comaroff had violated the FAS Policy and Procedures as to the August 2017 statement concerning what might happen to her in Africa.  *Id.* at 1-2; Compl. ¶ 138.  It also concluded, however, that there was insufficient evidence to conclude that Comaroff had violated the FAS Policy and Procedures as to the additional alleged conduct.  Ex. C (Kilburn Final Report) at 19-32; 53-69.  Kilburn appealed pursuant to the Policies, and the appeal was denied.  Compl. ¶ 148.

**Plaintiffs' Complaints and The ODR Investigations**

The Complaint obfuscates the relevant timeline concerning Plaintiffs' complaints about Comaroff to individuals at Harvard with authority to institute corrective measures.  Again, however, when read carefully, and even in the light most favorable to Plaintiffs, the Complaint's allegations are as follows:

The first complaint to Harvard's Program Officer for Title IX and Professional Conduct  by any Plaintiff occurred on October 16, 2017, and concerned the comment made by Comaroff to Mandava three days earlier.  *Id.* ¶ 63.  The next time any Plaintiff reported to the Program Officer for Title IX and Professional Conduct was in May 2019.  *Id.* ¶¶ 12, 94.  Plaintiffs allege that in that month, Kilburn told the Chair of the Anthropology Department and another professor in that department of Comaroff's alleged harassment of her.  Plaintiffs further allege, on "information and belief," that those two professors spoke to Avakian.  *Id.* ¶ 100.  Avakian filed ODR complaints to seek redress for all three Plaintiffs in May 2020.  Ex. A (Mandava Final Report) at 1, Ex. B (Czerwienski Final Report) at 1 n.1 and Exhibit C (Kilburn Final Report) at 1.[11]  Plaintiffs filed their own ODR complaints after that, which superseded Avakian's complaints.  *Id.*

---

[11] Plaintiffs allege that "Harvard" did not "fil[e] its own formal complaint."  Compl. ¶ 162.  In fact, Harvard's Program Officer for Title IX and Professional Conduct Seth Avakian did exactly this.  Although allegations must be taken as true for purposes of a motion to dismiss, when a document incorporated into a Complaint "contradicts an allegation in the complaint, the document trumps the allegation."  *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 450 (D. Mass. 2018) (citing *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

As noted above, ODR is the administrative body at Harvard which impartially investigates complaints of sexual harassment and/or other sexual misconduct against students, staff, and faculty.[12] ODR operates under the Office of the Provost, working in partnership with the University's Office for Gender Equity and Title IX Resource Coordinators.[13]

In the course of the investigations into Comaroff's conduct, ODR interviewed at least 52 different witnesses (some multiple times) and reviewed thousands of pages of exhibits. *See generally* Exs. A (Mandava Final Report), B (Czerwienski Final Report), and C (Kilburn Final Report). Consistent with Title IX and Harvard's Title IX Policy, each complainant and the respondent were interviewed multiple times and provided abundant opportunities to share their perspectives (with the complainants each interviewed at several stages, including upon initial review of the complaint, again after the respondent's response to the complaint, and once more, prior to the investigation's conclusion for a review of the evidence. *Id.* In addition, all complainants and the respondent were invited, pursuant to the Policies: to identify witnesses; to review all evidence submitted by a party and all evidence upon which ODR might rely, that was submitted by a third party; to review and provide comment on ODR's Draft Final Report prior to its finalization; to select a personal representative to attend all ODR interviews with them; and to appeal any decision. *Id.*

ODR issued its Final Reports in the three investigations on August 27, 2021, concluding that there was insufficient evidence to conclude that Comaroff violated Harvard's Title IX Policy as to Mandava's allegation or Czerwienski's allegation, but that Comaroff violated Harvard's Title IX Policy as to an allegation raised by Kilburn.

Because ODR determined that Mandava had not engaged in protected conduct, a required element of a Title IX retaliation claim, ODR did not proceed to make factual findings concerning

---

[12] *See* Harvard University Office of Dispute Resolution, *About Us*, available at https://odr.harvard.edu/about-us.

[13] *Id.*

certain allegations concerning Comaroff's conduct that, if true, would implicate the FAS Professional Conduct Policy.  Accordingly, Harvard directed a third-party investigator to review whether Comaroff had violated a separate policy, the FAS Professional Conduct Policy.  That investigation concluded he had violated the policy as to the allegation involving Mandava.  Compl. ¶¶ 150-151.

ODR's role does not include the issuance of sanctions.  *See* University Policies at 1 ("Violations of this Policy may result in the imposition of sanctions up to, and including, termination, dismissal, or expulsion, *as determined by the appropriate officials at the School or unit*.") (emphasis added); FAS Policy & Procedures at p. 27, Section VI(D)(xi) ("The administration of discipline in cases against FAS Faculty is subject to the authority of the Dean of the FAS or his or her designee").

**Sanctions Issued Against Comaroff**

Harvard issued sanctions against Comaroff related to the finding that he had violated the Professional Conduct Policy as to one allegation, and Harvard's Title IX Policy as to another. Compl. ¶¶ 152-153.  Those sanctions included:

- o Placing Comaroff on unpaid leave for the Spring 2022 semester;
- o A prohibition against teaching required courses through at least the 2022-23 academic year;
- o A prohibition against taking on additional advisees through at least the 2022-23 academic years; and
- o A prohibition against chairing dissertation committees through at least the 2022-23 academic years.

*See id.* ¶¶ 152, 153.[14]

[14] *See also* https://www.thecrimson.com/article/2022/1/21/comaroff-unpaid-leave/.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a party must allege a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The First Circuit has developed a two-stage process for assessing whether a complaint states a plausible claim. First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019). Second, the Court "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I.      Counts One, Two, and Three, Alleging Violations of Title IX, Must Be Dismissed.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). That provision is enforceable through an implied private right of action under "certain limited circumstances." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639-40, 643 (1999). Plaintiffs bring three counts against Harvard under Title IX, each asserting a different theory of liability. Count One alleges that Harvard exhibited deliberate indifference to a sexually hostile educational environment created by Comaroff. Compl. ¶¶ 177-189. Count Two seeks to hold Harvard liable for purported retaliation by Comaroff

11

and other Harvard faculty members.  *Id.* ¶¶ 190-199.  Count Three alleges disparate treatment based

upon Plaintiffs' gender.  *Id.* ¶¶ 200-210.  As explained below, each of these counts is both barred by

the statute of limitations and cannot proceed for the independent reason that they fail to state a claim.

### A.    Count One, Alleging a Title IX Violation Based on Deliberate Indifference to a Sexually Hostile Educational Environment, Must Be Dismissed.

In Count One, Plaintiffs contend that Harvard is liable for a violation of Title IX based on

deliberate indifference to the creation of a sexually hostile educational environment.  This claim must

be dismissed both because it is untimely and because it fails to state a claim.

#### i.    Count One is Barred by the Statute of Limitations

Title IX does not contain its own statute of limitations.  Courts in this District therefore apply

Massachusetts' three-year tort statute of limitations to Title IX claims.  *See, e.g.*, *LeGoff v. Trustees of

Boston Univ.*, 23 F. Supp. 2d 120, 127 (D. Mass. Sept. 28, 1998); Mass. Gen. Laws c. 260, § 2A.  The

standard rule is that accrual occurs "when the plaintiff has a complete and present cause of action."

*Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotations omitted).[15]

In this context, a Title IX claim based on deliberate indifference to a sexually hostile

educational environment must be brought within three years of the date "when, despite their

knowledge of the abuse at the school, the school administrators failed to take corrective actions."

*Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 439 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014);

*see also Garrett v. Ohio State Univ.*, No. 2:18-CV-692, 2021 WL 7186147, at *5 (S.D. Ohio Sept. 22,

2021) (Title IX claims accrued when plaintiff was deprived of "access to the educational

opportunities or benefits provided by" the university because of "post-actual-knowledge harassment

by [physician employed by university] (which harassment would not have happened but for the clear

---

[15] *See, e.g.*, *Garrett v. Ohio State Univ.*, No. 2:18-CV-692, 2021 WL 7186147, at *3 (S.D. Ohio Sept. 22, 2021) (applying standard accrual rule to Title IX claims); *Forrester v. Clarenceville Sch. Dist.*, 537 F. Supp. 3d 944, 950-54 (E.D. Mich. 2021) (same); *Doe v. Nat'l Ramah Comm'n, Inc.*, No. 16-CV-6869 (NSR), 2018 WL 4284324, at *6 (S.D.N.Y. Sept. 7, 2018) (same).

unreasonableness of [the university's] response")).  The instant Complaint was filed on February 8, 2022.  Accordingly, any claims that accrued before February 8, 2019 are time-barred.  As explained below, Plaintiffs were on notice as to the alleged facts underlying their Title IX hostile environment claim long before that date, and therefore the claim is time-barred.

> ### a.  Mandava and Czerwienski's Title IX Hostile Environment Claim Accrued, at the latest, in 2017 and Count One is Thus Time-Barred.

 As detailed above, the Complaint alleges a single instance of misconduct by Comaroff toward Mandava.  She alleges that on October 13, 2017, Comaroff retaliated against her and Czerwienski by threatening their careers because he believed they had been talking about him and his alleged sexual misconduct.  Compl. ¶ 181(a); *see also id.* ¶ 10 (alleging that Comaroff "summoned Ms. Mandava to his office and told her that he knew she and Ms. Czerwienski were warning others of his sexual misconduct" and threatened that they would have "trouble getting jobs"); *id.* ¶¶ 56-62 (same).  The Complaint alleges no other interactions between Mandava and Comaroff relevant to Count One.

The single allegation concerning Comaroff's alleged misconduct toward Czerwienski is more attenuated.  Indeed, Czerwienski's claim is based entirely on *Mandava's* October 13, 2017 interaction with Comaroff, *see* Compl. ¶¶ 10, 56-62, during which Czerwienski herself acknowledges she was not named but supposedly identifiable by his reference to a "person [he] hardly knew and had 'never been in a room alone with'"  *See* Ex. B. The Complaint does not allege *any* direct interaction between Czerwienski and Comaroff.  *See* Compl., *passim*.

Mandava and Czerwienski allege that the October 13, 2017 incident was reported to Harvard's Program Officer for Title IX and Professional Conduct three days after it occurred, on October 16, 2017.  *See* Compl. ¶ 63.  They allege that "on information and belief, Harvard ignored" the complaint.  They further allege that the Program Officer's response was insufficient, *see* Compl. ¶ 64, causing them to feel "rattled." *Id.* ¶ 67.  In the wake of the incident, Plaintiffs allegedly took a

number of steps to avoid Comaroff, change their academic focus, and decline to apply for a grant in his area of expertise. *Id.* ¶¶ 67-68. Mandava alleges that at the time, she "felt persistent anxiety" related to the October 13, 2017 incident. *Id.* ¶ 68. Plaintiffs allege that their academic careers were "upended," even in 2017. *Id.* ¶ 69. In Fall 2017, Mandava allegedly declined to speak with Kilburn about the October 13, 2017 conversation because she felt that Comaroff might "damage her career" if she did so. *Id.* ¶ 82.

Accordingly, Mandava and Czerwienski themselves contend they were well aware of the purported impact of the October 13, 2017 immediately after it occurred. Whether they knew the precise elements of a claim or not based on that impact at that time is not material to the timeliness analysis. *See Twersky v. Yeshiva Univ.,* 993 F. Supp. 2d 429, 440 (S.D.N.Y.), *aff'd,* 579 F. App'x 7 (2d Cir. 2014); *United States v. Kubrick*, 444 U.S. 111, 122 (1979). *See also Doe v. Town of Bourne,* No. CIV.A.02-11363-DPW, 2004 WL 1212075, at *11 (D. Mass. May 28, 2004) ("accrual for [Title IX] claims, which is governed by federal law, is determined by when the *plaintiff* knows or has reason to know of the injury on which the action is based"). Because Plaintiffs knew of the incidents and the injury at the latest in Fall 2017,[16] the statute of limitations ran on that claim in 2020. Accordingly, Count One must be dismissed as to Mandava and Czerwienski.

### b. The Relevant Conduct Alleged by Kilburn Occurred Outside of the Limitations Period.

Kilburn alleges that the first instance of misconduct by Comaroff toward her at Harvard occurred on August 27, 2017, and the most recent instance of purportedly actionable harassment pled in the Complaint allegedly took place in February and Fall 2018. *See* Compl. ¶¶ 87, 88 (alleging that

---

[16] The Complaint contains a number of conclusory statements which elide conduct and dates in such a way as to suggest that certain conduct occurred later than it did. *See, e.g.,* Compl. ¶ 181(c) (alleging that "From 2017 through 2021, Professor John Comaroff engaged in a pattern of sexual harassment and retaliation against Kilburn, which created a hostile educational environment."); *id.* ¶ 194(b) (alleging that from "2017 through 2022, Professors John and Jean Comaroff created a hostile education environment"). These conclusory statements do not rely on facts anywhere in the complaint suggesting actionable conduct apart from the specific incidents set forth in Section I.A.iii., *infra*, and do not therefore change the analysis regarding the applicable statute of limitations. *Id.*

in February 2018, Comaroff squeezed Kilburn's thigh, and that in Fall 2018, he repeatedly asked Kilburn to meet him alone off-campus for reasons unrelated to her work).  She alleges that Comaroff's actions between those two dates caused her to feel "disturbed," to avoid Comaroff, to decline to attend their weekly meetings, and to dress more conservatively.  *Id.* ¶ 79.  She alleges that in October and "fall" 2017, she sought "assistance from classmates and staff," as well as the Graduate Program Administrator in the Anthropology Department, *id.* ¶¶ 80-81, but they either did not "offer[] aid," or simply repeated language Kilburn believed was intended to defend Comaroff.  *Id.* ¶ 81.

Accordingly, Kilburn—like Mandava and Czerwienski—was aware of the purported injury arising out of Comaroff's actions well before February 2019, when the statute of limitations ran on this claim.  *See Garrett v. Ohio State Univ.*, No. 2:18-CV-692, 2021 WL 7186147, at *5 (S.D. Ohio Sept. 22, 2021) (S.D. Ohio Sept. 22, 2021) (collecting cases and quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)) (explaining that under Title IX "the injury is the sexual harassment or abuse such that the claim accrues the moment a plaintiff knows or has reason to know of the sexual harassment or abuse"); *accord Oullette v. Beaupre*, 977 F.3d 127, 136 (1ˢᵗ Cir. 2020).  Count One must therefore be dismissed as to Kilburn as well.

### c.  Later Allegations Concerning Kilburn Do Not Render Count One Timely.

In an attempt to save Count One claim from dismissal as to her, Kilburn attempts to sweep two additional, later-in-time allegations into the claim: she alleges (1) that in April 2019, Comaroff "repeatedly pressured" Kilburn to direct her forthcoming project to a topic in which he specialized which had never been Kilburn's area of focus and forbade Kilburn from working with her other advisor; and (2) that on April 26, 2019, Comaroff tried to enter a public, glassed-in waiting area of the Harvard Graduate Program Administrator's office, where Kilburn was located.  She claims that she held the door shut and he did not enter.  *See* Compl. at ¶¶ 89-91.  For the following reasons, neither of these allegations render Kilburn's claim regarding a sexually hostile environment timely.

First, the continuing violation doctrine is not available to Plaintiffs as a means to excuse their failure to timely file.  The United States Supreme Court has adopted the continuing violation doctrine for Title VII hostile environment claims, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), but neither that Court nor the First Circuit has addressed whether the continuing violation doctrine applies to Title IX claims.[17]  It should not.

Several federal courts have recognized that certain material differences between Title VII and Title IX suggest that it is inappropriate to apply the continuing violation doctrine under Title IX.  *See, e.g., Folkes v. New York Coll. Of Osteopathic Med. Of New York Inst. of Tech.*, 214 F. Supp. 2d 273, 288 (E.D.N.Y. 2002).  Put simply, the continuing violation doctrine is "a poor fit with the goals of Title IX." *Id.* at 288.[18]  "Title IX, like Title VI, 'condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.'" *Id.* (quoting *Gebser*, 524 U.S. at 286). "[T]hat contractual framework . . . 'distinguishes Title IX from Title VII, which is framed in terms not of a condition but of an outright prohibition,' and which applies to all employers, not just recipients of federal funds, and aims broadly to 'eradicate discrimination throughout the economy.'" *Id.* (quoting *Gebser*, 524 U.S. at 286–87).  "'[W]hereas Title VII aims centrally to compensate victims of discrimination,' and to 'make persons whole for injuries suffered through past discrimination,' Title IX 'focuses more on protecting individuals from discriminatory practices carried out by recipients of federal funds.'" *Id.* (quoting *Gebser*, 524 U.S. at 287). "*Gebser* shows the Supreme Court's reluctance to extend the reach of Title IX beyond that imposed by Congress," which "led the *Gebser* Court to impose the actual notice standard . . . , and [should] lead[] this court to question the advisability of applying the

---

[17] The Massachusetts Appeals Court has applied the continuing violation doctrine in a case involving claims under G.L. c. 151C and Title IX, but did so by relying heavily on Title VII case law with no analysis of the differences between Title IX and Title VII.  *See Morrison v. N. Essex Comm. Coll.*, 56 Mass. App. Ct. 784, 792-98 (2002).

[18] The Supreme Court has described "two principal objectives" of Title IX: "[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Gebser*, 524 U.S. at 286 (1998) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)).

16

oft-disfavored continuing violation exception to Title IX claims." *Id.* at 289.  Because the continuing

violation doctrine should not apply in this context, Plaintiffs may not escape dismissal based on the

statute of limitations by using later acts to "anchor" their claims.

      <u>Second</u>, even if the continuing violation doctrine did apply in this context, Plaintiffs do not

allege actionable conduct within the statute of limitations period that may serve as an "anchoring act."

When it applies, "[t]he continuing violation doctrine creates an equitable exception to the [limitations

period] when the unlawful behavior is deemed ongoing." *Provencher v. CVS Pharmacy, Div. of

Melville, Corp*., 145 F.3d 5, 14 (1st Cir. 1998) (affirming dismissal of a claim where plaintiff was

aware of actionable conduct but did not timely file).  In assessing whether the continuing violation

doctrine functions in a particular instance to sweep untimely claims into an actionable pattern that

encompasses timely conduct, "[t]he First Circuit, in evaluating federal sexual harassment claims, has

required that the timely acts be 'linked to the untimely acts by similarity, repetition or continuity.'"

*De Almeida v. Children's Museum*, No. CIV. A. 99-0901-H, 2000 WL 96497, at *3 (Mass. Super.

Jan. 11, 2000), quoting *Provencher*, 145 F.3d 5, 15 (1st Cir. 1998).  In *De Almeida*, the Court

recognized that "dark stares" by one person toward another within the statute of limitations period,

could not independently support an action for harassment, and were not "substantially related" to the

earlier, untimely, sexual harassment allegations.  *Id.*

      Likewise, in *Perez v. Horizon Lines, Inc.*, the plaintiff sought to salvage an otherwise

untimely Title VII claim by referencing an "anchoring act" within the limitations period.  804 F.3d 1,

8 (1st Cir. 2015).  The Court rejected that attempt, explaining that "an 'anchoring act' must itself be

discriminatory." *Id.*, citing *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 474 (1st Cir. 2010).  In

other words, those acts must have been themselves "actionable as a matter of law," otherwise, they

cannot serve as "anchoring acts" to trigger use of the continuing violation theory.  *Id.*  In *Perez*, the

Court concluded that even viewed in the light most favorable to plaintiff, the later, non-sexual

conduct alleged, while it may have made the plaintiff uncomfortable, did not constitute actionable

harassment and therefore could not serve to "anchor" the earlier acts. *Id.*

So, too, here. Neither of the 2019 incidents alleged by Kilburn constitute a recognizable

claim regarding a sexually hostile environment, which is the subject matter of Count One. *See id.* at

6–7. Because these later acts are neither independently actionable nor substantially related to the

untimely conduct about which Kilburn did not timely sue, they do not "anchor" and make timely the

earlier behavior.

ii.     Count One Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).

Even if its allegations were timely, Count One must be dismissed for failure to state a claim.

The First Circuit has recently reaffirmed a five-part test used to determine whether a school

engaged in "deliberate indifference" under Title IX. *See Doe v. Williams Coll.,* 530 F. Supp. 3d 92

(D. Mass. 2021). "To succeed on Title IX deliberate indifference claim, a plaintiff must show that an

official with authority to implement corrective measures was aware of and deliberately indifferent to

an act of discrimination on the basis of sex." *See Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 93 (1st Cir.

2018). Under that test, "a plaintiff must show that (1) 'he or she was subject to severe, pervasive, and

objectively offensive sexual harassment'; (2) 'the harassment caused the plaintiff to be deprived of

educational opportunities or benefits'; (3) the funding recipient was aware of such harassment; (4) the

harassment occurred 'in [the funding recipient's] programs or activities'; and (5) the funding

recipient's response, or lack thereof, to the harassment was 'clearly unreasonable.'" *Doe v. Brown

Univ.*, 896 F.3d 127, 130 (1st Cir. 2018) (quoting *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73

(1st Cir. 2007)); *see also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002).

Deliberate indifference under Title IX is "a stringent standard of fault, requiring proof that a

[defendant] disregarded a known or obvious consequence of [its] action or inaction." *Porto*, 488 F.3d

at 73 (internal quotation marks omitted), cert. denied, 552 U.S. 992 (2007). A court may, "on a

motion to dismiss," or other stages of litigation, "identify a response as not 'clearly unreasonable' as a matter of law."  *See Davis*, 526 U.S. at 649.

Plaintiffs' allegations do not meet this "stringent standard."  <u>First</u>, as explained above, Mandava and Czerwienski allege a single instance of purported harassment by Comaroff—an incident at which Czerwienski was not present.  That incident, the alleged October 13, 2017 comment by Comaroff to Mandava, was found by an independent investigator charged by Harvard to reach findings about that incident, to have constituted a violation of Harvard's Professional Conduct Policy. Compl. ¶ 151.  Comaroff was disciplined as a result.  *Id.* ¶ 153.

That the conduct was unacceptable under Harvard's policies does not mean, however, that the incident rose to the level of harassment of Mandava or Czerwienski sufficiently severe and pervasive to support a claim for liability against Harvard related to a sexually hostile environment.  *See, e.g., Schaefer v. Yongjie Fu*, 272 F. Supp. 3d 285, 287–88 (D. Mass. 2017) (dismissing Title IX claim where alleged harasser "interacted with [plaintiff] in a variety of ways, including inter alia, sitting near her in class, introducing himself to her at the dining hall and telling plaintiff she could be a headphone model," finding that "[m]ost of those contacts were not….sexual in nature," and concluding that a "single comment does not constitute severe sexual harassment"); *See also id.* at 288, citing *Hankey v. Town of Concord–Carlisle*, 136 F.Supp.3d 52, 67 (D. Mass. 2015) (holding that a single instance of "keying" a sex-based slur on plaintiff's car bumper is not "severe and pervasive sexual harassment, as required for a Title IX claim").  Although found to be unacceptable pursuant to Harvard's Professional Conduct Policy, Comaroff's statement to Mandava—which was purportedly about, but not in the presence of Czerwienski—is an insufficient basis upon which to proceed against Harvard with a claim of a sexually hostile environment under Title IX.

<u>Second</u>, Count One fails for the additional reason that to validly allege a violation of Title IX based on a sexually hostile environment, Plaintiffs must allege "that a school official authorized to

take corrective action had actual knowledge [or notice] of the harassment, yet exhibited deliberate indifference to it." *Frazier*, 276 F.3d at 66; *Doe v. Emerson Coll.*, 271 F. Supp. 3d 337, 354 (D. Mass. 2017) (when an entity employs "timely and reasonable measures" proportional to allegations, it has not been deliberately indifferent).

Plaintiffs' allegations do not meet this standard.  To the contrary, even taking Plaintiffs' allegations as true, Harvard followed its policies and procedures as concerns about Comaroff were made.  The Complaint makes clear that Plaintiffs raised a single complaint to Harvard's Title IX office – about the comment by Comaroff to Mandava – in October 2017.  After that, no report is alleged to have been made by Plaintiffs[19] to Harvard's Title IX office or a person with authority to take corrective action, until May 2019, when Kilburn complained about Comaroff.[20]  Subsequently, "on information and belief," other individuals with whom Plaintiffs had spoken conveyed information to Avakian.  Compl. ¶ 100.  In May 2020, *before* Plaintiffs elected to file ODR complaints, Harvard's Program Officer for Title IX and Professional Conduct filed ODR Complaints seeking redress for each of the plaintiffs.  This was done pursuant to the FAS Policy and Procedures, which permit a third party to file on behalf of a potential complainant.  *See* FAS Policy & Procedures at 29.  When a Reporter files such a complaint, ODR contacts the potential complainant to gather information and

---

[19] Although the Complaint alludes to complaints made by other individuals, a caveat in the Complaint makes clear that *all* allegations concerning *everything* other than Plaintiffs' own actions are made "upon information and belief."  *See* Compl. p. 3, fn. 6.  This stunning admission that Plaintiffs lack a sufficient basis to assert dozens of paragraphs in the Complaint renders it appropriate to focus the deliberate indifference inquiry on the allegations made "upon knowledge," *id.*, concerning notice to Harvard of Comaroff's conduct.  "In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Solis v. City of Fresno*, 2012 WL 868682 at 8 (E.D. Cal. Mar. 13 2012). This is particularly true where Plaintiffs fail to allege, beyond "information and belief," "facts that are critical to their theory." *Klohs v. Wells Fargo Bank*, N.A., 901 F. Supp. 2d 1253, fn. 3 (2012).  *See also Baker v. Tevault*, 2021 WL 1171492 (D. Ariz. March 29, 2021) (dismissing claim where core allegations underlying hiring and supervision counts—specifically, accusations that officer had more infractions than others, including excessive use of force, and additional violations—were all pled "on information and belief").

[20] Plaintiffs' other purported complaints were made to individuals without authority to issue corrective measures.  *See, e.g.,* Compl. ¶ 54 (faculty member); ¶ 80 (unnamed classmates and staff); ¶ 81 (Graduate Program Administrator); ¶ 93 (faculty members).  This appears to be conceded by Plaintiffs, who state in the Complaint that "officials with supervisory authority and the power to institute corrective measures on Harvard's behalf" are referred to in the Complaint as "Harvard" or "the University."  *See* Compl. at p. 4, fn. 7.  None of the individuals referenced in Compl. ¶¶ 54, 80, 81, or 93 are referred to as such.

determine whether they want to participate in the investigation.  *Id.* at 22-23.  Here, *after* Harvard's Title IX Officer initiated the ODR process of investigating Comaroff's conduct, Plaintiffs filed their own complaints.  Although they disagree with the outcome of the investigations, and would prefer that Harvard revise its policies and processes (for example to appoint counsel to complainants), Plaintiffs do not allege that Harvard failed to follow its own policies and processes.

Plaintiffs' allegations regarding Harvard's actions in this case do not come close to "deliberate indifference."  *See Facchetti v. Bridgewater Coll.,* 175 F. Supp. 3d 627, 633, 637–38 (W.D. Va. 2016) (finding school was not deliberately indifferent, even where it allegedly "discouraged [complainant] from reporting the assault to the police, failed to advise her of the rights available to her, and failed to allow her to present witnesses, and to otherwise keep her involved and advised of the disciplinary process, all in violation of its own Title IX policy"); *Gebser*, 524 U.S. at 277 (finding that a Title IX defendant's failure to comply with its own policy did not constitute deliberate indifference); *Leader v. President & Fellows of Harvard Coll.*, No. CV 16-10254, 2018 WL 3213490, at *4 (D. Mass. June 29, 2018), citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639-40, 643 (1999) (a University's "failure to engage in 'particular remedial demands,'…is not sufficient for a finding of liability under Title IX"); *accord Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 657-58 (D. Md. 2013).

Notably, the Title IX process concededly followed in this case is substantively the same process found not deliberately indifferent in *Leader.  See* 2018 WL 3213490, at *4 (Harvard's investigation of sexual harassment and other misconduct did not constitute "deliberate indifference," including because its alleged failure to initiate an investigation "was not an unjustified delay, but was rather justified by [the complainant's] choice not to file a complaint at the time" she initially reported allegedly harassing behavior to Harvard's Title IX coordinator").

21

B. __Count Two, Alleging Retaliation in Violation of Title IX, Must be Dismissed__.

In Count Two, Plaintiffs allege that Harvard is separately liable for a violation of Title IX based on alleged retaliation prohibited by that statute.  Harvard's Title IX Policy strictly prohibits members of the Harvard community from engaging in retaliation against an individual who has undertaken protected conduct.  *See, e.g.*, University Policy at 1 ("Retaliation against an individual for raising an allegation of sexual or gender-based harassment, for cooperating in an investigation of such a complaint, or for opposing discriminatory practices is prohibited."); FAS Policy & Procedures at 24 ("Retaliation of any kind is in itself a separate violation of this Policy and may lead to an additional complaint and consequences.")

"[A] plaintiff may establish a prima facie case for a Title IX retaliation claim by alleging facts sufficient to show [1] that she engaged in activity protected by Title IX, [2] that the alleged retaliator knew of the protected activity, [3] that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and [4] that a retaliatory motive played a substantial part[21] in prompting the adverse action."  *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002). The familiar Title VII burden-shifting framework applies: (1) "the plaintiff must establish a prima facie case" under *Frazier*; (2) the defendant must then "articulate a legitimate, non-retaliatory reason for its employment decision"; and (3) if the defendant meets that burden, the plaintiff still must "show that the proffered legitimate reason is in fact a pretext" for "the defendant's retaliatory animus."  *Cass v. Town of Wayland*, 383 F. Supp. 3d 66, 80 (D. Mass. 2019).  Moreover, a plaintiff seeking to hold an educational institution liable for retaliation under Title IX must demonstrate that the *entity itself* retaliated.  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (retaliation claim lies under Title IX only for the funding recipient's own retaliation—but not for retaliation by employees).

---

[21] The applicable standard is "but-for" causation.  *See Univ. of Texas Southwestern Medical Center. v. Nassar*, 570 U.S. 338 (2013) (holding that Title VII retaliation claims require "but for" causation); *Frazier*, 276 F.3d at 67 ("[T]he jurisprudence of Title VII supplies an applicable legal framework [for Title IX claims.]").

Here, Plaintiffs do not allege that Harvard retaliated against them in any way.  Rather, they seek to hold Harvard liable for alleged retaliatory conduct undertaken by others, primarily Comaroff. *See, e.g.,* Compl. ¶¶ 155-156.   But as explained below, Title IX does not provide a cause of action against Harvard for retaliation against Plaintiffs by third parties.  *See Jackson*, 544 U.S. at 174. Accordingly, even if the actions alleged to have been taken against Plaintiffs occurred as they contend, and even if those actions contravene Harvard policies, Title IX does not provide a cause of action for redress.

  i. <u>Under Title IX, Harvard is Only Potentially Liable for Its Own Allegedly</u><br><u>Retaliatory Actions, and Plaintiffs Do Not Allege Retaliatory Action By Harvard.</u>

Harvard cannot be held strictly liable for Comaroff's alleged retaliatory conduct.  In *Gebser v. Lago Vista Indep. Sch. Dist.*, the United States Supreme Court held that neither strict liability nor common law agency principles apply under Title IX.  *See* 524 U.S. 274 (1998).  Instead, to hold a funding recipient liable for sexual harassment—as distinct from retaliation—under Title IX, a plaintiff must show that "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  *Id.*  The Court reasoned that "[u]nder a lower standard, there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions."  *Id.* at 290-91.

Later, in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005), the Supreme Court held that damages claims for retaliation are viable under Title IX "where *the funding recipient* [itself] retaliates against an individual because he has complained about sex discrimination." (Emphasis added).  *See also Turley v. McKenzie*, No. CV 14-14755-LTS, 2018 WL 314814, at *12 n.13 (D. Mass. Jan. 5, 2018) (emphasis added) ("Title IX prohibits sexual discrimination by recipients of federal funding—not sexual discrimination generally.").  *Gebser* and *Jackson*, then, establish that a retaliation claim lies under Title IX for a funding recipient's own retaliation—but does not establish a

cause of action against an entity for retaliation by its employee. *See* 544 U.S. at 184.  "To establish Title IX liability, [a plaintiff] must make a showing that the [funding recipient], through one of its officials with 'authority to address the alleged discrimination,' discriminated against the plaintiff." *Turley*, 2018 WL 314814, at *12 n.13 (quoting *Gebser*, 524 U.S. at 290) (plaintiff failed to show that entity, as opposed to individual instructor, retaliated against plaintiff).

The First Circuit has gone no further than the Supreme Court.  Counsel for Harvard has been unable to identify any First Circuit cases holding a funding recipient liable for retaliation by an employee, as opposed to the funding recipient itself—whether under a strict liability standard, or even on a theory of deliberate indifference.[22]

Plaintiffs do not allege that Harvard itself retaliated against them in any way, but instead seek to hold Harvard liable for alleged retaliation by Comaroff.  Accordingly, Plaintiffs' retaliation claim fails as a matter of law and Count Two must be dismissed.

        ii.      <u>The Allegations of Comaroff's Retaliatory Conduct Against Mandava and Czerwienski Are Not Timely.</u>

As explained above, the relevant statute of limitations for Title IX retaliation claims is three years.  *See LeGoff*, 23 F. Supp. 2d at 127; M.G.L. c. 260, § 2A (M.G.L. c. 260, § 2A).  The sole instance of retaliation alleged in the Complaint to have been perpetrated by Comaroff purportedly occurred in October 2017.  *See* Compl. ¶¶ 10, 56-57, 181(a), 194(a) (alleging that Comaroff

---

[22] *See, e.g.*, *Theidon v. Harvard Univ.*, 948 F.3d 477, 506 (1st Cir. 2020) (affirming summary judgment on retaliation claim in tenure denial case where there was "no evidence . . . that the voting members of the *ad hoc* committee were aware of [plaintiff's] protected activities during their deliberation" and Professor alleged to have had retaliatory animus was not a voting member of the *ad hoc* committee). *See also Bose v. Bea*, 947 F.3d 983, 989 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1051 (2021) (questioning whether "deliberate indifference to retaliation [is] even actionable under Title IX*"); Saphir by & through Saphir v. Broward Cty. Pub. Sch.*, 744 F. App'x 634, 639 (11th Cir. 2018) (affirming summary judgment on retaliation claim where plaintiffs failed to show that school board "knew about the report of [the] harassment and that the School Board took the adverse action"); *M.D. ex rel. Deweese v. Bowling Green Ind. Sch. Dist.*, 709 F. App'x 775, 779 (6th Cir. 2017) (holding that plaintiff raising Title IX retaliation claim cannot use agency principles to impute liability to funding recipient for the misconduct of its employees).

threatened Mandava and Czerwienski for speaking to students and faculty about alleged misconduct by Comaroff towards other students).

This allegation is an insufficient basis on which Plaintiffs may proceed against Harvard, because this alleged activity occurred well outside of the statute of limitations.  *See supra* at 127.

iii.   <u>The Allegations of Others' Retaliatory Conduct Do Not State a Claim for Actionable Retaliation Against Harvard Under Title IX</u>

Finally, Plaintiffs allege that Harvard is liable under Title IX for a range of conduct allegedly undertaken by Harvard faculty other than Comaroff.  Specifically, they allege that following the announcement of Harvard's sanctions against Comaroff, a "public letter signed by 38 faculty members in support of Comaroff" was issued.  *See* Compl. ¶ 159.[23]  In addition, Plaintiffs allege that Comaroff's wife (who is also a Harvard faculty member) sent an email attaching a press release issued by John Comaroff's lawyers to a "broad segment of the Comaroffs' professional network," *id.* ¶¶ 154-56, and that Harvard Law School Professor Janet Halley "joined in the press release's attack" calling Comaroff's meeting with Kilburn "perfectly legitimate office-hours advice" and calling the complaints an "attack on academic freedom."  Compl. ¶ 157.  *See also id.* ¶ 194(d) (alleging that these statements were "false or misleading" and "would reasonably dissuade students from making complaints against faculty"); ¶ 194(e) (same); *id.* ¶ 181(e) (same); *id.* ¶ 181(f) (same).[24]

---

[23] The Complaint omits the fact that the letter was later retracted by most, if not all, of the initial signatories. *See, e.g.,* https://s3.amazonaws.com/media.thecrimson.com/pdf/2022/02/10/1354086.pdf#viewer.action=download, last visited on April 20, 2022.  In addition, the Dean of the FAS responded in an open letter, pointing out that the authors of the initial letter were operating on incomplete information.  *See* https://s3.amazonaws.com/media.thecrimson.com/pdf/2022/02/04/1353923.pdf, last visited on April 20, 2022.  Regardless, as explained herein, neither the faculty members' issuance of the letter nor their retraction of it states a basis for any claim against Harvard.

[24] As with Count One, Plaintiffs improperly attempt to broaden the allegations in Count Two by using conclusory allegations with vague references to time periods that are not tethered to any pled factual allegations. *See, e.g.,* Compl. ¶ 194(b) ("From 2017 through 2022, Professors John and Jean Comaroff created a hostile educational environment for Ms. Mandava and Ms. Czerwienski based on the Comaroffs' belief that Ms. Mandava and Ms. Czerwienski had reported Professor Comaroff's sexual harassment and later his retaliation to other students, to faculty, and to Harvard . . . This retaliation includes, but is not limited to, threatening Ms. Mandava and Ms. Czerwienski's careers and disseminating disparaging and misleading statements about Plaintiffs for having filed complaints of discrimination;" *see also id.* ¶ 181(b) (same).  As explained above, *see* fn. 2, *Leader* 2018 WL 3213490, at *5, conclusory allegations may not broaden allegations where they are not traceable to specific identified conduct.

25

There is no basis to hold the University liable for the conduct of faculty who respond publicly to the outcome of an investigation.  *See Gebser*, 524 U.S. at 290-91.  Particularly in the university setting, where principles of academic freedom and expression are central to the entity's mission, the "independent actions" of faculty responding to a complaint or its outcome will not render the entity liable.  *Id.*; *Jackson*, 544 U.S. at 174.

iv.   <u>Comaroff's Allegedly Retaliatory Conduct Toward Kilburn Is Not Actionable<br>Under Title IX.</u>

Even if Harvard could theoretically be found liable for Comaroff's alleged retaliation, whether under a strict liability or deliberate indifference standard, Count Two must be dismissed because Comaroff's alleged conduct against Kilburn is not actionable as retaliation under Title IX as a matter of law.

Kilburn alleges that Comaroff "weaponize[d] the ODR process" by naming "three of the most prominent scholars in Kilburn's field—Peter Geschiere, Caroline Elkins, and Sue Cook—as witnesses in his defense."  Compl. ¶ 129.  However, counsel for Harvard has not identified any cases holding that a respondent's selection of witnesses in a Title IX investigation can be deemed retaliation under Title IX.  To the contrary, Harvard—like all recipients of federal funds—is required by Title IX and the applicable regulations, to provide respondents in Title IX actions an equal opportunity to present witnesses in the course of an investigation.  *See, e.g.*, 34 C.F.R. § 106.45(b)(5)(ii) (funding recipient must provide equal opportunity for parties to present witnesses); *North v. Cath Univ. of Am.*, 310 F. Supp. 3d 89, 92 (D.D.C. 2018) (both parties must have opportunity to present witnesses and other evidence).  Indeed, Harvard is *obligated* to provide all parties to a Title IX investigation with a full and fair opportunity to present witnesses in their defense. *See, e.g.*, *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) (finding that respondent who alleged university denied him the opportunity to present witnesses in his defense had stated a claim for

26

violation of due process and Title IX); *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).  There is no basis to hold Harvard liable for Comaroff's naming of certain witnesses.

       C.      **Count Three, Alleging Gender Discrimination Under Title IX, Must Be Dismissed.**

In order to validly allege a Title IX violation based on an erroneous outcome infected by gender bias, Plaintiffs must allege *both* "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," *and* "particularized allegation[s] relating to the causal connection between the flawed outcome and gender bias."  *See Doe v. Harvard University, et. al,* 461 F. Supp. 3d 51, 62 (D. Mass. 2020), citing *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1994).  *See also Doe*, 892 F.3d at 90.

Here, Count Three consists of precisely the type of generalized, conclusory allegations that have been repeatedly held insufficient to state a claim under Title IX in this jurisdiction.  In Count Three, Plaintiffs allege that Harvard's ODR is animated by gender bias and therefore its investigations are deficient under Title IX.  *See, e.g.,* Complaint ¶ 163.  Specifically, Plaintiffs claim that "ODR ordinarily does not credit women's complaints unless they are corroborated by independent evidence, no matter how credible the complainant's testimony."  *Id.*[25]  *See* Compl. ¶¶ 121-149.  Courts routinely dismiss complaints which allege, at their base, that a flawed proceeding led to an erroneous outcome but also tack on "a conclusory allegation of gender discrimination."  *Doe v. W. New England Univ.,* 228 F. Supp. 3d 154, 188-89 (D. Mass. 2017).  Plaintiffs "cannot rest on superficial assertions of discrimination," but must plead "particular circumstances" that show "there was a causal connection between the outcome … and gender bias."  *Doe,* 892 F.3d at 91; *see also Doe v. Univ. of*

---

[25] In addition to this alleged "practice," Plaintiffs allege a number of purported ODR practices of which they disapprove. *See* Compl. ¶¶ 161 -166.  For example, Plaintiffs claim that ODR allegedly will not investigate reports of sexual harassment unless the victim proceeds with a formal ODR complaint.  *Id.* ¶ 162.  Of course, this is the opposite of what occurred here, given that Avakian, as a third-party Reporter, filed complaints prior to any victim moving forward, and ODR initiated investigations based on those complaints.  *See* Ex. A at 1, fn. 1; Ex. B at 1; Ex. C at 1.  In any event, Harvard recites these "practices" as they are alleged in the Complaint, and reserves its right to dispute their veracity if this Count proceeds.  But more to the point at this stage, the allegations do not even attempt to set forth any factual claims tying these complaints about Harvard's process to any form of gender bias.  *See id.* ¶¶ 167-176.

*Mass.-Amherst,* 2015 WL 4306521, at *8 (D. Mass. 2015) (plaintiff must plead facts showing "that the disparate treatment was *because of* Plaintiff's sex.") (emphasis in original).  "[A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss."  *Doe v. Harvard*, 461 F. Supp. 3d at 62, citing *Yusuf*, 35 F.3d at 715.

Count Three, alleging gender bias, relies on broad generalizations devoid of *any* underlying factual allegations.  *See, e.g.* Compl. ¶ 183 (alleging that Harvard has "deprived women and non-binary graduate students in the Department of benefits, privileges, and placement services relative to men").  Plaintiffs do not allege *any* direct or indirect evidence that any "practices" in Harvard's Title IX process arise out of alleged gender bias.  They do not, for example, allege that any statements were made, or that any documents exist, containing or even allowing for an inference of any such bias on the part of Harvard or its administrators in the Title IX process.  Nor do Plaintiffs' allegations of "differential treatment" based on gender contain *any* reference to proper comparators (*i.e.*, male or cisgendered complainants treated differently and more favorably than complainants).  Because generalized allegations of gender bias are plainly insufficient, Count Three must be dismissed.

## II.  **M.G.L. ch. 214, § 1C Independently Bars Plaintiffs' MCRA and MERA Claims (Counts Four and Six).**

The Massachusetts Legislature enacted M.G.L. ch. 214, § 1C to supplement Massachusetts' existing anti-sexual harassment laws.  While Chapter 151B provides a remedy for acts of sexual harassment impacting employees at workplaces with six or more employees, and Chapter 151C protects vocational students and individuals who are "seeking admission ... to any educational institution," M.G.L. ch. 214 § 1C "fills a gap in the statutory scheme by extending to employees and students protection that is not otherwise available under chapter 151B and chapter 151C."  *Harbi v. Massachusetts Inst. of Tech.,* D. Mass., No. CV 16-12394-FDS (Sept. 1, 2017); *see also Lowery v. Klemm*, 446 Mass. 572, 576 (2006).  M.G.L. ch. 214, § 1C thus extends statutory protection from

sexual harassment to: (1) employees of employers with fewer than six workers, and (2) students who are neither vocational nor seeking admission.

Plaintiffs are students who are neither vocational nor seeking admission, so M.G.L. ch. 214, § 1C applies to their claim. [26]   "[W]hen G.L. c. 214, § 1C applies to a claim of sexual harassment, it is the exclusive remedy: Plaintiffs may not proceed with other statutory or common-law actions for sexual harassment." *Lowery*, 446 Mass. at 576; *Guzman*, 422 Mass. at 571 (holding same). Accordingly, Plaintiffs MCRA and MERA claims are barred.

### III.   The Statutory Claims (Count Four, Five, and Six) Must Be Dismissed for the Independent Reason That They Are Time-Barred and Fail to State a Claim.

In addition, Plaintiffs' statutory claims are (1) time-barred and (2) those that are not time-barred fail to state a claim.  MERA, MCRA, and M.G.L. ch. 214, § 1C claims are all subject to a three-year statute of limitations.  *See* M.G.L. ch. 260, § 5B ("Actions arising on account of violations of any law intended for the protection of civil rights … shall be commenced only within three years next after the cause of action accrues").  The clock begins running "once a plaintiff knows or has reason to know of the alleged wrongful acts." *Sampson v. Salisbury*, 441 F. Supp. 2d 271, 275 (D. Mass. 2006).  Unless the wrong is "inherently unknowable," "the limitations period begins on the date of the wrongful act."  *Id.*

As explained above, Mandava and Czerwienski's claims are based on a single instance of alleged misconduct that occurred in October 2017, when they claim Comaroff threatened them with retaliation.  *See* Compl. ¶ 217.[27]  Plaintiffs do not allege that this act was somehow "inherently unknowable," nor can they.  Per the Complaint, Comaroff made this comment to Mandava directly,

---

[26] Whether or not plaintiffs fall into this category, they were (by their own admission, *see, e.g.,* Compl. ¶¶ 19, 21, 185, 243) employees working at Harvard in addition to students enrolled there.  To the extent that they seek redress from Harvard for *workplace-related harm* (as distinct from actions purportedly arising out of and impacting their roles as students), their statutory claims are (a) preempted by the Workers' Compensation Act; and/or (b) precluded by M.G.L. 151B, which is an exclusive remedy where it applies.

[27] Again, Czerwienski does not allege that she was present for this conversation between Comaroff and Mandava and further Czerwienski cannot even allege that she was identified by name in that conversation.

Mandava informed Czerwienski within a matter of days, and it was reported to Harvard three days later.  *Id.* at ¶ 60, 62-63.  Thus, in order to comply with the three-year statute of limitations, Mandava and Czerwienski were required to file their MERA and MCRA[28] claims no later than October 2020. They did not file the Complaint until February 2022.  Accordingly, the statutory claims are untimely.

Kilburn's MERA, MCRA, and M.G.L. ch. 214, § 1C claims are similarly barred.  As explained above, the Complaint alleges that the latest instance of actionable harassment directed at Kilburn occurred in Fall 2018.  *See* Compl. ¶¶ 87, 88 (alleging that in Fall 2018, Comaroff repeatedly asked Kilburn to meet him alone off-campus for reasons unrelated to her work).  Again, Kilburn has not alleged that any of Comaroff's purported wrongs were "inherently unknowable."  In fact, the Complaint alleges that Kilburn was present during all instances of alleged harassment.  *See*, *e.g.*, Compl. ¶ 71 (alleging Comaroff kissed Kilburn); ¶ 73 (alleging Comaroff made inappropriate comments to Kilburn); ¶ 77 (alleging Comaroff kissed and touched Kilburn); ¶ 85 (alleging non-consensual touching); ¶ 88 (alleging Comaroff asked Kilburn to meet him alone off-campus). Kilburn was thus required to file her MERA, MCRA, and M.G.L. ch. 214, § 1C claims no later than Fall 2021 to comply with the three-year statute of limitations.  Accordingly, all three statutory claims are time-barred.  *See also Coll. Hill Properties, LLC v. City of Worcester*, 135 F. Supp. 3d 10, 18 (D. Mass. 2015), aff'd, 821 F.3d 193 (1st Cir. 2016) (citations omitted) (where plaintiff did not claim that the earlier facts underlying the MCRA claim were unknowable, claims were barred because "[t]he MCRA statute of limitation begins running once a plaintiff knows or has reason to know of the alleged wrongful acts. A plaintiff need not know the extent or severity of the harm suffered.  To start the limitations period a plaintiff need only have knowledge of all the facts necessary to make out his or her civil rights claim.  The limitations period begins on the date of the wrongful act, 'unless the wrong is inherently unknowable'").

---

[28] Mandava and Czerwienski have not alleged violations of M.G.L. ch. 214, § 1C—Count Five is brought solely on Kilburn's behalf.

As with Kilburn's Title IX claim, the later-in-time allegations she attempts to sweep into her Massachusetts statutory claims cannot save them from dismissal.  Her claims – that in April 2019, Comaroff "repeatedly pressured" Kilburn to direct her forthcoming project to a topic he specialized in and tried to enter a public, glassed-in waiting area where Kilburn was located, *see* Compl. ¶¶ 89-91— are not, by themselves, actionable under MERA, MCRA, or M.G.L. ch. 214, § 1C.  Neither alleged act subjected Ms. Kilburn to a pattern of gender-based harassment or sex discrimination,[29] constituted sexual harassment or "verbal and physical conduct of a sexual nature,"[30] or subjected Kilburn "to a pattern of gender-discrimination."[31]  Thus, they cannot support Kilburn's statutory claims.

Moreover, even if they did constitute acts related to sex discrimination, they do not salvage the untimely claims because even together with the 2017 allegations, they do not "properly distinguish between continuing acts, for which tolling is available, and distinct, singular acts bringing continuing effects, for which it is not." *Votta v. Gnazzo*, 57 Mass. App. Ct. 1114 (2003).  In other words, plaintiff does not assert "claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim." *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).  Accordingly, the continuing violation doctrine does not apply because the earlier acts are of a "discrete" nature, and were therefore "instantaneously actionable," but plaintiff did not file suit in a timely manner. *Id.*  Counts Four, Five, and Six must be dismissed.

## IV.    Count Seven, Alleging Negligent Hiring & Supervision, Must Be Dismissed Because It Is Untimely.

"[A]ctions of tort ... to recover for personal injuries ... shall be commenced only within three years after the cause of action accrues."  Mass. Gen. Laws c. 260, § 2A; *See Malouf v. Benson*, No. CV 17-10941-LTS, 2018 WL 10155427, at *3 (D. Mass. Aug. 23, 2018); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991).  Comaroff was hired in 2012—approximately *ten years* before this Complaint was

---

[29] *See* Compl. ¶¶ 211-220 (MCRA claim).
[30] *See* Compl. ¶¶ 221-230 (Chapter 214, § 1C claim).
[31] *See* Compl. ¶¶ 231-238 (MERA claim).

filed.  Accordingly, no action based on that hiring can proceed.  Plaintiffs also allege Harvard first

mishandled its supervision of Comaroff by, at the *latest*, the Spring of 2017, when Mandava and

Czerwienski claim to have complained about Comaroff to professors.  *See* Compl. ¶¶ 45, 53-54; *see*

*also id.* ¶¶ 63, 81 (alleging that Czerwienski and Kilburn reported Comaroff's conduct in October

2017).  This is far more than three years before this action was filed.  Count Seven must be dismissed.

## V.    Count Eight, Alleging Breach of Contract, Must Be Dismissed For Failure to State a Claim.

In the University context, "general statements of policy" in a student handbook "cannot form

the basis of a viable contract claim."  *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 419 (N.D.N.Y.

2019); *accord Squeri v. Mt. Ida Coll.*, No. 18-12438-RGS, 2019 WL 2249722, at *5 (D. Mass. May 24,

2019), *aff'd*, 954 F.3d 56 (1st Cir. 2020).  Even under the low bar of notice pleading, students asserting

a breach of contract claim against their universities must "state with 'substantial certainty' the facts

showing the existence of the contract and the legal effect thereof."  *Squeri v. Mt. Ida Coll.*, 954 F.3d

56, 71 (1st Cir. 2020) (citations and quotations omitted).  In particular, it is necessary to allege not

only generalized promises, but "specific terms" that Plaintiffs seek to enforce.  *Id.* at 71-72.

Here, Plaintiffs allege an amorphous "contract that Harvard makes with its students in

exchange for their matriculation, labor, tuition payments, and fees."  Compl. ¶ 256.  Plaintiffs do not

articulate where that contract can be found, the documents or other materials comprising the contract,

or any other details apart from selectively quoting several Harvard policies, such as the following:

- "Harvard University is committed to maintaining a safe and healthy educational and work environment in which no member of the University community is, on the basis of sex, sexual orientation, or gender identity, excluded from participation in, denied the benefits of, or subjected to discrimination in any University program or activity."  *Id.* ¶ 248, quoting the University Policy.

- Harvard has an "obligation to keep the community safe and to address incidents of alleged harassment that it knows about or reasonably should know about."  *Id.* ¶ 250, quoting the Frequently Asked Questions ("FAQs") attendant to the University Policy.

- Harvard's policy "charg[ing] the FAS with 'maintaining a safe and healthy educational and work environment in which no member of the community is excluded from participation in, denied the benefits of, or subjected to discrimination in any University program or activity on the basis of sex, sexual orientation, or gender identity,'" as well as Harvard's interim policies which state that the FAS is charged with "maintaining a safe and healthy educational and work environment in which no member of the community is, on the basis of sex, including sexual orientation or gender identity, excluded from participation in, denied the benefits of, or subjected to discrimination in any University program or activity." *Id.* ¶ 253, quoting the FAS Policy and Procedures.

- Harvard's statement that "[f]aculty must comply with all applicable laws, rules, regulations, and professional standards including FAS policies and practices; this includes, but is not limited to, policies regarding discrimination and sexual and gender-based harassment" and that "[n]on-compliance . . . could result in varying sanctions." *Id.*, citing Harvard's FAS Professional Conduct Policy.

After reciting a number of these types of statements, Plaintiffs allege in a conclusory manner: "[t]hese promises are part of the contract that Harvard makes with its students in exchange for their matriculation, labor, tuition payments, and fees." *Id.* ¶ 243.

Plaintiffs' breach of contract claim cannot survive because they have alleged precisely the type of "general statements" that courts routinely conclude "cannot form the basis of a viable contract claim" in the University setting. *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 419 (N.D.N.Y. 2019). The First Circuit has held that such statements, even "when read together," are, "[w]ithout diminishing the importance of these words,…exactly the sort of generalized, aspirational statements that are insufficiently definite to form a contract." *G. v. Fay Sch.*, 931 F.3d 1, 12 (1st Cir. 2019) (rejecting an attempt to turn such statements as "[m]utual respect and civility are a central aspect of healthy communities," and "We expect all members of the community to respect the rights of others and to behave appropriately at all times" into enforceable contract terms); *Brown v. Suffolk Univ.,* No. CV 19-40062-DHH, 2021 WL 2785047, at *6 (D. Mass. Mar. 31, 2021) (Hennessey, M.J.) (concluding that Suffolk Law School's disability bulletin statements, including that the department "serves as a valuable resource for students with disabilities ... to promote an understanding and awareness of accessibility issues ... in order to provide a supportive and engaging setting for our

33

students" are "exactly the sort of generalized, aspirational statements that are insufficiently definite to form a contract.")

In *Shin v. Massachusetts Inst. of Tech.,* Dkt. No. 020403, 2005 WL 1869101, at *7 (Mass. Super. June 27, 2005) (McEvoy, J.), the Court examined whether plaintiffs could sustain a cause of action based on allegations that MIT failed to comply with certain specific language in MIT's Medical Department brochure and bylaws.  In particular, plaintiffs sought to enforce language stating that the department "gives you access to a full range of physicians and other health care professionals who can care for your physical and psychological needs," that the "care givers also will help you maintain good health," that "[w]e want to help you maintain your physical, psychological and emotional well-being," and that the department "has the responsibility to provide high quality, low barrier comprehensive health services to the MIT Community."  *Id.* at *7-8.  The Court concluded, however, that the statements were merely "generalized representations" of services available to the MIT community and their purpose. *Id.* at *8.  They were not "'definite and certain,'" and instead were "'too vague and indefinite to form an enforceable contract.'"  *Id.* at *7 (citations omitted).

The Complaint invokes only generalized statements which do not state a valid claim for a breach of contract under Massachusetts law and jurisprudence.  Count Eight must be dismissed.

## VI.   <u>Count Nine, Alleging Breach of the Implied Covenant of Good Faith and Fair Dealing, Must Be Dismissed</u>.

In Count Nine, Plaintiffs bring a claim for breach of the duty of good faith and fair dealing, a doctrine which "concerns the manner of performance" of contractual duties.  *Doe v. W. New England*, 228 F. Supp. 3d 154, 180 (2017).  Every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing, and a breach of that implied convent occurs when one party violates the reasonable expectations of the other.  *See Chokel v. Genzyme Corp.*, 449 Mass. 272, 275-76 (2007).  The covenant, however, does not supply terms that the parties were free to negotiate, but did not, nor "'create rights and duties not otherwise provided' for in the contract."  *Id.*

(quoting *Ayash v. Dana-Farber Cancer Ctr.*, 443 Mass. 367, 385 (2005)).  Rather, the scope of the covenant is "circumscribed by the obligations in the contract," and is breached only "when one party violates the reasonable expectations of the other."  *Id.*  "[T]he First Circuit has considered resolution of a good faith and fair dealing claim in the academic context to be concomitant with the basic fairness analysis".  *Sonoiki v. Harvard Univ.*, No. 19-CV-12172, 2020 WL 3416516, at *15 (D. Mass. June 22, 2020), citing *Doe*, 892 F.3d at 87 (stating that "the implied covenant of good faith and fair dealing ... creates a duty to provide basic fairness").  Moreover, "in evaluating those covenants in the educational milieu, courts must accord a school some measure of deference in matters of discipline."  *See Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 35 (1st Cir. 2007).

Here, Plaintiffs merely restate their references to inchoate purported contracts and unarticulated terms—*see, e.g.,* Compl., ¶ 262 alleging that "multiple Sexual and Gender-Based Harassment Policies, FAS Professional Conduct Policy, Whistleblowing Policy, Non-Retaliation Policy, and other materials applicable to students all contain promises"—and add several recitations of the conclusory phrase "bad faith."  *Id.* ¶ 265.  The Complaint does not allege any facts that would establish a breach of the implied covenant separate from any contract.  Instead, it asserts generically that Harvard breached the covenant by violating "the reasonable expectations of Plaintiffs under these contracts." *Id.* ¶ 263.  Just as Plaintiffs' contract claims cannot survive, their conclusory allegations do not state a claim for breach of the covenant of good faith and fair dealing.

## CONCLUSION

For all of the reasons set forth herein, Harvard respectfully requests that the Court enter an Order dismissing Counts One through Nine of the Complaint with prejudice.

## **LOCAL RULE 7.1 CERTIFICATION**

I hereby certify that, pursuant to Local Rule 7.1(a)(2), I met and conferred with counsel for Plaintiffs on May 31, 2022 and the parties were unable to narrow or resolve the issues raised therein.

*/s/ Victoria Steinberg*
Victoria Steinberg

## **CERTIFICATE OF SERVICE**

I, Victoria Steinberg, hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served to all counsel of record on May 31, 2022.

*/s/ Victoria Steinberg*
Victoria Steinberg