MARGARET CZERWIENSKI,
LILIA KILBURN, and AMULYA
MANDAVA

      *Plaintiffs,*

v.

HARVARD UNIVERSITY AND THE
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE

      *Defendants.*

CASE No. 1:22-cv-10202-JGD

## HARVARD'S STATEMENT OF MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56(c)(1), President and Fellows of Harvard College[1] submits

the following Statement of Material Facts which cannot genuinely be disputed:

1.   Ilissa Povich serves as a Senior Investigator with Harvard University's Office for Dispute

Resolution ("ODR"), the Harvard office responsible for investigation of formal complaints of

sexual harassment at Harvard. Affidavit of Ilissa Povich ("Povich Aff.") ¶ 1.

2.   Povich has worked as an investigator at ODR since 2015. Povich Aff. ¶ 1.

3.   Povich is a member of the bar of the Commonwealth of Massachusetts. Povich Aff. ¶ 1.

---

[1] Harvard University is not properly named as a Defendant in this action, since it is not a corporate entity
independent of the President and Fellows of Harvard College. Accordingly, the President and Fellows of Harvard
College. responds on behalf of both named Defendants.

4. Povich was the ODR Senior Investigator assigned in 2020 to investigate allegations concerning John Comaroff, Professor of African and African American Studies and Anthropology by, among others, Lilia Kilburn, a graduate student at Harvard. Povich Aff. ¶ 2.

5. The investigation concerned allegations that Comaroff had violated the Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts and Sciences at Harvard University ("the FAS Policy and Procedures"). Povich Aff. ¶ 2. A true copy of the FAS Policy and Procedures then in effect is attached to the Povich Aff. as Exhibit 1.

6. Povich worked on the investigation with Jessica Shaffer, then an ODR Fellow. Povich Aff. ¶ 3. Shaffer is also a member of the Massachusetts Bar. Povich Aff. ¶ 3.

7. ODR's investigation of the concerns expressed by Kilburn began on May 18, 2020. Povich Aff. ¶ 5.

8. On that date, ODR received an email from Seth Avakian, Ph.D., Program Officer for Title IX and Professional Conduct in Harvard's Faculty of Arts and Sciences, attaching a complaint that described allegations made to him by several graduate students about Comaroff. Povich Aff. ¶ 5.

9. Under the FAS Policy and Procedures, complaints against a faculty member may be initiated directly by the person whom the faculty member allegedly harassed or, as was the case here, by "a third party filing on behalf of a potential Complainant ('Reporter')." Povich Aff. ¶ 5 (citing Povich Aff. Exhibit 1, at 25).

10. Avakian's email and the Complaint he attached constituted the formal initiation of a complaint against Comaroff. Povich Aff. ¶ 5.

2

11. Under the FAS Policy and Procedures, Avakian's Complaint required ODR to conduct what the FAS Policy and Procedures call an "Initial Review." Povich Aff. ¶ 6. The FAS Policy and Procedures state:

> The Investigator will contact the Complainant or Reporter in an attempt to gather a more complete understanding of the allegations, as well as any related conduct that may implicate this Policy. When a complaint is brought by a Reporter, the Investigator will endeavor to meet with the person identified as the potential Complainant both to gather information and to discuss his or her interest in participating in an investigation.
>
> Based on the information gathered, the Investigator will determine whether the information, if true, would constitute a violation of this Policy such that an investigation is warranted . . .

Povich Aff. ¶ 6 (citing Povich Aff. Ex. 1 at 26).

12. As part of that initial review, on May 29, 2020, Povich spoke with Avakian, who identified Kilburn as one of the graduate students who had made allegations against Comaroff, as a potential Complainant. Povich Aff. ¶ 6.

13. On June 3, 2020, Avakian submitted a revised Complaint. Povich Aff. ¶ 6. The revisions related to another potential Complainant; the allegations concerning Kilburn did not change. Povich Aff. ¶ 6.

14. On June 4, 2020, Povich emailed Kilburn. Povich Aff. ¶ 7 (citing Povich Aff. Exhibit 2). Povich wrote:

> Dear Lilia,
>
> I am an Investigator in the Office for Dispute Resolution ("ODR"), and I am reaching out to see whether you would be available to discuss a matter that has come to the attention of our office. You are not suspected of wrongdoing in this matter. I am contacting you because a formal complaint was filed in our office, and

3

I was informed that you may have information pertaining to the complaint. I am contacting you in your capacity as a potential witness or potential complainant.

Please find the following documents linked for your review: 1) **the Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts and Sciences Harvard University;** 2) **Harvard University's Procedures for Handling Complaints Involving Students** Pursuant to **the Sexual and Gender-Based Harassment Policy;** 3) **Frequently Asked Questions Concerning the Policy and Procedures;** 4) **Frequently Asked Questions Concerning the FAS Policy and Procedures;** 5) the **ODR Flowchart for Investigative Process;** and 6) the **Personal Advisor Role Frequently Asked Questions**. As outlined in these documents, your participation is entirely voluntary, and ODR respects and protects privacy to the greatest extent possible, sharing information only on a need-to-know basis.

I would like to set up a meeting with you to discuss the allegations in the complaint. If you wish, you may include a personal advisor, who can be any person who is not involved in the Complaint, including an attorney, in this meeting.

I would like to schedule two hours for our meeting, which will occur remotely via Zoom. Please let me know if you are available for a two-hour period on Monday, June 8, 2020 anytime between noon and 5:00 p.m. or on Tuesday, June 9, 2020 anytime between 9:30 a.m. and 1:00 p.m.

I look forward to speaking with you.

15. Povich's June 4, 2020 email to Kilburn contained hyperlinks (set out in bold in Paragraph 7 above) to documents describing ODR's investigative process. Povich Aff. ¶ 8.

16. A true copy of the document referenced in Povich's June 4, 2020 email to Kilburn as **Frequently Asked Questions Concerning the Policy and Procedures** (as it existed as a linked document on June 4, 2020) is attached to the Povich Aff. as Exhibit 3. Povich Aff. ¶ 8.

17. A true copy of the document referenced in Povich's June 4, 2020 email to Kilburn as **ODR Flowchart for Investigative Process** (as it existed as a linked document on June 4, 2020) is attached to the Povich Aff. as Exhibit 4. Povich Aff. ¶ 8.

FH10923155.1

18. Each of these two documents, the **Frequently Asked Questions Concerning the Policy and Procedures** (Povich Aff. Exhibit 3) and the **ODR Flowchart for Investigative Process** (Povich Aff. Exhibit 4), described ODR's policies and practices concerning the sharing of information provided to ODR by individuals who make complaints to ODR ("Complainants"), by witnesses, or by the individuals against whom those complaints are made ("Respondents"). Povich Aff. ¶ 9.

19. In particular, Povich Aff. Exhibit 3 (**Frequently Asked Questions Concerning the Policy and Procedures**) included the following language:

> Will both parties have access to the materials that ODR uses in reaching its conclusions?
>
> Yes. During the course of the investigation, both the complainant and the respondent will have the opportunity to respond to all information used by the Investigative Team in reaching its conclusions. ***They will also have the opportunity to provide the Investigative Team with any additional information that they have. This information, like other information received from the complainant and respondent during the investigatory process, will be shared with the other***. In addition, each party will have the opportunity to review and comment on the draft investigative report, and the Investigative Team will evaluate the comments before issuing a final report (emphasis added).

Povich Aff. ¶ 10 (citing Povich Aff. Exhibit 3, at 8).

20. Exhibit 4 (**ODR Flowchart for Investigative Process**) contains a detailed description of ODR's investigatory process for violations of the University Sexual and Gender-Based Harassment Policy. Povich Aff. ¶ 11. It explains that, if ODR determines that the facts alleged, if true, would "constitute a violation of the Policy . . .

> ODR notifies the Complainant or Reporter and appropriate School or unit of the plan to investigate. . . .

5

ODR notifies the Respondent in writing of allegations and provides Respondent with copies of the complaint and any supporting materials filed with the complaint. ODR informs Respondent of their rights . . .

ODR conducts separate interviews with each of the parties. If applicable, the parties may bring a Personal Advisor to their respective interviews with ODR. A Personal Advisor may be, for example, a University officer, attorney, or advocate . . .

***ODR collects additional information (e.g., interview witnesses, collect documents, conduct site visits). The parties may submit additional materials they believe may be relevant. Copies of these materials will be given to the other party and, at that party's discretion, their Personal Advisor (if applicable) . . .*** (emphasis added).

Povich Aff. ¶ 11 (citing Povich Aff. Exhibit 4).

21. The FAS Policy and Procedures (which Povich also sent to Kilburn on June 4, 2020) contains specific provisions concerning FAS's expectations of confidentiality with respect to the investigation. In particular, the FAS Policy and Procedures state:

> Once a complaint is filed, the Complainant or Reporter, the Respondent, and any witnesses will be notified that disclosing information about the case has the potential for compromising the integrity of the investigation and might, in certain circumstances, be construed as retaliatory. Retaliation of any kind is in itself a separate violation of this Policy and may lead to an additional complaint and consequences.

> The parties remain free to share their own experiences, ***other than information that they have learned solely through the investigatory process,*** though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide (emphasis added).

Povich Aff. ¶ 12 (citing Povich Aff. Exhibit 1, at 27).

22. Between June 4, 2020 and July 13, 2020, ODR and Kilburn exchanged a number of emails concerning scheduling. Povich Aff. ¶ 13

23. In those emails, ODR also responded to procedural questions Kilburn posed. In an email on July 2, Shaffer (the ODR Fellow) wrote to Kilburn (copying Povich):

> ODR's investigative process continues remotely during the response to the novel coronavirus. As a reminder, the Policy and Procedures grants rights to parties that do not extend to witnesses. ***Both parties have the right to review and respond to all information that ODR may rely on in the investigation, including the complaint, the response, any written information provided by a witness, or other documents submitted.***
>
> As explained in Frequently Asked Questions, FAQ #25:
>
> *Will both parties have access to the materials that ODR uses in reaching its conclusions?*
>
> **Yes. During the course of the investigation, both the complainant and the respondent will have the opportunity to respond to all information used by the Investigative Team in reaching its conclusions**. They will also have the opportunity to provide the Investigative Team with any additional information that they have. This information, like other information received from the complainant and respondent during the investigatory process, will be shared with the other. In addition, each party will have the opportunity to review and comment on the draft investigative report, and the Investigative Team will evaluate the comments before issuing a final report.
>
> For the past six years, ODR has routinely emailed the parties such documents with redactions removing any personally identifying information of students in accordance with the Family Educational Rights and Privacy Act ("FERPA"). Likewise, ODR shares other information gathered upon which ODR may rely, such as information gathered in interviews, with the parties orally.

Povich Aff. ¶ 13 (citing Povich Aff. Ex. 5) (emphasis added).

24. On July 6, 2020, Kilburn responded to Shaffer's email: "Hi Jessica and Ilissa, Thank you for this information—it is helpful . . ." Povich Aff. ¶ 14 (citing Povich Aff. Exhibit 6).

25. ODR Fellow Shaffer and Povich met for the first time with Kilburn and the personal advisor Kilburn had selected, Jacqueline Yun, Executive Director of the Graduate School of Arts and Sciences Student Center, by Zoom on July 13, 2020. Povich Aff. ¶ 15.

7

26. At the outset of the interview, Kilburn confirmed that she wished to proceed as the Complainant in the investigation. Povich Aff. ¶ 15.

27. Povich provided an overview of the ODR process, as she does as a matter of practice in the first ODR interview with participants in the ODR process. Povich Aff. ¶ 15.

28. In particular, it was Povich's practice in 2020 (and remains her practice today) to inform participants like Kilburn, among other things, that ODR's role is neutral; that ODR approaches the investigation with no pre-conceived idea about whether there is a violation or not; that the interviewee's participation is voluntary and that the interviewee may not only decide whether to participate generally, but to decide whether to answer individual questions. Povich Aff. ¶ 15.

29. Povich also explained that, to the extent ODR may rely on information provided by the Complainant or provided by witnesses the Complainant identifies, ODR would share that information with the potential Respondent (here, Comaroff). Povich Aff. ¶ 15.

30. Povich also told Kilburn that it is ODR's practice to likewise share any information the Respondent or witnesses identified by the Respondent provide to ODR, and on which ODR may rely, with the Complainant. Povich Aff. ¶ 15.

31. Povich further explained that ODR expected the parties to keep information they learned as a result of the investigation confidential; that no party may retaliate against a party or witness as a result of their participation in ODR's investigation; and that ODR would notify the parties of any changes in procedures should they occur. Povich Aff. ¶ 15.

32. ODR Fellow Shaffer took typewritten notes of ODR's first interview of Kilburn, which Povich reviewed for accuracy shortly after the interview. Povich Aff. ¶ 16.

FH10923155.1

33. ODR Fellow Shaffer's notes describe Povich's statements at the outset of the July 13, 2020 interview with Kilburn as follows:

> [Reviews: neutral role of ODR; voluntariness of participation; under current Procedures, provide information that may rely on to both parties--parity in information sharing; will be informed in Procedures change; expectation of confidentiality; prohibition against retaliation.]

Povich Aff. ¶ 16 (citing Povich Aff. Ex. 7, at 1).

34. At the beginning of the July 13, 2020 interview of Kilburn, Povich also asked Kilburn whether Kilburn had any questions about the documents ODR had previously provided to her, including the Frequently Asked Questions Concerning the Policy and Procedures (Povich Aff. Exhibit 3) and the ODR Flowchart for Investigative Process (Povich Aff. Exhibit 4). Povich Aff. ¶ 17.

35. Kilburn said that she had spoken with her personal advisor about several of the documents. Povich Aff. ¶ 17. ODR Fellow Shaffer's notes of the July 13, 2020 state as follows:

> ODR . . . We provided you several documents including the Policy and Procedures in an email some time ago. Do you have any questions about those?
>
> [Kilburn]: Let me check, but I think [Yun, Kilburn's personal advisor] and I were able to speak about a bunch of those. I think the ones I have maybe there will be other moments to ask them.

Povich Aff. ¶ 17 (citing Povich Aff. Exhibit 7 at 1).

36. In the course of ODR's July 13 interview of Kilburn, Povich reminded Kilburn a number of times that if ODR proceeded with its investigation it would share information that she provided with Comaroff. Povich Aff. ¶ 18.

9

37. For example, Kilburn said that she had described certain interactions with Comaroff in a survey about LGBT life at Harvard. Povich Aff. ¶ 18. Povich told Kilburn that she could provide a copy of that survey to ODR but reminded her that, if she did, ODR would share that information with Comaroff. Povich Aff. ¶ 18. As ODR Fellow Shaffer's notes reflect, Povich said: "You're welcome to provide that to us. As a reminder that would be shared with [Comaroff]." Povich Aff. ¶ 18 (citing Povich Aff. Exhibit 7, at 20).

38. Later in the interview, Kilburn was asked whether she intended to file a new complaint, as the original complaint in the matter had been filed by Avakian. Povich Aff. ¶ 19. Kilburn said that she did intend to file a new complaint, and asked whether that complaint would be shared with Comaroff. Povich Aff. ¶ 19. Povich told Comaroff that it would be, and explained that under the Family Educational Rights and Privacy Act ("FERPA"), identifying information concerning students would be redacted. Povich Aff. ¶ 19. As ODR Fellow Shaffer's notes reflect:

> [Kilburn]: I think so. Yeah, I think I will. I think Seth's isn't quite complete enough from my standpoint.
>
> ODR: If it's possible to get that by Thursday, that would be great.
>
> [Kilburn]: I think I can probably try to do that. Do you prefer a PDF or word doc?
>
> ODR: Whatever works for you.
>
> [Kilburn]: That is shared with [Comaroff], correct?
>
> ODR: Yes. [Explains FERPA redactions.]

Povich Aff. ¶ 19 (citing Povich Aff. Exhibit 7, at 26-27).

39. Later on July 13, 2020, Kilburn sent ODR her own complaint, making her the Complainant under the FAS Policy and Procedures. Povich Aff. ¶ 20. That Complaint, with minor amendments

that Kilburn submitted on July 16, 2020, served as the operative complaint for ODR's investigation. Povich Aff. ¶ 20.

40. ODR's interview of Kilburn continued on July 20, 2020. Povich Aff. ¶ 21. In that interview, Povich again reminded Kilburn that information she provided to ODR would be shared with Comaroff. Povich Aff. ¶ 21. In that interview, Yun, Kilburn's personal adviser, asked whether the complaint which Kilburn had provided to ODR would be shared in full with Comaroff, except for the redaction of certain names. Povich Aff. ¶ 21. Povich responded that it would and again reminded Kilburn that any substantive documents she provided to ODR would be shared with Comaroff and the content of interviews that ODR might rely on would also be shared with him. Povich Aff. ¶ 21. As ODR Fellow Shaffer's notes reflect:

> [Yun]: Yeah, this is procedural question, so I can articulate it. [Kilburn] was asking and I didn't feel 100% confident of the answer but wanted her to have an answer. With what [Comaroff] sees, when it comes to the Complaint, the statement, it's not altered in any way except blocking out names, correct?

> ODR: Yes, we only redact student information. He'd see it in this form, like really anything you provide. We can't consider character evidence, but people frequently provide it. Our process is we share what was provided by the parties. He'll see everything you submit, and you will see everything he submits.

> [Kilburn]: Does that apply to our email exchanges before the Complaint opened?

> ODR: That doesn't apply to procedural questions, like questions on timing. We don't share that kind of information.

> [Kilburn]: Great. Connected to that, how is the interview shared? The Complaint is viewed in totality. Is the interview shared as everything gathered?

> ODR: Under the current Procedures we don't share everything in the interview. We share anything we might rely on, but we don't share the interviews in their entirety. If the Procedures change, we will let you know and explain how that change will be implemented.

11

[Kilburn]: Got it.

ODR: Our current practice is we read from the notes the portions that we might rely on.

[Kilburn]: The parts relevant to the actual possible violations of the Policy?

ODR: Yes, exactly.

Povich Aff. ¶ 21 (citing Povich Aff. Exhibit 7, at 29-30).

41. On July 29, 2020, Povich sent Comaroff formal notice that an ODR investigation had been initiated. Povich Aff. ¶ 22 (citing Povich Aff. Exhibit 8).The notice enclosed a copy of Kilburn's complaint (with student names redacted) and contained links to the FAS Policy and Procedures and the other documents Povich had sent to Kilburn on June 4, 2020. Povich Aff. ¶ 22. The notice informed Comaroff about FAS's expectation that he keep confidential information he learned through the investigatory process:

> As set forth in Section VI.D.*vi* of the FAS Policy and Procedures, *Confidentiality*, ODR, personal advisors and others at the University involved in or aware of the Complaint will take reasonable steps to protect the privacy of all involved. Once a complaint is filed, the Complainant, the Respondent, and any witnesses will be notified that disclosing information about the case has the potential for compromising the integrity of the investigation and might in certain circumstances be construed as retaliatory. Retaliation of any kind is in itself a separate violation of the Policy and may lead to an additional complaint and consequences.

> The parties remain free to share their own experiences, ***other than information they have learned solely through the investigatory process,*** though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide.

> As set forth in the FAS Policy, retaliation against an individual for raising an allegation of sexual or gender-based harassment, for cooperating in an investigation of such a complaint, or for opposing discriminatory practices is prohibited.

> Submitting a complaint that is not in good faith or providing false or misleading information in an investigation is also prohibited (emphasis added).

Povich Aff. ¶ 22 (citing Povich Aff. Exhibit 8).

42. Comaroff submitted his Response to Kilburn's complaint on August 12, 2020. Povich Aff. ¶ 23.

43. On August 13, 2020, consistent with ODR's policy to share evidence submitted by one party with another, Povich sent Kilburn by email Comaroff's Response to Kilburn's complaint and copies of the exhibits that he had provided, with student names redacted pursuant to FERPA. Povich Aff. ¶ 23.

44. During the course of the investigation, Povich regularly provided Kilburn copies of documents provided to ODR by Comaroff or by any witness Comaroff identified, including on August 13, 2020, September 21, 25 and 29, 2020 and November 20 and 25, 2020. Povich Aff. ¶ 23.

45. On August 24, 2020 Kilburn submitted a 36-page written response to the formal Response Comaroff had submitted to ODR on August 12, 2020. Povich Aff. ¶ 24.

46. In that response, Kilburn stated that, during the summer of 2018, while speaking to a counselor at Harvard University Health Services ("HUHS") she was seeing about matters unrelated to Comaroff, "I also began to speak to a counselor about Comaroff himself . . . his repeated sexual harassment of me . . . about how uncomfortable he had made me and how I felt he was involving his wife in his misconduct, using her as cover." Povich Aff. ¶ 24 (citing Povich Aff. Exhibit 9, at 25-26).

47. Kilburn's response further stated that she became concerned that her HUHS counselor might be a "mandatory reporter" obligated to report what Kilburn said to Harvard and that Kilburn "might be forced into reporting Comaroff before I was ready." Povich Aff. ¶ 24 (citing Povich Aff. 9, at 25). Kilburn's August 24, 2020 response continued:

> Because of my fear that discussing my experiences frankly with a Harvard employee would remove my agency over how that information was shared, I sought out a new licensed mental health professional with whom to discuss these issues. I consulted her in 2018 and again in 2019. . . as I specifically weighed whether I should pursue disciplinary action against Professor Comaroff. She is currently on vacation, but I believe she has specific memories of our conversations about misconduct in my department, my concerns about the damage Professor Comaroff could do to my career, and my repeated and unfruitful attempts to get assistance. She is ready to attest to this when she returns from vacation.

> Thank you to Professor Comaroff for jogging my memory on this additional incident of contemporaneous corroboration and disclosure of his misconduct and its effects on me.

Povich Aff. ¶ 24 (citing Povich Aff. 9, at 26).

48. On August 28, 2020, four days after receiving Kilburn's August 24 submission, ODR Fellow Shaffer and Povich interviewed Kilburn. Povich Aff. ¶ 25. Kilburn's personal advisor, Yun, was also present. Povich Aff. ¶ 25.

49. In that meeting, Yun raised a question concerning identifying a therapist as a potential witness. Povich Aff. ¶ 25. As ODR Fellow Shaffer's notes reflect:

> [Yun]: Procedural question about witnesses: If you confide in a confidential resource, a therapist, can you list them as a potential witness and they'll have the option to participate?

> ODR: [Explains ODR will speak to confidential resources, but that such witnesses often will not participate without a waiver from the party.]

14

[Yun]: It's okay to do that?

ODR: Absolutely. If you give them that waiver, they will generally talk to us.

[Yun]: Thank you.

＊ ＊ ＊

Povich Aff. ¶ 25 (citing Povich Aff. Exhibit 10, at 21).

50. Later in the August 28, 2020 interview, Povich followed up with Kilburn about the licensed mental health professional Kilburn had mentioned in her August 24 submission, whom Kilburn said had "specific memories of . . . conversations about misconduct in my department [and] my concerns about the damage Comaroff could do to my career . . ." Povich Aff. ¶ 26 (citing Povich Aff. Exhibit 9, at 26). As ODR Fellow Shaffer's notes reflect:

> ODR: You also referred to a licensed mental health professional and a UHS counselor. I understood you went outside the University because you were concerned about Title IX reporting requirements. Those people are confidential.
>
> [Kilburn]: I didn't realize that--only through this process. I was worried about losing control of the information at the time.
>
> ODR: Are there people outside the University or in the University who you feel like you provided information to that was not provided to other people?
>
> [Kilburn] I can't say it wasn't provided to other people, but I'm sure I spoke in great detail on impact a lot about worries in my career and what I said and what it would mean to say something about this. [The therapist] who I worked with all through fall 2018 and also spring 2019, **_and I think she should have a bunch of notes or memories for you._** (emphasis added).

Povich Aff. ¶ 26 (citing Povich Aff. Exhibit 10 at 26).

51. In the same August 28, 2020 interview, Kilburn said, as reflected in ODR's notes: "I'm really upset that I don't have access to my messages from my first semester due to that thing at the

Apple store …. I'd like to reach out to people and ask them to search things in their own messages but that's messing with witnesses." Povich Aff. ¶ 26 (citing Povich Aff. Exhibit 10 at 28). ODR responded to Kilburn's concerns by reminding her that ODR would ask witnesses she identified for any documents they may have, and disclose them to the parties. Povich Aff. ¶ 26 (citing Povich Aff. Exhibit 10 at 28). As ODR's notes reflect, Povich said to Kilburn: "We ask every single witness if they have documents that are relevant, which we share with you." Kilburn said she understood, saying "Got it," according to ODR's notes. Povich Aff. ¶ 26 (citing Povich Aff. Exhibit 10 at 28).

52. ODR did not ask Kilburn about the identity of the HUHS counselor she had seen or take steps to obtain that counselor's records. Povich Aff. ¶ 27. To this day Povich does not know the identity of that counselor and has never seen any HUHS records concerning Kilburn. Povich Aff. ¶ 27.

53. On September 14, 2020, Povich and Shaffer conducted their first interview of Comaroff. Povich Aff. ¶ 28. Comaroff's personal advisor, Janet Halley, Royall Professor of Law, Harvard Law School, was also present. Povich Aff. ¶ 28.

54. At the outset of the interview, reflecting ODR's routine practice, Povich provided Comaroff information concerning certain procedural aspects of the investigation. Povich Aff. ¶ 28. Povich focused in particular on Harvard's expectation, as stated in the FAS Policy and Procedures (*see* Povich Aff. Exhibit 1, at 27), that Comaroff would keep confidential what he learned through the investigatory process. Povich Aff. ¶ 28. As Shaffer's contemporaneous notes reflect:

> ODR: [Welcomes [Comaroff]. Reminds [him] about: expectation of confidentiality from the FAS Procedures: 'disclosing information about the case has the potential for compromising the integrity of the investigation and might in certain

circumstance be construed as retaliatory. [. . .] Parties remain free to share their own experiences, **other than information that they have learned solely through the investigatory process,** though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide'; prohibition against retaliation; right to a [personal advisor], who may be an attorney; breaks available as needed; logistics of breaks on Zoom; purpose of post-Response interview; post-Response interview relates only to [Kilburn's] complaint; parties are welcome to share information in whatever way they feel is appropriate.] Questions?

[Comaroff]: No, I think that's fine. Thank you.

Povich Aff. ¶ 28 (citing Povich Aff. Exhibit 11, at 1) (emphasis added).

55. On September 25, 2020, Kilburn sent ODR Fellow Shaffer an email containing names and contact information for eight witnesses. Povich Aff. ¶ 29 (citing Povich Aff. Exhibit 12). Kilburn wrote in the email: "I think the following would make sense as a first set of people for you to speak to; I'll attach email addresses for non-Harvard people, but please let me know if you'd like phone numbers also." Povich Aff. ¶ 29.

56. The list of eight names included the mental health counselor. Kilburn identified as a witness during ODR's August 28, 2020 ODR interview. Povich Aff. ¶ 29. The email to ODR also included the therapist's email address. Povich Aff. ¶ 29. ODR responded:

Thank you for your email. I am writing to confirm receipt of the eight potential witness names (and relevant contact information) that you submitted. You email will be redacted pursuant to the Family Educational Rights and Privacy Act ("FERPA") to remove personally identifying information of students and will be provided to Respondent. I will share with you shortly the list of witnesses identified by Respondent, and we will provide you the names of any additional witnesses identified by ODR when we identify them.

Povich Aff. ¶ 29 (citing Povich Aff. Exhibit 12).

On October 8, 2020, in a response to an email providing Kilburn documents a witness had provided, Kilburn wrote ODR:

> Thank you Ilissa and Jessica, I appreciate it. I have a question: I've noticed a shift toward me receiving emails that the Respondent sent to you, and vice versa. Early in the process it seemed that I had the ability to communicate with you all without that information automatically being sent to the Respondent-- or, for example, I would receive documents he sent you, but not other correspondence. I am wondering if you can clarify whether this is a shift that occurred at a particular moment in the process, and if it applies to all communications from here on out? Any clarification would be greatly appreciated.

Povich responded to Kilburn as follows:

> Thank you for your email. There has been no change in the ODR investigative process over the course of the investigation with respect to sharing information between the parties. ODR shares any substantive information provided by one party with the other party. Sometimes substantive information is conveyed in "cover" emails from a party, and sometimes it is only conveyed in an attachment to an email. If substantive information is only conveyed in an attached document, ODR does not provide the 'cover' email to the other party. ODR does not share emails from one party with the other party that raise only procedural questions. You may wish to refer to Question 25 of the Frequently Asked Questions Concerning the Harvard University Sexual and Gender-Based Harassment Policy and Procedures which discusses the sharing of information with the parties.

Povich Aff. ¶ 29 (citing Povich Aff. Exhibit 13).

57. On October 19, 2020, ODR Fellow Shaffer wrote to Kilburn's therapist at the email address that Kilburn provided on September 25, 2020. Povich Aff. ¶ 30. In that email, ODR Fellow Shaffer informed the therapist that ODR was reaching out to her in her "capacity as a potential witness because ODR has received notice that you may have information about a matter that our office is investigating." Povich Aff. ¶ 30 (citing Povich Aff. Exhibit 14).

58. Later on October 19, 2020, the therapist replied to ODR Fellow Shaffer, offering to speak with ODR on October 22, 2020. Povich Aff. ¶ 31 (citing Povich Aff. Exhibit 15).

18

59. On October 22, 2020, Povich and ODR Fellow Shaffer met with the therapist by Zoom. Povich Aff. ¶ 32. At the outset, ODR Fellow Shaffer explained to the therapist, among other things, that any information ODR learned during the interview that it might rely on would be shared with both parties to the investigation. Povich Aff. ¶ 32. The therapist told ODR that she believed that she knew why ODR wished to interview her because of an email she had received over the summer. Povich Aff. ¶ 32. Povich's notes from the meeting confirm that ODR Fellow Shaffer informed the therapist that ODR would share information ODR might rely on with all the parties to the investigation. Povich Aff. ¶ 32 (citing Povich Aff. Exhibit 16).

60. In ODR's October 22, 2020 interview with the therapist, the therapist explained that she had been a licensed mental health counselor for 28 years. Povich Aff. ¶ 33. She said she was no longer seeing Kilburn but had seen her approximately weekly from September 2018 to March 2019. Povich Aff. ¶ 33. As ODR's detailed notes reflect, the therapist also said: "I did get an email from [Kilburn] over the summer asking if I had documentation about what we talked about . . . related to her position as a Ph.D. candidate at Harvard and what the atmosphere is like." *Id.* (citing Povich Aff. Exhibit 16 at 1-2).

61. The therapist told ODR that Kilburn had spoken to her about what Kilburn had described as "harassment [and] feeling of unsafety . . ." Povich Aff. ¶ 34 (citing Povich Exhibit 16 at 2).

62. Shaffer followed up on Kilburn's August 28, 2020 statement that the therapist "should have a bunch of notes or memories for [ODR]" by asking the therapist whether she was willing to provide any documents related to her discussion with Kilburn to ODR. Povich Aff. ¶ 34.

63. Shaffer informed the therapist that if she provided information to ODR, and ODR concluded that it might rely on it, ODR would share that information with both parties. Povich Aff. ¶ 34. As ODR's notes reflect, Shaffer said: "If you would feel comfortable, sharing that could

19

be information we'd consider. Understand if you provide it and we think we might rely on it, we would send it to both parties." Povich Aff. ¶ 34 (citing Povich Aff. Exhibit 16 at 7).

64. Shaffer further explained to the therapist that, under FERPA, ODR would redact student identifying information from any records the therapist sent. The therapist told ODR that she had gone through her notes and found two that "might be helpful." Povich Aff. ¶ 34. She said she would provide notes from her therapy sessions with Kilburn on March 6, 2019 and March 21, 2019. Povich Aff. ¶ 34. (The therapist actually provided notes for March 20, 2019 rather than March 21, 2019. Povich Aff. ¶ 34). The therapist added: "In transmitting via email I need to comply with HIPAA." Povich Aff. ¶ 34 (citing Povich Aff. Exhibit 16 at 7). She also agreed to keep her conversations with ODR confidential, saying: "confidentiality is my bread and butter." Povich Aff. ¶ 34 (citing Povich Aff. Exhibit 16 at 8).

65. Later on October 22, 2020, the therapist sent an email to ODR Fellow Shaffer, enclosing her March 6, 2019 and March 20, 2019 therapy notes. Povich Aff. ¶ 35. The therapist added: "Good luck with your investigation." Povich Aff. ¶ 35 (citing Povich Aff. Exhibit 17).

66. At 4:33 p.m. on September 22, 2020, Shaffer wrote to the therapist:

> Thank you for taking the time to meet with us today. I am writing to confirm receipt of the two single-page documents you provided. To the extent your cover email and/or these documents contain information upon which we may rely, the information will be redacted in accordance with the Family Educational Rights and Privacy Act ("FERPA"), as appropriate, and shared with the parties.

Povich Aff. ¶ 36 (citing Povich Aff. Exhibit 18).

67. ODR interviewed the therapist solely because Kilburn identified her as a witness and provided her email address to ODR. Povich Aff. ¶ 37.

20

68. ODR obtained the therapist's notes of her March 6, 2019 and March 20, 2019 sessions solely because Kilburn told ODR that the therapist "should have a bunch of notes or memories for [ODR]." Povich Aff. ¶ 37 (citing Povich Aff. Exhibit 10 at 26).

69. Had Kilburn not identified the therapist as a witness and directed ODR to the therapist's notes, ODR would not have taken steps to interview the therapist at all. Povich Aff. ¶ 37. ODR does not seek information about Complainant's mental health counseling unless, as here, a Complainant volunteers that information and identifies the mental health counselor as a witness. Povich Aff. ¶ 37.

70. When ODR does speak to a mental health counselor a party has identified, it is ODR's practice to inform that mental health counselor with whom it speaks that it will share any information the counselor provides with both parties to the investigation. Povich Aff. ¶ 37.

71. Under the circumstances, Povich believed that the therapist could speak to ODR and send ODR the two therapy notes the therapist selected without violating any obligation to Kilburn. Povich Aff. ¶ 37.

72. On October 30, 2020, consistent with ODR's policy, and the notice of sharing information previously provided to the parties and the therapist, including the repeated notices described above, Shaffer sent redacted copies of the records the therapist had provided to Kilburn and Comaroff. Povich Aff. ¶ 38. Shaffer's email to Kilburn, which copied Yun, Kilburn's personal advisor, stated in part:

> I am writing to update you in the above matter. This week we held three witness interviews. We will do outreach to schedule additional witness interviews next week. I would also like to provide you four documents that were submitted in this

matter. Some information in these documents has been redacted for privacy reasons. Please find the following documents attached for your review:

* * *

- Two progress notes that [the therapist] submitted to ODR on October 22, 2020. Your initials and date of birth have been redacted, in accordance with the Family Educational Rights and Privacy Act ("FERPA") to remove all identifying student information.

* * *

Please let us know if you have any questions.

Povich Aff. ¶ 38 (citing Povich Aff. Exhibit 19).

73. In addition to redacting student names, the March 20 therapy notes sent to Kilburn also redacted certain information not related to the investigation. Povich Aff. ¶ 38.

74. On the same day, consistent with ODR's routine practice, grounded in the applicable policy and procedures and with the repeated notices provided as described above regarding ODR sharing information on which it might rely with the parties, Shaffer emailed Comaroff and his personal advisor copies of the same redacted therapy notes ODR had provided to Kilburn. Povich Aff. ¶ 39 (citing Povich Aff. Exhibit 20).

75. In sessions on January 5, 6, and 7, 2021, Povich met with Kilburn and her personal advisor, Yun, to hold a "review of evidence" meeting, a standard part of the ODR process, in which ODR reviews the evidence it has gathered with the parties and asks follow-up questions. Povich Aff. ¶ 40.

76. ODR Program Administrator Erika Christensen was also present for the interview, and took detailed, contemporaneous typewritten notes, which Povich reviewed shortly after these meetings. Povich Aff. ¶ 40 (citing Povich Aff. Exhibit 21.)

22

77. At the beginning of the second day of that interview, Povich asked Kilburn whether she had any questions or comments on the meeting the previous day. Povich Aff. ¶ 40. As ODR's notes state:

> ODR: I'm happy to pick up where we left off, but first, do you have any questions or want to comment on anything?
>
> [Kilburn]: I don't think so. Yeah. I was thinking, just kind of trying to get a sense of how long this might take and if there are people I should be taking off this list, but why don't we get started. I *also realize I did have some emails with [the therapist] that maybe I'll send you that I think could potentially be helpful, conversations I explicitly remembered having about [Comaroff] and I think she did lose some records, so I can send you that.* (emphasis added).

Povich Aff. ¶ 40 (citing Povich Aff. Exhibit 21 at 44). (Kilburn did not in fact share additional emails to the therapist with ODR. Povich Aff. ¶ 40.) During the January 5-7, 2020 meetings, and consistent with ODR's practice to review evidence it gathers with both parties to an ODR investigation, Povich read to Kilburn from ODR's notes of interviews of witnesses Kilburn had identified and from notes of witnesses Comaroff had identified Povich Aff. ¶ 40. As part of that process, on January 6, 2021, Povich read to Kilburn from ODR's notes of ODR's October 22, 2020 interview of the therapist. Povich Aff. ¶ 40 (citing Povich Aff. Exhibit 21 at 86-89).

78. Consistent with ODR's policies of sharing information provided by witnesses identified by one party to the other party, on January 6, 2021 and January 7, 2021 Povich also read to Kilburn from ODR notes of its interviews with four witnesses Comaroff had identified. Povich Aff. ¶ 41 (citing Povich Aff. Exhibit 21 at 103-44). In addition, Povich read to Kilburn from ODR's notes of its interview with Comaroff. Povich Aff. ¶ 41 (citing Povich Aff. Exhibit 21 at 147-71).

FH10923155.1

79. At the end of ODR's January 7, 2021 meeting with Kilburn, as ODR's notes reflect, Povich explained ODR's next steps. Povich Aff. ¶ 42. In particular, Povich told Kilburn that ODR's next step was to hold a review of the evidence it had gathered with Comaroff. Povich Aff. ¶ 42 (citing Povich Aff. Exhibit 21 at 171).

80. Kilburn expressed no concerns about ODR meeting with Comaroff to conduct that review of evidence or about ODR sharing with Comaroff information it obtained from witnesses Kilburn had identified, just as ODR had disclosed to Kilburn information provided by witnesses Comaroff had identified. Povich Aff. ¶ 42.

81. In the weeks that followed, ODR sent Kilburn a weekly email updating her on the status of ODR's investigation. Povich Aff. ¶ 43. Each of these emails informed Kilburn that ODR was preparing for Comaroff's "review of evidence" meeting. Povich Aff. ¶ 43. ODR sent these emails on January 15, 2021 (Povich Aff. ¶ 43 (citing Povich Aff. Exhibit 22)), January 22, 2021 (Povich Aff. ¶ 43 (citing Povich Aff. Exhibit 23)), and January 29, 2021 (Povich Aff. ¶ 43 (citing Povich Aff. Exhibit 24)).

82. On January 20, 2021, Kilburn wrote to Povich among others: "Could you provide me some specifics on when I will next be needed for this process? I wasn't sure if it was a month from our last conversation, *or **a month after your evidence review with JC [Comaroff]."*** (Emphasis added)." Povich Aff. ¶ 44 (citing Povich Aff. Exhibit 25).

83. In emails on February 5, 2021, February 12, 2021, February 19, 2021, and February 23, 2021, Povich updated Kilburn on ODR's progress conducting Comaroff's review of evidence interview. Povich Aff. ¶ 45 (citing Povich Aff. Exhibits 26-29).

FH10923155.1

84. Povich conducted Comaroff's review of evidence interview on February 11-12, 2021, February 18-19, 2021, February 22, 2021 and February 25-26, 2021. Povich Aff. ¶ 46. ODR Program Administrator Erika Christensen also attended the interview, as did Comaroff and his personal advisor, Halley. Povich Aff. ¶ 46 (citing Povich Aff. Exhibit 30).

85. At the beginning of the first interview Povich reminded Comaroff about the FAS Policy and Procedures' expectation of confidentiality. As Christensen's contemporaneous notes reflect:

> Before we start with the questions, I have a few reminders. The first is the expectation of confidentiality from the FAS Procedures, [reads from Procedures: 'disclosing information about the case has the potential for compromising the integrity of the investigation and might in certain circumstance be construed as retaliatory. [. . .] Parties remain free to share their own experiences, other than information that they have learned solely through the investigatory process, though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide']. Also, a reminder of the prohibition against retaliation. You're apparently aware you have a right to a personal advisor who may be an attorney, as you have a personal advisor who is an attorney.

Povich Aff. ¶ 47 (citing Povich Aff. Exhibit 30 at 1-2).

86. At the end of the final interview, on February, 26, 2021, Povich again reminded Comaroff about the expectation of confidentiality. Povich Aff. ¶ 48. As Christensen's notes state:

> Finally, I just wanted to make the usual reminder on the expectation of confidentiality and the prohibition against retaliation that continue to apply. Thank you again for your participation.

Povich Aff. ¶ 48 (citing Povich Aff. Exhibit 30 at 350).

87. Consistent with ODR's policy and the repeated notices provided to Kilburn, Povich read from ODR's notes of its interview with the therapist during ODR's February 12, 2021 review of evidence interview with Comaroff. Povich Aff. ¶ 49.

25

88. During ODR's investigation, ODR did not discuss what the therapist told ODR in ODR's October 22, 2020 interview with anyone other than Kilburn and her personal advisor (Yun) and with Comaroff, and his personal advisor (Halley). Povich Aff. ¶ 50.

89. ODR informed the parties what the therapist said on only one occasion for each party, in their review of evidence interviews. Povich Aff. ¶ 50. ODR likewise did not disclose the therapist's notes to any person other than Kilburn, her personal advisor (Yun), Comaroff, and his personal advisor (Halley), except in connection with its disclosure of the Final Report to FAS, as described below in Povich Aff. ¶ 55. Povich Aff. ¶ 50.

90. These disclosures reflect ODR's routine practice, grounded in the applicable policy and procedures, as ODR repeatedly informed Kilburn during the investigation. Povich Aff. ¶ 50. ODR did not discuss what the therapist told ODR or discuss her notes with any other witness it interviewed during the investigation. Povich Aff. ¶ 50.

91. On May 10, 2021, Povich sent Kilburn an email attaching a Draft Report of ODR's investigation of her complaint against Comaroff. Povich Aff. ¶ 51 (citing Povich Aff. Exhibit 31). As Povich's email stated, "Under the *FAS Procedures,* the Investigator provides Complainant and Respondent with a written draft of the findings of fact and analysis and gives both parties one week to submit a written response to the draft." Povich Aff. ¶ 51 (citing Povich Aff. Exhibit 31.) Povich's May 10, 2021 email also stated: "The documents referenced in the Draft Report were already provided by you or to you during the investigation, and will be attached as exhibits to the Final Report." Povich Aff. ¶ 51 (citing Povich Aff. Exhibit 31).

92. On the same date (May 10, 2021) Povich also emailed Comaroff a copy of the Draft Report. Povich Aff. ¶ 52 (citing Povich Aff. Exhibit 32). The May 10, 2021 emails Povich sent to Kilburn and to Comaroff each contained the following identical language:

> Please also bear in mind the confidentiality provision of the *FAS Procedures*, which read as follows:
>
> *vi. Confidentiality*
>
> The ODR, personal advisors, and others at the University involved in or aware of the complaint will take reasonable steps to protect the privacy of all involved. Once a complaint is filed, the Complainant or Reporter, the Respondent, and any witnesses will be notified of the potential for compromising the integrity of the investigation by disclosing information about the case and the expectation that they therefore keep such information – including any documents they may receive or review – confidential. They also will be notified that sharing such information might compromise the investigation or may be construed as retaliatory. Retaliation of any kind is in itself a separate violation of this Policy and may lead to an additional complaint and consequences.
>
> The parties remain free to share their own experiences, other than information that they have learned solely through the investigatory process, though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide.

Povich Aff. ¶ 52 (citing Povich Aff. Exhibit 31-32).

93. The May 10, 2021 Draft Report sent to Kilburn and to Comaroff referred specifically to ODR having conducted an interview of the therapist, and of having reviewed the therapist's individual psychotherapy notes dated March 6, 2019 and March 20, 2019. Povich Aff. ¶ 53 (citing Povich Aff. Exhibit 33). The Draft Report refers to the therapist as "Witness 8" rather than by her name. Povich Aff. ¶ 53.

94. On June 14, 2021, Kilburn provided a 61-page, single-spaced response to ODR's Draft Report. Povich Aff. ¶ 54.

95. Although Kilburn's response criticized ODR's investigation in many respects, Kilburn's response did not express concerns about—or, indeed, even mention—ODR's disclosure of information provided by witnesses Kilburn had identified, like the therapist, to Comaroff. Povich Aff. ¶ 54.

96. ODR issued its Final Report (with exhibits) in this matter on August 27, 2021. Povich Aff. ¶ 55. ODR sent the Report and Exhibits to Kilburn, Yun (as Kilburn's personal advisor), Comaroff, Halley (as Comaroff's personal advisor) and consistent with the FAS Policy and Procedures, to Kwok Yu, Senior Associate Dean for Faculty Affairs, "as the Title IX Resource Coordinator and Liaison for FAS." Povich Aff. ¶ 55 (citing Povich Aff. Exhibits 34-36). ODR sent the Final Report to Associate Dean Yu because the FAS Policy and Procedures, *see* Povich Aff. Exhibit 1, at 28, provides that "[t]he investigation will be completed and the final report provided to the Complainant, the Respondent, the FAS Title IX Coordinator for Faculty, the Title IX Coordinator of the School or unit with which the Complainant is affiliated as applicable, and the Dean of the FAS or his or her designee . . . ." Povich Aff. ¶ 55.

97. Applying a preponderance of the evidence standard, the Final Report concluded that Comaroff had engaged in unwelcome conduct of a sexual nature and gender-based conduct that violated the FAS Policy and Procedures with respect to a statement Comaroff made to Kilburn in a meeting in August 2017. Povich Aff. ¶ 55. Applying the same standard, the Final Report did not find that several other allegations Kilburn made constituted violations of the FAS Policy and Procedures. Povich Aff. ¶ 55.

98. ODR's Final Report identified Kilburn's therapist as Witness 8, a "licensed mental health counselor." Povich Aff. ¶ 56 The Final Report stated that Witness 8 had provided progress notes

28

for individual psychotherapy sessions on March 6, 2019 and March 20, 2019. Povich Aff. ¶ 56. The Final Report attached as exhibits the redacted progress notes previously provided to Kilburn and Comaroff. Povich Aff. ¶ 56 (citing Povich Aff. Exhibits 19-20).

99. The Final Report informed the parties about the appeals process as follows:

> The *FAS Procedures* provide that both Complainant and Respondent may appeal the decision to the Dean of the FAS or his or her designee. The Dean of the FAS has identified the University Title IX Coordinator as the designee. The University Title IX Coordinator has designated the responsibility for addressing an appeal to a properly trained standing committee of faculty and senior administrators. If an appeal is received, an impartial and unbiased panel would be drawn from the standing committee. An appeal may be based on the following grounds:
>
> 1. A procedural error occurred, which may change the outcome of the decision; or
>
> 2. The appellant has substantive and relevant new information that was not available at the time of investigation and that may change the outcome of the decision.
>
> Disagreement with the Investigator's findings or determination is not, by itself, a ground for appeal.

Povich Aff. ¶ 57 (citing Povich Aff. Ex. 37 at 75).

100.    On September 3, 2021, Kilburn submitted an appeal of ODR's Final Report to Nicole M. Merhill, the Director of Harvard's Office for Gender Equity ("OGE") and the University's Title IX Coordinator. Povich Aff. ¶ 58 (citing Povich Aff. Povich Aff. Exhibit 38). That appeal did not complain about ODR having shared the therapy notes the therapist had provided with Comaroff. Povich Aff. ¶ 58. *See also* Affidavit of Alexandria Masud ("Masud Aff.") ¶ 2.

101.    On September 3, 2021, OGE also received an appeal from Comaroff in the same matter. Masud Aff. ¶ 2.

102.     Upon receiving the appeals, the Faculty of Arts and Sciences convened a panel of three faculty members drawn from a pool of trained standing committee faculty and senior administrators. This panel of three decided both appeals. Masud Aff. ¶ 5.

103.     On September 10, 2021, OGE emailed each of the three panelists a link to a Level 4 secure Sharepoint which included the Final Report, exhibits, policies and procedures, and appeal documents. The email also contained a link to the Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts & Sciences as then in effect, which contained the following language:

> Confidentiality. **The ODR, personal advisors, and others at the University involved in or aware of the complaint will take reasonable steps to protect the privacy of all involved.** Once a complaint is filed, the Complainant or Reporter, the Respondent, and any witnesses will be notified of the potential for compromising the integrity of the investigation by disclosing information about the case and the expectation that they therefore keep such information – including any documents they may receive or review – confidential. They also will be notified that sharing such information might compromise the investigation or may be construed as retaliatory. Retaliation of any kind is in itself a separate violation of this Policy and may lead to an additional complaint and consequences. The parties remain free to share their own experiences, other than information that they have learned solely through the investigatory process, though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide. (Emphasis added).

Masud Aff. ¶ 6.

104.     Each of the three panel members viewed the Final Report and exhibits on this confidential shared portal. Masud Aff. ¶ 7.

FH10923155.1

105.    At the start and conclusion of the panel convening, the panelists were instructed not to share materials or their deliberations with anyone outside the appellate panel at any point during or after the convening. Masud Aff. ¶ 8.

106.    Following the appellate panel's denial of Comaroff's appeal, the question of what sanction to impose against Comaroff based on ODR's finding against him rests with the Dean of the Faculty of Arts and Sciences, Claudine Gay. Affidavit of Kwok W. Yu ("Yu Affidavit") ¶ 3.

107.    For that reason, Yu shared ODR's Final Report with Dean Gay, Administrative Dean for Faculty Affairs and Planning Nina Zipser, and Dean of Social Science Lawrence D. Bobo, the group who provided advice to Dean Gay in connection with consideration of possible sanctions against Comaroff based on ODR's finding and in connection with the question whether to proceed with a professional conduct review. Yu Affidavit ¶ 3. At this time, Yu also provided a copy of the Final Report, including the Exhibits, to a lawyer in Harvard's Office of General Counsel who provided legal counsel to this group. *Id.*

108.    To effectuate the sanction imposed against Comaroff, Yu provide a copy of the Report, without exhibits—specifically, without Kilburn's therapist's notes—and with the sections of the Report relating to Kilburn's therapist redacted, to one other individual. Yu Affidavit ¶ 4.

*Respectfully submitted,*

Victoria L. Steinberg, BBO #666482
Julien M. Mundele, BBO #694001
Rachel C. Hutchinson, BBO #696739
TODD & WELD LLP
One Federal Street
Boston, MA 02110
Telephone:    (617) 624-4714
Facsimile:    (617) 624-4814
vsteinberg@toddweld.com
jmundele@toddweld.com
rhutchinson@toddweld.com

*/s/Martin F. Murphy*
Martin F. Murphy, BBO #363250
Madeleine K. Rodriguez, BBO #684394
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mmurphy@foleyhoag.com
mrodriguez@foleyhoag.com

*Attorneys for Defendants,*
*Harvard University and President and Fellows of*
*Harvard College*

## CERTIFICATE OF SERVICE

I, Martin F. Murphy, hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served to all counsel of record on May 31, 2022.

*/s/ Martin F. Murphy*
Martin F. Murphy

FH10923155.1