## AFFIDAVIT OF ILISSA POVICH

I, Ilissa Povich, hereby depose and state under oath and upon personal knowledge:

1. My name is Ilissa Povich. I currently serve as a Senior Investigator with Harvard University's Office for Dispute Resolution ("ODR"), the Harvard office responsible for investigation of formal complaints of sexual harassment at Harvard. I have worked as an investigator at ODR since 2015. I am a member of the bar of the Commonwealth of Massachusetts.

2. I was the ODR Senior Investigator assigned in 2020 to investigate allegations concerning John Comaroff, Professor of African and African American Studies and Anthropology by, among others, Lilia Kilburn, a graduate student at Harvard. The investigation concerned allegations that Professor Comaroff had violated the Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts and Sciences at Harvard University ("the FAS Policy and Procedures"). A true copy of the FAS Policy and Procedures then in effect is attached as Exhibit 1.

3. I worked on the investigation with Jessica Shaffer, then an ODR Fellow. Ms. Shaffer is also a member of the Massachusetts Bar.

4. I provide this Affidavit to respond to certain allegations made in Ms. Kilburn's complaint, (1:22-cv-10202-JGD), which I have reviewed.

5. ODR's investigation of the concerns expressed by Ms. Kilburn began on May 18, 2020. On that date, ODR received an email from Seth Avakian, Ph.D., Program Officer for Title IX and Professional Conduct in Harvard's Faculty of Arts and Sciences, attaching a complaint that described allegations made to him by several graduate students about Professor Comaroff. Under the FAS Policy and Procedures, complaints against a faculty member may be initiated directly by

1

the person whom the faculty member allegedly harassed or, as was the case here, by "a third party filing on behalf of a potential Complainant ('Reporter')." Exhibit 1, at 25. Mr. Avakian's email and the Complaint he attached constituted the formal initiation of a complaint against Professor Comaroff.

6.   Under the FAS Policy and Procedures, Mr. Avakian's Complaint required ODR to conduct what the FAS Policy and Procedures call an "Initial Review." As the FAS Policy and Procedures state:

> The Investigator will contact the Complainant or Reporter in an attempt to gather a more complete understanding of the allegations, as well as any related conduct that may implicate this Policy. When a complaint is brought by a Reporter, the Investigator will endeavor to meet with the person identified as the potential Complainant both to gather information and to discuss his or her interest in participating in an investigation.
>
> Based on the information gathered, the Investigator will determine whether the information, if true, would constitute a violation of this Policy such that an investigation is warranted . . .

Id. at 26.  As part of that initial review, on May 29, 2020, I spoke with Mr. Avakian, who identified Ms. Kilburn as one of the graduate students who had made allegations against Professor Comaroff, as a potential Complainant.[1]

7.   On June 4, 2020, I emailed Ms. Kilburn. A true copy of that email is attached as Exhibit 2.[2] I wrote:

---

[1] On June 3, 2020, Mr. Avakian submitted a revised Complaint. The revisions related to another potential Complainant; the allegations concerning Ms. Kilburn did not change.

[2] In certain instances, the exhibits attached to this Affidavit have been redacted.  The redactions include: (1) email addresses and phone numbers of all individuals and (2) the names and in certain instances the

Dear Lilia,

I am an Investigator in the Office for Dispute Resolution ("ODR"), and I am reaching out to see whether you would be available to discuss a matter that has come to the attention of our office. You are not suspected of wrongdoing in this matter. I am contacting you because a formal complaint was filed in our office, and I was informed that you may have information pertaining to the complaint. I am contacting you in your capacity as a potential witness or potential complainant.

Please find the following documents linked for your review: 1) **the Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts and Sciences Harvard University;** 2) **Harvard University's Procedures for Handling Complaints Involving Students** Pursuant to **the Sexual and Gender-Based Harassment Policy;** 3) **Frequently Asked Questions Concerning the Policy and Procedures;** 4) **Frequently Asked Questions Concerning the FAS Policy and Procedures;** 5) the **ODR Flowchart for Investigative Process;** and 6) the **Personal Advisor Role Frequently Asked Questions.** As outlined in these documents, your participation is entirely voluntary, and ODR respects and protects privacy to the greatest extent possible, sharing information only on a need-to-know basis.

I would like to set up a meeting with you to discuss the allegations in the complaint. If you wish, you may include a personal advisor, who can be any person who is not involved in the Complaint, including an attorney, in this meeting.

I would like to schedule two hours for our meeting, which will occur remotely via Zoom. Please let me know if you are available for a two-hour period on Monday, June 8, 2020 anytime between noon and 5:00 p.m. or on Tuesday, June 9, 2020 anytime between 9:30 a.m. and 1:00 p.m.

I look forward to speaking with you.[3]

---

titles of individuals, except when those individuals were either (a) parties to the investigation or (b) Harvard officers or staff who had responsibilities relating to the investigation.

[3] ODR's June 4, 2020 email (Exhibit 2) refers to the FAS Policy and Procedures *and* to Harvard University's Procedures for Handling Complaints Involving Students Pursuant to the Sexual and Gender-Based Harassment Policy. Section II of the FAS Policy and Procedures states that the FAS Policy and Procedures adopts the Harvard University Sexual and Gender-Based Harassment Policy [the "University Policy"] and incorporates the Harvard University Procedures for Handling Complaints Involving Students Pursuant to the Sexual and Gender-Based Harassment Policy [the "University Procedures"].

8. My June 4, 2020 email to Ms. Kilburn contained hyperlinks (set out in bold in Paragraph 7 above) to documents describing ODR's investigative process. A true copy of the document referenced in my June 4, 2020 email to Ms. Kilburn as **Frequently Asked Questions Concerning the Policy and Procedures** (as it existed as a linked document on June 4, 2020) is attached as Exhibit 3. A true copy of the document referenced in my June 4, 2020 email to Ms. Kilburn as **ODR Flowchart for Investigative Process** (as it existed as a linked document on June 4, 2020) is attached as Exhibit 4.

9. Each of these two documents, the **Frequently Asked Questions Concerning the Policy and Procedures** (Exhibit 3) and the **ODR Flowchart for Investigative Process** (Exhibit 4), described ODR's policies and practices concerning the sharing of information provided to ODR by individuals who make complaints to ODR ("Complainants"), by witnesses, or by the individuals against whom those complaints are made ("Respondents").

10. In particular, Exhibit 3 (**Frequently Asked Questions Concerning the Policy and Procedures**) included the following language:

> Will both parties have access to the materials that ODR uses in reaching its conclusions?
>
> Yes. During the course of the investigation, both the complainant and the respondent will have the opportunity to respond to all information used by the Investigative Team in reaching its conclusions. ***They will also have the opportunity to provide the Investigative Team with any additional information that they have. This information, like other information received from the complainant and respondent during the investigatory process, will be shared with the other***. In addition, each party will have the opportunity to review and comment on the draft investigative report, and the Investigative Team will evaluate the comments before issuing a final report (emphasis added).

4

11. Exhibit 4 (**ODR Flowchart for Investigative Process**) contains a detailed description of ODR's investigatory process for violations of the University Sexual and Gender-Based Harassment Policy. It explains that, if ODR determines that the facts alleged, if true, would "constitute a violation of the Policy . . .

> ODR notifies the Complainant or Reporter and appropriate School or unit of the plan to investigate. . . .
>
> ODR notifies the Respondent in writing of allegations and provides Respondent with copies of the complaint and any supporting materials filed with the complaint. ODR informs Respondent of their rights . . .
>
> ODR conducts separate interviews with each of the parties. If applicable, the parties may bring a Personal Advisor to their respective interviews with ODR. A Personal Advisor may be, for example, a University officer, attorney, or advocate . . .
>
> ***ODR collects additional information (e.g., interview witnesses, collect documents, conduct site visits). The parties may submit additional materials they believe may be relevant. Copies of these materials will be given to the other party and, at that party's discretion, their Personal Advisor (if applicable)*** . . . (emphasis added).

12. The FAS Policy and Procedures (which I also sent to Ms. Kilburn on June 4, 2020) contains specific provisions concerning FAS's expectations of confidentiality with respect to the investigation. In particular, the FAS Policy and Procedures state:

> Once a complaint is filed, the Complainant or Reporter, the Respondent, and any witnesses will be notified that disclosing information about the case has the potential for compromising the integrity of the investigation and might, in certain circumstances, be construed as retaliatory. Retaliation of any kind is in itself a separate violation of this Policy and may lead to an additional complaint and consequences.
>
> The parties remain free to share their own experiences, ***other than information that they have learned solely through the investigatory process,*** though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide.

Exhibit 1, at 27 (emphasis added).

13. Between June 4, 2020 and July 13, 2020, ODR and Ms. Kilburn exchanged a number of emails concerning scheduling. In those emails, ODR also responded to procedural questions Ms. Kilburn posed. In an email on July 2, Ms. Shaffer (the ODR Fellow) wrote to Ms. Kilburn (copying me):

> ODR's investigative process continues remotely during the response to the novel coronavirus. As a reminder, the Policy and Procedures grants rights to parties that do not extend to witnesses. ***Both parties have the right to review and respond to all information that ODR may rely on in the investigation, including the complaint, the response, any written information provided by a witness, or other documents submitted.***
>
> As explained in Frequently Asked Questions, FAQ #25:
>
> ***Will both parties have access to the materials that ODR uses in reaching its conclusions?***
>
> **Yes. During the course of the investigation, both the complainant and the respondent will have the opportunity to respond to all information used by the Investigative Team in reaching its conclusions.** They will also have the opportunity to provide the Investigative Team with any additional information that they have. This information, like other information received from the complainant and respondent during the investigatory process, will be shared with the other. In addition, each party will have the opportunity to review and comment on the draft investigative report, and the Investigative Team will evaluate the comments before issuing a final report.
>
> For the past six years, ODR has routinely emailed the parties such documents with redactions removing any personally identifying information of students in accordance with the Family Educational Rights and Privacy Act ("FERPA"). Likewise, ODR shares other information gathered upon which ODR may rely, such as information gathered in interviews, with the parties orally.

(emphasis added). A true copy of this email is attached as Exhibit 5.

14. On July 6, 2020, Ms. Kilburn responded to Ms. Shaffer's email: "Hi Jessica and Ilissa, Thank you for this information—it is helpful . . ." A true copy of this email is attached as Exhibit 6.

15. ODR Fellow Shaffer and I met for the first time with Ms. Kilburn and the personal advisor Kilburn had selected, Jacqueline Yun, Executive Director of the Graduate School of Arts and Sciences Student Center, by Zoom on July 13, 2020. At the outset of the interview, Ms. Kilburn confirmed that she wished to proceed as the Complainant in the investigation. I provided an overview of the ODR process, as I do as a matter of practice in the first ODR interview with participants in the ODR process. In particular, it was my practice in 2020 (and it remains my practice today) to inform participants like Ms. Kilburn, among other things, that ODR's role is neutral; that I approach the investigation with no pre-conceived idea about whether there is a violation or not; that the interviewee's participation is voluntary and that the interviewee may not only decide whether to participate generally, but may also decide whether to answer individual questions. I also explained that, to the extent ODR may rely on information provided by the parties or by witnesses, ODR would share that information with both parties. I further explained that ODR expected the parties to keep information they learned as a result of the investigation confidential and that no party may retaliate against a party or witness as a result of their participation in ODR's investigation.

16. ODR Fellow Shaffer took typewritten notes of ODR's first interview of Ms. Kilburn, which I reviewed for accuracy shortly after the interview. ODR Fellow Shaffer's notes describe my statements at the outset of the July 13, 2020 interview with Ms. Kilburn as follows:

[Reviews: neutral role of ODR; voluntariness of participation; under current Procedures, provide information that may rely on to both parties--parity in information sharing; will be informed in Procedures change; expectation of confidentiality; prohibition against retaliation.]

A true copy of selected pages from ODR Fellow Shaffer's notes of ODR's July 13, 2020 interview of Ms. Kilburn is attached as Exhibit 7. *See* p. 1.

17. At the beginning of the July 13, 2020 interview of Ms. Kilburn, I also asked Ms. Kilburn whether she had any questions about the documents ODR had previously provided to her, including the Frequently Asked Questions Concerning the Policy and Procedures (Exhibit 3) and the ODR Flowchart for Investigative Process (Exhibit 4). Ms. Kilburn said that she spoke with her personal advisor about several of the documents. ODR Fellow Shaffer's notes of the July 13, 2020 state as follows:

> ODR . . . We provided you several documents including the Policy and Procedures in an email some time ago. Do you have any questions about those?
>
> [Ms. Kilburn]: Let me check, but I think [Ms. Yun, Ms. Kilburn's personal advisor] and I were able to speak about a bunch of those. I think the ones I have maybe there will be other moments to ask them.

Exhibit 7 at 1.

18. In the course of ODR's July 13 interview of Ms. Kilburn, I reminded her a number of times that if ODR proceeded with its investigation it would share information that she provided with Professor Comaroff.  For example, Ms. Kilburn said that she had described certain interactions with Professor Comaroff in a survey about LGBT life at Harvard. I told her that she could provide a copy of that survey to ODR but reminded her that, if she did, ODR would share that information with Professor Comaroff. As ODR Fellow Shaffer's notes reflect, I said: "You're welcome to

provide that to us. As a reminder that would be shared with [Professor Comaroff]." *See* Exhibit 7, at 20.

19. Later in the interview, Ms. Kilburn was asked whether she intended to file a new complaint, as the original complaint in the matter had been filed by Mr. Avakian. Ms. Kilburn said that she did intend to file a new complaint, and asked whether that complaint would be shared with Professor Comaroff. I told her that it would be, and explained that under the Family Educational Rights and Privacy Act ("FERPA"), identifying information concerning students would be redacted. As ODR Fellow Shaffer's notes reflect:

> [Ms. Kilburn]: I think so. Yeah, I think I will. I think Seth's isn't quite complete enough from my standpoint.
>
> ODR: If it's possible to get that by Thursday, that would be great.
>
> [Ms. Kilburn]: I think I can probably try to do that. Do you prefer a PDF or word doc?
>
> ODR: Whatever works for you.
>
> [Ms. Kilburn]: That is shared with [Professor Comaroff], correct?
>
> ODR: Yes. [Explains FERPA redactions.]

*See* Exhibit 7, at 26-27.

20. Later on July 13, 2020, Ms. Kilburn sent ODR her own complaint, making her the Complainant under the FAS Policy and Procedures. That Complaint, with minor amendments that Ms. Kilburn submitted on July 16, 2020, served as the operative complaint for ODR's investigation.

21. ODR's interview of Ms. Kilburn continued on July 20, 2020. In that interview, I again reminded Ms. Kilburn that information she provided to ODR would be shared with Professor

Comaroff. In that interview, Ms. Yun, Ms. Kilburn's personal adviser, asked whether the complaint which Ms. Kilburn had provided to ODR would be shared in full with Professor Comaroff, except for the redaction of certain names. I responded that it would and again reminded Ms. Kilburn that any substantive documents she provided to ODR would be shared with Professor Comaroff and the content of interviews that ODR might rely on would also be shared with him. As ODR Fellow Shaffer's notes reflect:

> [Ms. Yun]: Yeah, this is procedural question, so I can articulate it. [Ms. Kilburn] was asking and I didn't feel 100% confident of the answer but wanted her to have an answer. With what [Professor Comaroff] sees, when it comes to the Complaint, the statement, it's not altered in any way except blocking out names, correct?
>
> ODR: Yes, we only redact student information. He'd see it in this form, like really anything you provide. We can't consider character evidence, but people frequently provide it. Our process is we share what was provided by the parties. He'll see everything you submit, and you will see everything he submits.
>
> [Ms. Kilburn]: Does that apply to our email exchanges before the Complaint opened?
>
> ODR: That doesn't apply to procedural questions, like questions on timing. We don't share that kind of information.
>
> [Ms. Kilburn]: Great. Connected to that, how is the interview shared? The Complaint is viewed in totality. Is the interview shared as everything gathered?
>
> ODR: Under the current Procedures we don't share everything in the interview. We share anything we might rely on, but we don't share the interviews in their entirety. If the Procedures change, we will let you know and explain how that change will be implemented.
>
> [Ms. Kilburn]: Got it.
>
> ODR: Our current practice is we read from the notes the portions that we might rely on.

[Ms. Kilburn]: The parts relevant to the actual possible violations of the Policy?

ODR: Yes, exactly.

See Exhibit 7, at 29-30.

22. On July 29, 2020, I sent Professor Comaroff formal notice that an ODR investigation had been initiated. A true copy of that notice is attached as Exhibit 8. The notice enclosed a copy of Ms. Kilburn's complaint (with student names redacted) and the FAS Policy and Procedures and the other documents I had sent to Ms. Kilburn on June 4, 2020. (*See* ¶ 7 above). The notice informed Professor Comaroff about FAS's expectation that he keep confidential information he learned through the investigatory process:

> As set forth in Section VI.D.*vi* of the FAS Policy and Procedures, *Confidentiality*, ODR, personal advisors and others at the University involved in or aware of the Complaint will take reasonable steps to protect the privacy of all involved. Once a complaint is filed, the Complainant, the Respondent, and any witnesses will be notified that disclosing information about the case has the potential for compromising the integrity of the investigation and might in certain circumstances be construed as retaliatory. Retaliation of any kind is in itself a separate violation of the Policy and may lead to an additional complaint and consequences.

> The parties remain free to share their own experiences, ***other than information they have learned solely through the investigatory process,*** though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide.

> As set forth in the FAS Policy, retaliation against an individual for raising an allegation of sexual or gender-based harassment, for cooperating in an investigation of such a complaint, or for opposing discriminatory practices is prohibited. Submitting a complaint that is not in good faith or providing false or misleading information in an investigation is also prohibited.

(emphasis added).

11

23. Professor Comaroff submitted his Response to Ms. Kilburn's complaint on August 12, 2020. On August 13, 2020, consistent with ODR's policy to share evidence submitted by one party with another, I sent Ms. Kilburn by email Professor Comaroff's Response to her complaint and copies of the exhibits that he had provided, with student names redacted pursuant to FERPA. During the course of the investigation, I regularly provided Ms. Kilburn copies of documents provided to ODR by him or by any witness he identified, including on August 13, 2020, September 21, 25 and 29, 2020, and November 20 and 25, 2020.

24. On August 24, 2020. Ms. Kilburn submitted a 36-page written response to the formal Response Professor Comaroff hàd submitted to ODR on August 12, 2020. In that response, Ms. Kilburn stated that, during the summer of 2018, while speaking to a counselor at Harvard University Health Services ("HUHS") she was seeing about matters unrelated to Professor Comaroff, "I also began to speak to a counselor about Professor Comaroff himself . . . his repeated sexual harassment of me . . . about how uncomfortable he had made me and how I felt he was involving his wife in his misconduct, using her as cover." A true copy of selected pages of Ms. Kilburn's response is attached as Exhibit 9 (*see* 25-26). Ms. Kilburn's response further stated that she became concerned that her HUHS counselor might be a "mandatory reporter" obligated to report what Ms. Kilburn said to Harvard and that Ms. Kilburn "might be forced into reporting Professor Comaroff before I was ready." *Id.* at 25. Ms. Kilburn's August 24, 2020 response continued:

> Because of my fear that discussing my experiences frankly with a Harvard employee would remove my agency over how that information was shared, I sought out a new licensed mental health professional with whom to discuss these issues. I consulted her in 2018 and again in 2019. . . as I specifically weighed whether I should pursue disciplinary action against Professor Comaroff. She is currently on

12

vacation, but I believe she has specific memories of our conversations about misconduct in my department, my concerns about the damage Professor Comaroff could do to my career, and my repeated and unfruitful attempts to get assistance. She is ready to attest to this when she returns from vacation.

Thank you to Professor Comaroff for jogging my memory on this additional incident of contemporaneous corroboration and disclosure of his misconduct and its effects on me.

*Id*. at 26.

25. On August 28, 2020, four days after receiving Ms. Kilburn's August 24 submission, ODR Fellow Shaffer and I interviewed Ms. Kilburn. Ms. Kilburn's personal advisor, Ms. Yun, was also present. In that meeting, Ms. Yun raised a question concerning identifying a therapist as a potential witness. As ODR Fellow Shaffer's notes reflect:

[Ms. Yun]: Procedural question about witnesses: If you confide in a confidential resource, a therapist, can you list them as a potential witness and they'll have the option to participate?

ODR: [Explains ODR will speak to confidential resources, but that such witnesses often will not participate without a waiver from the party.]

[Ms. Yun]: It's okay to do that?

ODR: Absolutely. If you give them that waiver, they will generally talk to us.

[Ms. Yun]: Thank you.

* * *

A true copy of selected pages of ODR Fellow Shaffer's notes is attached as Exhibit 10. *See* p. 21.

26. Later in the August 28, 2020 interview, I followed up with Ms. Kilburn about the licensed mental health professional she had mentioned in her August 24 submission, whom Ms. Kilburn said had "specific memories of . . . conversations about misconduct in my department [and] my

concerns about the damage Professor Comaroff could do to my career . . ." Ex. 9, at 26. As ODR

Fellow Shaffer's notes reflect:

> ODR: You also referred to a licensed mental health professional and a UHS
> counselor. I understood you went outside the University because you were
> concerned about Title IX reporting requirements. Those people are confidential.
>
> [Ms. Kilburn]: I didn't realize that--only through this process. I was worried about
> losing control of the information at the time.
>
> ODR: Are there people outside the University or in the University who you feel
> like you provided information to that was not provided to other people?
>
> [Ms. Kilburn] I can't say it wasn't provided to other people, but I'm sure I spoke in
> great detail on impact a lot about worries in my career and what I said and what it
> would mean to say something about this. [The therapist] who I worked with all
> through fall 2018 and also spring 2019, *and I think she should have a bunch of
> notes or memories for you.*

*See* Exhibit 10 at 26 (emphasis added). In the same August 28, 2020 interview, Ms. Kilburn said,

as reflected in ODR's notes: "I'm really upset that I don't have access to my messages from my

first semester due to that thing at the Apple store .... I'd like to reach out to people and ask them

to search things in their own messages but that's messing with witnesses." *Id*. at 28. ODR

responded to Ms. Kilburn's concerns by reminding her that ODR would ask witnesses she

identified for any documents they may have, and disclose them to the parties. *Id*. As ODR's notes

reflect, I said to Kilburn: "We ask every single witness if they have documents that are relevant,

which we share with you." Ms. Kilburn said she understood, saying "Got it," according to ODR's

notes. *Id*.

14

27. ODR did not ask Ms. Kilburn about the identity of the HUHS counselor she had seen or take steps to obtain that counselor's records. To this day I do not know the identity of that counselor and have never seen any HUHS records concerning Ms. Kilburn.

28. On September 14, 2020, Ms. Shaffer and I conducted our first interview of Professor Comaroff. Professor Comaroff's personal advisor, Janet Halley, Professor of Law, Harvard Law School, was also present. At the outset of the interview, reflecting ODR's routine practice, I provided Professor Comaroff information concerning certain procedural aspects of the investigation. I focused in particular on Harvard's expectation, as stated in the FAS Policy and Procedures (*see* Exhibit 1, at 27), that Professor Comaroff would keep confidential what he learned through the investigatory process. As Ms. Shaffer's contemporaneous notes reflect:

> ODR: [Welcomes [Professor Comaroff]. Reminds [him] about: expectation of confidentiality from the FAS Procedures: 'disclosing information about the case has the potential for compromising the integrity of the investigation and might in certain circumstance be construed as retaliatory. [. . . ] Parties remain free to share their own experiences, **other than information that they have learned solely through the investigatory process,** though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide'; prohibition against retaliation; right to a [personal advisor], who may be an attorney; breaks available as needed; logistics of breaks on Zoom; purpose of post-Response interview; post-Response interview relates only to [Ms. Kilburn's] complaint; parties are welcome to share information in whatever way they feel is appropriate.] Questions?
>
> [Professor Comaroff]: No, I think that's fine. Thank you.

(emphasis added). A true copy of the first page of ODR's notes is attached as Exhibit 11.

15

29. On September 25, 2020, Ms. Kilburn sent ODR Fellow Shaffer an email containing names and contact information for eight witnesses. A true copy of this email is attached as Exhibit 12.[4] Ms. Kilburn wrote in the email: "I think the following would make sense as a first set of people for you to speak to; I'll attach email addresses for non-Harvard people, but please let me know if you'd like phone numbers also." The list of eight names included the mental health counselor Ms. Kilburn identified as a witness during ODR's August 28, 2020 ODR interview. The email to ODR also included the therapist's email address.  ODR responded;

> Thank you for your email. I am writing to confirm receipt of the eight potential witness names (and relevant contact information) that you submitted. You email will be redacted pursuant to the Family Educational Rights and Privacy Act ("FERPA") to remove personally identifying information of students and will be provided to Respondent. I will share with you shortly the list of witnesses identified by Respondent, and we will provide you the names of any additional witnesses identified by ODR when we identify them.

*Id.* On October 8, 2020, in a response to an email providing Ms. Kilburn documents a witness had provided, Ms. Kilburn wrote ODR:

> Thank you Ilissa and Jessica, I appreciate it. I have a question: I've noticed a shift toward me receiving emails that the Respondent sent to you, and vice versa. Early in the process it seemed that I had the ability to communicate with you all without that information automatically being sent to the Respondent-- or, for example, I would receive documents he sent you, but not other correspondence. I am wondering if you can clarify whether this is a shift that occurred at a particular moment in the process, and if it applies to all communications from here on out? Any clarification would be greatly appreciated.

I responded to Ms. Kilburn as follows:

---

[4] On Exhibit 12, the names of witnesses Ms. Kilburn provided have been redacted.

16

Thank you for your email. There has been no change in the ODR investigative process over the course of the investigation with respect to sharing information between the parties. ODR shares any substantive information provided by one party with the other party. Sometimes substantive information is conveyed in "cover" emails from a party, and sometimes it is only conveyed in an attachment to an email. If substantive information is only conveyed in an attached document, ODR does not provide the "cover" email to the other party. ODR does not share emails from one party with the other party that raise only procedural questions. You may wish to refer to Question 25 of the Frequently Asked Questions Concerning the Harvard University Sexual and Gender-Based Harassment Policy and Procedures which discusses the sharing of information with the parties.

*See* Exhibit 13.

30. On October 19, 2020, ODR Fellow Shaffer wrote to Ms. Kilburn's therapist at the email address that Ms. Kilburn provided on September 25, 2020. ODR Fellow Shaffer copied me on that email. In that email, ODR Fellow Shaffer informed the therapist that ODR was reaching out to her in her "capacity as a potential witness because ODR has received notice that you may have information about a matter that our office is investigating." A true copy of ODR Fellow Shaffer's October 19, 2020 email is attached as Exhibit 14.

31. Later on October 19, 2020, the therapist replied to ODR Fellow Shaffer, offering to speak with ODR on October 22, 2020. A true copy of the therapist's email is attached as Exhibit 15.

32. On October 22, 2020, ODR Fellow Shaffer and I met with the therapist by Zoom. ODR Fellow Shaffer led the interview. At the outset, ODR Fellow Shaffer explained to the therapist, among other things, that any information ODR learned during the interview that it might rely on would be shared with both parties to the investigation. The therapist told us that she believed that she knew why ODR wished to interview her because of an email she had received over the summer. My notes from the meeting confirm that ODR Fellow Shaffer informed the therapist that ODR

17

would share information ODR might rely on with both parties to the investigation. A true copy of my notes of this interview is attached as Exhibit 16.

33. In ODR's October 22, 2020 interview with the therapist, the therapist explained that she had been a licensed mental health counselor for 28 years. She said she was no longer seeing Ms. Kilburn but had seen her approximately weekly from September 2018 to March 2019. As ODR's notes (Exhibit 16) reflect, the therapist also said that she received an email over the summer from Ms. Kilburn asking whether the therapist had documentation about what she and Ms. Kilburn had "talked about. . . related to her position as a Ph.D. candidate at Harvard and what the atmosphere is like." *See* Exhibit 16 at 1-2.

34. The therapist told ODR that Ms. Kilburn had spoken to her about what Ms. Kilburn had described as "harassment [and] feeling of unsafety . . ." (Exhibit 16 at 2). Ms. Shaffer followed up on Ms. Kilburn's August 28, 2020 statement that the therapist "should have a bunch of notes or memories for [ODR]" by asking the therapist whether she was willing to provide any documents related to her discussion with Ms. Kilburn to ODR. ODR Fellow Shaffer informed the therapist that if she provided information to ODR, and ODR concluded that it might rely on it, ODR would share that information with both parties. As ODR's notes reflect, ODR Fellow Shaffer said: "If you would feel comfortable, sharing that could be information we'd consider. Understand if you provide it and we think we might rely on it, we would send it to both parties." *See* Exhibit 16 at 7. ODR Fellow Shaffer further explained to the therapist that, under FERPA, ODR would redact student identifying information from any records the therapist sent. The therapist told ODR that she had gone through her notes and found two that "might be helpful." She said she would provide

notes from her therapy sessions with Ms. Kilburn on March 6, 2019 and March 21, 2019.[5] She

added: "In transmitting via email I need to comply with HIPAA." *See* Exhibit 16 at 7. She also

agreed to keep her conversations with ODR confidential, saying: "confidentiality is my bread and

butter." *See* Exhibit 16 at 8.

35. Later on October 22, 2020, the therapist sent an email to ODR Fellow Shaffer, enclosing

her March 6, 2019 and March 20, 2019 therapy notes. The therapist added: "Good luck with your

investigation." A true copy of the therapist's email and the two therapy notes she provided is

attached as Exhibit 17.

36. At 4:33 p.m. on October 22, 2020, ODR Fellow Shaffer wrote to the therapist (copying

me):

> Thank you for taking the time to meet with us today. I am writing to confirm receipt
> of the two single-page documents you provided. To the extent your cover email
> and/or these documents contain information upon which we may rely, the
> information will be redacted in accordance with the Family Educational Rights and
> Privacy Act ("FERPA"), as appropriate, and shared with the parties.

A true copy of ODR Fellow Shaffer's email is attached as Exhibit 18.

37. ODR interviewed the therapist solely because Ms. Kilburn identified her as a witness and

provided her email address to ODR. ODR obtained the therapist's notes of her March 6, 2019 and

March 20, 2019 sessions solely because Ms. Kilburn told ODR that the therapist "should have a

bunch of notes or memories for [ODR]." *See* Exhibit 10 at 26. Had Ms. Kilburn not identified the

therapist as a witness and directed ODR to the therapist's notes, ODR would not have taken steps

to interview the therapist at all. ODR does not seek information about a Complainant's mental

---

[5] As noted below, the therapist actually provided notes for March 20, 2019 rather than March 21, 2019.

health counseling unless, as here, a Complainant volunteers that information and identifies the mental health counselor as a witness. When ODR does speak to a mental health counselor a party has identified, it is ODR's practice to inform that mental health counselor that it will share any information the counselor provides with both parties to the investigation. Under the circumstances, I believed that Ms. Kilburn's therapist could speak to ODR and send ODR the two therapy notes the therapist selected without violating any obligation to Ms. Kilburn.

38. On October 30, 2020, consistent with ODR's policy, and the notice of sharing information previously provided to the parties and the therapist, including the repeated notices described above, ODR Fellow Shaffer sent redacted copies of the records the therapist had provided to Ms. Kilburn and Professor Comaroff. ODR Fellow Shaffer's email to Ms. Kilburn, which copied me and Ms. Yun, Ms. Kilburn's personal advisor, stated in part:

> I am writing to update you in the above matter. This week we held three witness interviews. We will do outreach to schedule additional witness interviews next week. I would also like to provide you four documents that were submitted in this matter. Some information in these documents has been redacted for privacy reasons. Please find the following documents attached for your review:
>
> * * *
>
> • Two progress notes that [the therapist] submitted to ODR on October 22, 2020. Your initials and date of birth have been redacted, in accordance with the Family Educational Rights and Privacy Act ("FERPA") to remove all identifying student information.
>
> * * *
>
> Please let us know if you have any questions.

A true copy of Ms. Shaffer's email and the two redacted therapy notes she provided is attached as Exhibit 19. In addition to redacting student names, the March 20 therapy notes sent to Ms. Kilburn also redacted certain information not related to the investigation.

20

39. On the same day, consistent with ODR's routine practice, grounded in the applicable policy and procedures and with the repeated notices provided as described above regarding ODR sharing information on which it might rely with the parties, Ms. Shaffer emailed Professor Comaroff and his personal advisor copies of the same redacted therapy notes ODR had provided to Ms. Kilburn. A true copy of ODR Fellow Shaffer's email to Professor Comaroff and the two redacted therapy notes she provided is attached as Exhibit 20.

40. In three separate sessions on January 5, 6, and 7, 2021, I met with Ms. Kilburn and her personal advisor, Ms. Yun, to hold a "review of evidence" meeting, a standard part of the ODR process, in which ODR reviews the evidence it has gathered with the parties and asks follow-up questions. ODR Program Administrator Erika Christensen was also present for the interview, and took detailed, contemporaneous typewritten notes, which I reviewed shortly after these meetings. (A true copy of selected pages of these notes is attached as Exhibit 21.) At the beginning of the second day of that interview, I asked Ms. Kilburn whether she had any questions or comments on the meeting the previous day. As ODR's notes state:

> ODR: I'm happy to pick up where we left off, but first, do you have any questions or want to comment on anything?
>
> [Ms. Kilburn]: I don't think so. Yeah. I was thinking, just kind of trying to get a sense of how long this might take and if there are people I should be taking off this list, but why don't we get started. *I also realize I did have some emails with [the therapist] that maybe I'll send you that I think could potentially be helpful, conversations I explicitly remembered having about [Professor Comaroff] and I think she did lose some records, so I can send you that.*

*Id.* at 44 (emphasis added). (Ms. Kilburn did not in fact share additional emails to the therapist with ODR.) During the January 5-7, 2021 meetings, and consistent with ODR's practice to review

21

evidence it gathers with both parties to an ODR investigation, I read to Ms. Kilburn from ODR's notes of interviews of witnesses she had identified and from notes of interviews of witnesses Professor Comaroff had identified. As part of that process, on January 6, 2021, I read to Ms. Kilburn from ODR's notes of ODR's October 22, 2020 interview of the therapist. *Id.* at 86-89.

41. Consistent with ODR's policies of sharing information provided by witnesses identified by one party to the other party, on January 6, 2021 and January 7, 2021 I also read to Ms. Kilburn from ODR notes of its interviews with four witnesses Professor Comaroff had identified. *Id.* at 103-144. In addition, I read to Ms. Kilburn from ODR's notes of its interview with Professor Comaroff. *Id.* at 147-171.

42. At the end of ODR's January 7, 2021 meeting with Ms. Kilburn, as ODR's notes reflect, I explained ODR's next steps. In particular, I told Ms. Kilburn that ODR's next step was to review the evidence it had gathered with Professor Comaroff. *Id. a*t 171. Ms. Kilburn expressed no concerns about ODR meeting with Professor Comaroff to conduct that review of evidence or about ODR sharing with Professor Comaroff information it obtained from witnesses Ms. Kilburn had identified, just as ODR had disclosed to Ms. Kilburn information provided by witnesses Professor Comaroff had identified.

22

43. In the weeks that followed, ODR sent Ms. Kilburn a weekly email updating her on the status of ODR's investigation. Each of these emails informed Ms. Kilburn that ODR was preparing for Professor Comaroff's "review of evidence" meeting.[6]

44. On January 20, 2021, Ms. Kilburn wrote to me, among others: "Could you provide me some specifics on when I will next be needed for this process?  I wasn't sure if it was a month from our last conversation, *or a month after your evidence review with [Professor Comaroff]."* (Emphasis added)." (A true copy of Ms. Kilburn's January 20, 2021 email is attached as Exhibit 25.)

45. In emails on February 5, 2021 (true copy attached as Exhibit 26); February 12 (true copy attached as Exhibit 27); February 19, 2021 (true copy attached as Exhibit 28); and February 23, 2021 (true copy attached as Exhibit 29), I updated Ms. Kilburn on ODR's progress scheduling and conducting Professor Comaroff's review of evidence interview.

46. I conducted Professor Comaroff's review of evidence interview on February 11-12, 2021, February 18-19, 2021, February 22, 2021, and February 25-26, 2021. ODR Program Administrator Erika Christensen also attended the interview, as did Professor Comaroff and his personal advisor, Professor Halley. A true copy of selected pages of Ms. Christenson's contemporaneous notes of ODR's review of evidence is attached as Exhibit 30.

---

[6] ODR sent these emails under my supervision on January 15, 2021 (true copy attached as Exhibit 22), January 22, 2021 (true copy attached as Exhibit 23), and January 29, 2021 (true copy attached as Exhibit 24).

47. At the beginning of the first interview I reminded Professor Comaroff about the FAS Policy and Procedures' expectation of confidentiality. As Ms. Christensen's contemporaneous notes reflect:

> Before we start with the questions, I have a few reminders. The first is the expectation of confidentiality from the FAS Procedures, [reads from Procedures: 'disclosing information about the case has the potential for compromising the integrity of the investigation and might in certain circumstance be construed as retaliatory. [. . .] Parties remain free to share their own experiences, other than information that they have learned solely through the investigatory process, though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide']. Also, a reminder of the prohibition against retaliation. You're apparently aware you have a right to a personal advisor who may be an attorney, as you have a personal advisor who is an attorney.

*Id*. at 1-2.

48. At the end of the final interview, on February, 26, 2021, I again reminded Professor Comaroff about the expectation of confidentiality. As Ms. Christensen's notes state:

> Finally, I just wanted to make the usual reminder on the expectation of confidentiality and the prohibition against retaliation that continue to apply. Thank you again for your participation.

*Id*. at 350.

49. Consistent with ODR's policy and the repeated notices provided to Ms. Kilburn, I read from ODR's notes of its interview with the therapist during ODR's February 12, 2021 review of evidence interview with Professor Comaroff.

50. During ODR's investigation, ODR did not discuss what the therapist told ODR in ODR's October 22, 2020 interview with anyone other than Ms. Kilburn and her personal advisor (Ms. Yun) and with Professor Comaroff, and his personal advisor (Professor Halley). ODR informed

24

the parties what the therapist said on only one occasion for each party, in their review of evidence interviews. ODR likewise did not disclose the therapist's notes to any person other than Ms. Kilburn, her personal advisor (Ms. Yun), Professor Comaroff, and his personal advisor (Professor Halley), except in connection with its disclosure of the Final Report to FAS, as described below in Paragraph 54. These disclosures reflect ODR's routine practice, grounded in the applicable policy and procedures, as ODR repeatedly informed Ms. Kilburn during the investigation. ODR did not discuss what the therapist told ODR or discuss her notes with any other witness it interviewed during the investigation.

51. On May 10, 2021, I sent Ms. Kilburn an email attaching a Draft Report of ODR's investigation of her complaint against Professor Comaroff. A true copy of my email is attached as Exhibit 31. As my email stated, "Under the *FAS Procedures,* the Investigator provides Complainant and Respondent with a written draft of the findings of fact and analysis and gives both parties one week to submit a written response to the draft." My May 10, 2021 email also stated: "The documents referenced in the Draft Report were already provided by you or to you during the investigation, and will be attached as exhibits to the Final Report."

52. On the same date (May 10, 2021) I also emailed Professor Comaroff a copy of the Draft Report. A true copy of my email is attached as Exhibit 32. The May 10, 2021 emails I sent to Ms. Kilburn and to Professor Comaroff each contained the following identical language:

> Please also bear in mind the confidentiality provision of the *FAS Procedures*, which read as follows:
>
> *vi. Confidentiality*
>
> The ODR, personal advisors, and others at the University involved in or aware of the complaint will take reasonable steps to protect the privacy of all involved. Once

25

a complaint is filed, the Complainant or Reporter, the Respondent, and any witnesses will be notified of the potential for compromising the integrity of the investigation by disclosing information about the case and the expectation that they therefore keep such information – including any documents they may receive or review – confidential. They also will be notified that sharing such information might compromise the investigation or may be construed as retaliatory. Retaliation of any kind is in itself a separate violation of this Policy and may lead to an additional complaint and consequences.

The parties remain free to share their own experiences, other than information that they have learned solely through the investigatory process, though to avoid the possibility of compromising the investigation, it is generally advisable to limit the number of people in whom they confide.

*See* Exhibits 31-32.

53. The May 10, 2021 Draft Report sent to Ms. Kilburn and to Professor Comaroff referred specifically to ODR having conducted an interview of the therapist, and of having reviewed the therapist's individual psychotherapy notes dated March 6, 2019 and March 20, 2019. A true copy of selected pages of the Draft Report is attached as Exhibit 33. *See* p. 9. (The Draft Report refers to the therapist as "Witness 8" rather than by her name.)

54. On June 14, 2021, Ms. Kilburn provided a 61-page, single-spaced response to ODR's Draft Report. Although Ms. Kilburn's response criticized ODR's investigation in many respects, Ms. Kilburn's response did not express concerns about—or, indeed, even mention—ODR's disclosure of information provided by witnesses Ms. Kilburn had identified, like the therapist, to Professor Comaroff.

55. ODR issued its Final Report (with exhibits) in this matter on August 27, 2021. ODR sent the Report and Exhibits to Ms. Kilburn, Ms. Yun (as Ms. Kilburn's personal advisor), Professor Comaroff, Professor Halley (as Professor Comaroff's personal advisor) and consistent with the

FAS Policy and Procedures, to Kwok Yu, Senior Associate Dean for Faculty Affairs, "as the Title IX Resource Coordinator and Liaison for FAS." *See* Exhibits 34-36. ODR sent the Final Report to Associate Dean Yu because the FAS Policy and Procedures, *see* Ex. 1, at 28, provides that "[t]he investigation will be completed and the final report provided to the Complainant, the Respondent, the FAS Title IX Coordinator for Faculty, the Title IX Coordinator of the School or unit with which the Complainant is affiliated as applicable, and the Dean of the FAS or his or her designee . . . ." Applying a preponderance of the evidence standard, the Final Report concluded that Professor Comaroff had engaged in unwelcome conduct of a sexual nature and gender-based conduct that violated the FAS Policy and Procedures with respect to a statement Professor Comaroff made to Ms. Kilburn in a meeting in August 2017. Applying the same standard, the Final Report did not find that several other allegations Ms. Kilburn made constituted violations of the FAS Policy and Procedures.

56. ODR's Final Report identified the therapist, Ms. Kilburn's mental health counselor, as Witness 8, a "licensed mental health counselor." (A true copy of selected pages of the Final Report is attached as Exhibit 37). The Final Report stated that Witness 8 had provided progress notes for individual psychotherapy sessions on March 6, 2019 and March 20, 2019. The Final Report attached as exhibits the redacted progress notes previously provided to Ms. Kilburn and Professor Comaroff. *See* Exhibits 19-20.

57. The Final Report informed the parties about the appeals process as follows:

> The *FAS Procedures* provide that both Complainant and Respondent may appeal the decision to the Dean of the FAS or his or her designee. The Dean of the FAS has identified the University Title IX Coordinator as the designee. The University Title IX Coordinator has designated the responsibility for addressing an appeal to a properly trained standing committee of faculty and senior administrators. If an

27

appeal is received, an impartial and unbiased panel would be drawn from the standing committee. An appeal may be based on the following grounds:

1. A procedural error occurred, which may change the outcome of the decision; or

2. The appellant has substantive and relevant new information that was not available at the time of investigation and that may change the outcome of the decision.

Disagreement with the Investigator's findings or determination is not, by itself, a ground for appeal.

*See* Ex. 37 at 75.

58. On September 3, 2021, Ms. Kilburn submitted an appeal of ODR's Final Report to Nicole M. Merhill, the Director of Harvard's Office for Gender Equity and the University's Title IX Coordinator. A true copy of Ms. Kilburn's email submitting that appeal, which was forwarded to me, consistent with ordinary practice, is attached as Exhibit 38. That appeal did not complain about ODR having shared the therapy notes the therapist had provided with Professor Comaroff.

Signed under the pains and penalties of perjury this 25th day of May 2022.

Nissa Povich