UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA<br><br>*Plaintiffs,*<br><br>v.<br><br>HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE<br><br>*Defendant.* | Case No. 1:22-cv-10202-JGD |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE REDACTED VERSIONS OF SEALED EXHIBITS FILED IN SUPPORT OF HARVARD'S MOTIONS TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs move to file redacted versions of sealed Exhibits A–C to Harvard's Motion to Dismiss (Dkts. 19–20) and Exhibits 16–17 and 19–21 to Harvard's Motion for Partial Summary Judgment (Dkts. 24–29) for the public record.[1]

## INTRODUCTION

This action raises issues of immense public importance that call for public justice: the systemic deliberate indifference of one of the world's leading universities to sexual harassment and retaliation by powerful professors. This case has been covered four times in *The New York Times* and *The Boston Globe*, twice in *The Washington Post*, and by myriad other publications worldwide. These media reports have recognized the implications of this case for the ways

---

[1] As noted in Harvard's initial Motion to Seal, Plaintiffs indicated that they do not object to the filing of the documents at issue under seal provisionally, but reserved their right to address the sealing at a future date. *See* Dkt. 18 at 5. The Court granted Harvard's motion on June 2, 2022 (Dkt. 31). Plaintiffs file their proposed redacted exhibits provisionally under seal.

1

universities respond to faculty who sexually harass their students.[2] The Harvard community in particular has watched this case with intense concern.[3] For its part, Harvard has told the public—both in its statements to the press and now in its Motions to Dismiss and for Partial Summary Judgment—that this case shows its system worked.[4] It has further accused *Plaintiffs* of "chilling" students from reporting harassment with their complaint, which shines a light on the university's systemic failures.

---

[2] *See, e.g.*, Anemona Hartocollis, *A Lawsuit Accuses Harvard of Ignoring Sexual Harassment by a Professor*, N.Y. Times (Feb. 8, 2022), https://www.nytimes.com/2022/02/08/us/harvard-sexual-harassment-lawsuit.html; Michael Levenson and Anemona Hartocollis, *Colleagues Who Backed Harvard Professor Retract Support Amid Harassment Claims*, N.Y. Times (Feb. 9, 2022), https://www.nytimes.com/2022/02/09/us/harvard-sexual-harassment-letter.html; Michelle Goldberg, *Paranoia About #MeToo Overreach at Harvard*, N.Y. Times (Feb. 10, 2022), https://www.nytimes.com/2022/02/10/opinion/harvard-john-comaroff.html; Anemona Hartocollis, *After Sexual Harassment Lawsuit, Critics Attack Harvard's Release of Therapy Records*, N.Y. Times (Feb. 15, 2022), https://www.nytimes.com/2022/02/15/us/harvard-kilburn-therapy-records.html; Laura Krantz, *Three Graduate Students File Sexual Harassment Suit Against Prominent Harvard Anthropology Professor*, The Boston Globe (Feb. 8, 2022), https://www.bostonglobe.com/2022/02/08/metro/3-graduate-students-file-sexual-harassment-suit-against-prominent-harvard-anthropology-professor/; Laura Krantz, *Harvard Professors Drop Support for Colleague Accused of Sexual Harassment*, The Boston Globe (Feb. 9, 2022), https://www.bostonglobe.com/2022/02/09/metro/professors-drop-support-colleague-accused-sexual-harassment/; The Boston Globe Editorial Board, *Victims of Sexual Harassment on College Campuses Deserve Independent Investigations*, The Boston Globe (Mar. 7, 2022), https://www.bostonglobe.com/2022/03/07/opinion/victims-sexual-harassment-college-campuses-deserve-independent-investigations/; Laura Krantz, *It's Time to Fix the Vast Power Disparity Between University Graduate Students and Advisers, Critics Say*, The Boston Globe (Apr. 5, 2022), https://www.bostonglobe.com/2022/04/05/metro/its-time-fix-vast-power-disparity-between-graduate-students-advisers-critics-say/; Susan Svrluga, *At Harvard, Sexual Misconduct Allegations Prompt Questions, Retractions and Vows to Do Better*, The Washington Post (Feb. 10, 2022), https://www.washingtonpost.com/education/2022/02/10/harvard-sexual-misconduct-comaroff/; Daniel W. Drezner, *Harvard Did a Bad, Bad Thing*, The Washington Post (Feb. 9, 2022), https://www.washingtonpost.com/outlook/2022/02/09/harvard-did-bad-bad-thing/.

[3] *See, e.g.*, Isabella B. Cho and Ariel H. Kim, *Lawsuit Alleges Harvard Ignored Sexual Harassment Complaints Against Prof. John Comaroff for Years*, The Harvard Crimson (Feb. 9, 2022) (among over a dozen articles on the case by the University's daily student newspaper), https://www.thecrimson.com/article/2022/2/9/comaroff-lawsuit/.

[4] University Spokesperson Nicole Merhill, *Harvard Statements* (Feb. 10–18, 2022), https://www.harvard.edu/media-relations/2022/02/10/harvard-statements/; Dkt. 20 at 2 (alleging that Harvard followed a "searching and thorough process" and "repeatedly took appropriate action, culminating in four thorough investigations, interim measures provided to Plaintiffs, and sanctions issued against Comaroff").

Students and the public have the right to understand the parties' positions on how Harvard investigates and adjudicates complaints of sexual harassment and retaliation lodged against prominent professors, as well as the factual basis for those positions. Such public access to judicial records is "essential . . . to . . . maintain[ ] public confidence in the administration of justice," *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980) (Brennan, J., concurring). It allows the public to "monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

Yet Harvard now seeks to seal the key documents on which it relies in its motions before this Court and in its public statements of non-responsibility, asking the Court to rule on the public issues presented here based on a secret record. In its Motion to Seal (Dkt. 18) ("Motion"), Harvard has sought to seal the three final Reports of the Harvard Office of Dispute Resolution's investigation into Plaintiffs' complaints ("the ODR Reports"), Defs' Mot. at 2, even though Harvard's Motion to Dismiss relies almost *entirely* on those reports to argue that Harvard is not liable under Title IX, Mot. to Dism. (Dkt. 20) at 2, 8–10 (arguing that Plaintiffs' allegations boil down to a "disagreement with the outcome" of Harvard's investigation and heavily citing the reports in an attempt to show the investigation was adequate). The effect of permanently sealing these records would be to cloak these proceedings in secrecy, hiding from public view not only these records but briefing that discusses their contents. This course turns the presumption of public justice on its head. These records should be public with limited redactions to the names of third-party witnesses and students. *See* Exs. 1–3.

Harvard has also sought to seal documents that is says justify summary judgment on Count Ten, which claims that Harvard obtained Plaintiff Lilia Kilburn's confidential therapy records and

disclosed them to her harasser, in violation of protections for physician-patient relationships and her right to privacy under Massachusetts law. *See* Mot. at 3–4. In fact, these documents—which reflect communications between Harvard officials, Ms. Kilburn's therapist, and Ms. Kilburn—support Ms. Kilburn's claims. These communications, too, should be public and redacted only to prevent further disclosure of Ms. Kilburn's sensitive conversations with her therapist. Such disclosures are essential to the public's right to understand these proceedings.

## ARGUMENT

Courts recognize a "presumption that the public has a right to see and copy judicial records." *Standard Fin. Mgmt.*, 830 F.2d at 412. "Only the most compelling reasons can justify non-disclosure of judicial records." *Id.* at 410.

When the court reviews a request to seal judicial records, "the scales tilt decidedly toward transparency." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). The "privacy rights of participants and third parties" can justify sealing "in appropriate cases," but the court must "consider the degree to which the subject matter is traditionally considered private rather than public," the relevance of the information to the case, and whether the privacy interests at issue overcome the public's right to monitor judicial proceedings. *United States v. Kravetz*, 706 F.3d 47, 56, 58, 62–63 (1st Cir. 2013). And the party seeking sealing must adduce specific facts to show that sealing is justified. "The First Circuit has repeatedly emphasized that 'sealing of judicial documents must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, No. CV 11-10230-MLW, 2018 WL 11316801, at *2 (D. Mass. June 28, 2018) (quoting *Kravetz*, 706 F.3d at 60).

When a document does contain information that implicates privacy or other compelling interests that overcome the right of public access, sealing the whole document is seldom required.

In such cases, "it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document.'" *Kravetz*, 706 F.3d at 62 (quoting *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995)); *see further Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (explaining that courts "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure," and "[s]ealings must be explained at a level of detail" to permit such review) (internal quotation marks omitted).

### A. The Court Should Unseal the ODR Reports with Limited Redactions

Harvard does not justify sealing the entire ODR Reports of its inadequate investigation into Plaintiffs' complaints. Harvard's sole argument to seal the ODR Reports is the conclusory assertion that they "reveal highly personal, confidential, and sensitive information about the named Plaintiffs and other witnesses who were interviewed or involved with the investigation," and Harvard speculates that "revealing the ODR reports in full may have a chilling effect on student and other witness participation in the Title IX investigatory process at Harvard." Harvard Mot. at 3. In support, Harvard cites a single contested case—*DeCosta v. Chabot*—in which the court sealed investigative reports "to encourage reports and to protect the reporters." No. CIV. 92-425-M, 1994 WL 279739, at *2 (D.N.H. June 9, 1994) (where parties accused of child abuse sought disclosure of inquiry made confidential by state law). Here, the "reporters" (the Plaintiffs) are the ones who seek transparency.[5] Their privacy is not at issue.

---

[5] The two cases Harvard cites in which the court sealed Harvard's investigative reports were based on ***assented-to motions***, where the complainants likewise agreed to seal the reports of investigations into their own complaints. *Doe v. Harvard University, et al.,* Civ. Action No. 1:18-cv-12150-IT, Dkt. 25; *Leader v. Harvard University Board of Overseers, et al.*, Civ. Action No. 1:16-cv-10254-DJC, Dkt. 21. Harvard cites no case in which a court has granted an ***opposed*** motion to seal such reports in a Title IX case.

5

As to witnesses, Harvard does not explain what "sensitive information" it contends the ODR Reports contain. The original ODR Reports are already *designed* to protect witnesses' identities: they refer to all witnesses with a number (e.g., "Witness 1" and "Person A") and only identify them in a key that ODR redacts before distributing the reports.[6] The reports are therefore ready to be released in redacted form without identifying witnesses. This Court's task is thus simple: It need order sealing and redaction only of the names of all students[7] and other non-Harvard employees whose identities are not revealed by the Complaint (Dkt. 1) or Amended Complaint (Dkt. 35).[8]

Nor do the ODR Reports contain any personal information that would otherwise implicate the privacy interests of third parties. They do not discuss the details of harassment or abuse directed toward any person other than the Plaintiffs themselves. That is because, contrary to Title IX, ODR ignores past reports of misconduct against the same perpetrator when it evaluates later complaints. The public (including other Harvard students) should be allowed to see for themselves the basis for this conclusion.

---

[6] Plaintiffs received only this redacted version in the course of their participation in ODR's investigation.

[7] These redactions moot Harvard's vague claim that unspecified "FERPA protections … for other [students] who are discussed in the reports" justify sealing. Mot. at 3. Harvard does not even explain what "FERPA protections" might apply here. *See id.* As explained above, the reports do not contain any other non-public personal or sensitive information about third-party students.

[8] Plaintiffs already identified the names of most of these Harvard employees—including Professors John and Jean Comaroff and Dr. Seth Avakian—in their Complaint. *See Kravetz*, 706 F.3d at 63 ("[P]rior publicity weighs strongly against sealing."). Harvard does not provide any evidence that the public disclosure of the few other faculty who participated in the process would prevent it from obtaining relevant evidence from its own employees, whom Harvard can and does *require* to report information about alleged sexual misconduct. *See* Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts And Sciences (Dkt. 28-2) at 10–11.

### B. The Court Should Unseal the Exhibits to Harvard's Motion for Partial Summary Judgment with Redactions to Protect Ms. Kilburn's Therapy Records

Ms. Kilburn also seeks the unsealing of redacted copies of the following: 1) Harvard's notes of its interview with her therapist, 2) Harvard's notes of its final interview with Ms. Kilburn, and 3) Harvard's communications with Ms. Kilburn's therapist, Ms. Kilburn, and Professor Comaroff transmitting her private therapy notes. The sole privacy interest implicated here is Ms. Kilburn's, and it has already been vitiated by Harvard. Ms. Kilburn seeks a public accounting of those actions.

As Plaintiffs' anticipated Opposition to Harvard's Motion for Partial Summary Judgment will show, these documents bear directly on the careless way that Harvard obtained and handled Ms. Kilburn's private medical information: they expose, for example, that Harvard's investigators engaged in a free-wheeling conversation with Ms. Kilburn's therapist about her treatment, asked questions unrelated to the allegations against Professor Comaroff, and solicited Ms. Kilburn's therapy notes without confirming that Ms. Kilburn had given her therapist the requisite permission to disclose the notes or even referencing such a release. *See* Dkts. 24–29 at Exs. 16–21.

Harvard's audacious proposal that the Court render judgment on Ms. Kilburn's claim based on secret evidence and before discovery should be rejected. The public has a right to see the basis for Harvard's claim. Ms. Kilburn's proposed redactions cover the therapy records themselves and descriptions of highly sensitive conversations between Ms. Kilburn and her therapist. *See* Exs. 4–8. These redactions protect the confidentiality interests at issue. Harvard's Motion does not explain why the portions of these documents that do not describe Ms. Kilburn's therapy records should be sealed. *See* Mot. at 3–4. This is its burden, and it fails to carry it.

## CONCLUSION

The Court should therefore grant this Motion for Leave to file the attached redacted copies of the sealed exhibits for the public record.

Dated: June 22, 2022

Respectfully submitted,

*/s/ Carolin Guentert*
Carolin Guentert (*pro hac vice*)
Russell Kornblith (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
rkornblith@sanfordheisler.com
cguentert@sanfordheisler.com

Sean Ouellette (BBO# 697559)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
souellette@sanfordheisler.com

*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

I hereby certify that I have conferred with counsel for Defendant in a good faith attempt to resolve or narrow the issue. Defendant opposes the requested relief.

*/s/ Carolin Guentert*
Carolin Guentert