UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARGARET CZERWIENSKI,
LILIA KILBURN, and AMULYA
MANDAVA

    *Plaintiffs,*

v.

HARVARD UNIVERSITY AND THE
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE

    *Defendant.*

Case No. 1:22-cv-10202-JGD

## PLAINTIFFS' OPPOSITION TO HARVARD'S MOTION FOR LEAVE TO FILE UNDER SEAL ATTACHMENTS TO MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiffs oppose Harvard's Renewed Motion to Seal, in their entirety, Exhibits A–C to its Motion to Dismiss ("Motion") (Dkts. 44, 53–54). Consistent with the precedents of the First Circuit, Plaintiffs request that the Court instead order Harvard to file redacted copies of Exhibits A–C.[1]

---

[1] Harvard initially moved to seal Exhibits A–C of its Motion to Dismiss, Dkts. 19–20, and Exhibits 16-17 and 19-21 of its Motion for Partial Summary Judgment as to Count 10, Dkts. 24–25. *See* Dkt. 18. Plaintiffs opposed the sealing motion by filing a motion to unseal the exhibits and to file versions with limited redactions to the names of third-party witnesses and students. Dkt. 36. Plaintiffs emailed proposed redacted exhibits to the Court on June 24, 2022, copying Harvard's Counsel, with redactions to protect the names of students and non-Harvard employees who are not identified in the Complaint (Dkt. 1) or Amended Complaint (Dkt. 35). Harvard responded by arguing that Plaintiffs' motion to unseal and file redacted versions of the exhibits was moot, because Harvard would be filing a renewed Motion to Dismiss and new Memorandum of Law in support of its Motion for Partial Summary Judgment as to Count 10. Dkt. 38. The Court denied Plaintiffs' motion to unseal on July 8, 2022 as moot. Dkt. 41. But on July 19, 2022, Harvard filed its renewed Motion to Dismiss, *again* attaching the ODR Reports as Exhibits A–C, *again* moving to seal them on the same purported bases, and *again* failing to offer proposed redactions. Dkts. 44, 53–54.

1

## INTRODUCTION

This action raises issues of immense public importance that call for public justice: the systemic deliberate indifference of one of the world's leading universities to sexual harassment and retaliation by powerful professors. This case has been covered four times in *The New York Times* and *The Boston Globe*, twice in *The Washington Post*, and by myriad other publications worldwide. These media reports have recognized the implications of this case for the ways universities respond to faculty who sexually harass their students.[2] The Harvard community in particular has watched this case with intense concern.[3] For its part, Harvard has told the public—

---

[2] *See, e.g.*, Anemona Hartocollis, *A Lawsuit Accuses Harvard of Ignoring Sexual Harassment by a Professor*, N.Y. Times (Feb. 8, 2022), https://www.nytimes.com/2022/02/08/us/harvard-sexual-harassment-lawsuit.html; Michael Levenson and Anemona Hartocollis, *Colleagues Who Backed Harvard Professor Retract Support Amid Harassment Claims*, N.Y. Times (Feb. 9, 2022), https://www.nytimes.com/2022/02/09/us/harvard-sexual-harassment-letter.html; Michelle Goldberg, *Paranoia About #MeToo Overreach at Harvard*, N.Y. Times (Feb. 10, 2022), https://www.nytimes.com/2022/02/10/opinion/harvard-john-comaroff.html; Anemona Hartocollis, *After Sexual Harassment Lawsuit, Critics Attack Harvard's Release of Therapy Records*, N.Y. Times (Feb. 15, 2022), https://www.nytimes.com/2022/02/15/us/harvard-kilburn-therapy-records.html; Laura Krantz, *Three Graduate Students File Sexual Harassment Suit Against Prominent Harvard Anthropology Professor*, Boston Globe (Feb. 8, 2022), https://www.bostonglobe.com/2022/02/08/metro/3-graduate-students-file-sexual-harassment-suit-against-prominent-harvard-anthropology-professor/; Laura Krantz, *Harvard Professors Drop Support for Colleague Accused of Sexual Harassment*, Boston Globe (Feb. 9, 2022), https://www.bostonglobe.com/2022/02/09/metro/professors-drop-support-colleague-accused-sexual-harassment/; Boston Globe Ed. Bd., *Victims of Sexual Harassment on College Campuses Deserve Independent Investigations*, Boston Globe (Mar. 7, 2022), https://www.bostonglobe.com/2022/03/07/opinion/victims-sexual-harassment-college-campuses-deserve-independent-investigations/; Laura Krantz, *It's Time to Fix the Vast Power Disparity Between University Graduate Students and Advisers, Critics Say*, Boston Globe (Apr. 5, 2022), https://www.bostonglobe.com/2022/04/05/metro/its-time-fix-vast-power-disparity-between-graduate-students-advisers-critics-say/; Susan Svrluga, *At Harvard, Sexual Misconduct Allegations Prompt Questions, Retractions and Vows to Do Better*, Wash. Post (Feb. 10, 2022), https://www.washingtonpost.com/education/2022/02/10/harvard-sexual-misconduct-comaroff/; Daniel W. Drezner, *Harvard Did a Bad, Bad Thing*, Wash. Post (Feb. 9, 2022), https://www.washingtonpost.com/outlook/2022/02/09/harvard-did-bad-bad-thing/.

[3] *See, e.g.*, Isabella B. Cho and Ariel H. Kim, *Lawsuit Alleges Harvard Ignored Sexual Harassment Complaints Against Prof. John Comaroff for Years*, Harvard Crimson (Feb. 9, 2022) (among over a dozen articles on the case by the University's daily student newspaper), https://www.thecrimson.com/article/2022/2/9/comaroff-lawsuit/.

both in its statements to the press and now in its Motions to Dismiss and for Partial Summary Judgment—that this case shows its system worked.[4] It has further accused **Plaintiffs** of "chilling" students from reporting harassment with their complaint, which shines a light on the university's systemic failures.

Students and the public have the right to understand the parties' positions on how Harvard investigates and adjudicates complaints of sexual harassment and retaliation lodged against prominent professors, as well as the factual basis for those positions. Students and the public also have a right to understand the records in front of this Court as it passes judgment on Harvard's actions. Such public access to judicial records is "essential . . . to . . . maintain[ ] public confidence in the administration of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980) (Brennan, J., concurring). It allows the public to "monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

Yet Harvard now seeks to seal the key documents on which it relies both in its Motion to Dismiss before this Court and in its public statements of non-responsibility. It asks the Court to seal the three final Reports of the Harvard Office of Dispute Resolution's investigation into Plaintiffs' complaints ("the ODR Reports"), even though Harvard claims they are incorporated into the Amended Complaint—which is already public—and even though Harvard's Motion to Dismiss relies almost *entirely* on those reports to argue that Harvard is not liable under Title IX. *See* Mot. to Dism. (Dkt. 54) at 4–6, 19–20 (arguing that Plaintiffs' allegations boil down to a "disagree[ment] with the structure and outcome" of Harvard's investigation and heavily citing the

---

[4] University Spokesperson Nicole Merhill, *Harvard Statements* (Feb. 10–18, 2022), https://www.harvard.edu/media-relations/2022/02/10/harvard-statements/; Dkt. 54 at 2 (alleging that Harvard followed a "robust and thorough investigation by ODR of each complaint pursuant to Harvard's Title IX policies and procedures.").

reports throughout the motion in an attempt to show the investigation was adequate). Harvard thus asks the Court to dismiss this case based on a secret record.

Harvard's proposal turns the presumption of public justice on its head. Precedent in this Circuit is clear: our justice is public and the wholesale sealing of judicial records is strongly disfavored. The ODR Reports should be public with limited redactions to the names of third-party witnesses and students. Such transparency is essential to the public's right to understand these proceedings and essential to the rule of law.

### ARGUMENT

**I.    This Circuit Recognizes a Strong Presumption in Favor of Public Access to Court Documents**

Courts recognize a "presumption that the public has a right to see and copy judicial records." *Standard Fin. Mgmt.*, 830 F.2d at 412. "***Only the most compelling reasons can justify non-disclosure of judicial records***." *Id.* at 410 (emphasis added).

When the court reviews a request to seal judicial records, "the scales tilt decidedly toward transparency." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). The "privacy rights of participants and third parties" can justify sealing "in appropriate cases," but the court must "consider the degree to which the subject matter is traditionally considered private rather than public," the relevance of the information to the case, and whether the privacy interests at issue overcome the public's right to monitor judicial proceedings. *United States v. Kravetz*, 706 F.3d 47, 56, 58, 62–63 (1st Cir. 2013). And the party seeking sealing must adduce specific facts to show that sealing is justified. "The First Circuit has repeatedly emphasized that 'sealing of judicial documents must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, No. CV 11-10230-MLW, 2018 WL 11316801, at *2 (D. Mass. June 28, 2018) (quoting *Kravetz*, 706 F.3d at 60).

When a document does contain information that implicates privacy or other compelling interests that overcome the right of public access, sealing the whole document is seldom required. In such cases, "it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." *Kravetz*, 706 F.3d at 62 (quoting *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995)); *see further Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (explaining that courts "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure" and that "[s]ealings must be explained at a level of detail" to permit such review) (internal quotation marks omitted).

## II. Harvard Does Not Carry Its Burden to Rebut this Circuit's Recognized Presumption in Favor of Access to Judicial Records

Harvard does not justify sealing the entire ODR Reports. Harvard's argument to seal the ODR Reports is the conclusory assertion that they "reveal highly personal, confidential, and sensitive information about the Plaintiffs, as well as personally-identifying information and confidential material concerning other witnesses who were interviewed or involved with the ODR investigations." Harvard Mot. at 2–3. Harvard further speculates that "revealing the full Final ODR Reports may deter other student and witness participation in Harvard's Title IX investigatory processes." *Id.* In support of these conclusory and speculative arguments, Harvard cites a plainly inapposite case—*DeCosta v. Chabot*—in which the court sealed records of child abuse proceedings "to encourage reports [of child abuse] and to protect the reporters." No. CIV. 92-425-M, 1994 WL 279739, at *2 (D.N.H. June 9, 1994) (where parties accused of child abuse sought disclosure of proceedings made confidential by state law). Harvard's broad-brush arguments and inapposite precedents do not come close to the "particular factual demonstration" required. *Kravetz*, 706 F.3d at 60.

*First*, here, the "reporters" (the Plaintiffs) are the ones who seek transparency. Their privacy is not at issue. This situation thus differs from *DeCosta* where the party complaining of child abuse sought confidentiality. And the two cases Harvard cites in which the court sealed Harvard's investigative reports similarly miss the mark. They involved ***assented-to motions***, where the complainants agreed that the reports of investigations into their own complaints should be sealed. *Doe v. Harvard University, et al.*, Civ. Action No. 1:18-cv-12150-IT, Dkt. 25; *Leader v. Harvard University Board of Overseers, et al.*, Civ. Action No. 1:16-cv-10254-DJC, Dkt. 21. Harvard cites no case in which a court has sealed such reports when the complainant herself urges public access.

*Second*, as to witnesses, Harvard does not explain what "sensitive information" it contends the ODR Reports contain, as required under First Circuit precedent. *See Kravetz*, 706 F.3d at 60. Harvard instead offers only the conclusory assertion that the ODR Reports rely on "sensitive nonpublic information" about "Harvard faculty" and "Harvard student witnesses." Harvard Mot. at 2. This kind of generality plainly fails to make the "particularized" showing of "compelling reasons" that precedent requires. *Id.* at 59–60. Moreover, the original ODR Reports are already ***designed*** to protect witnesses' identities: they refer to all witnesses with a number (e.g., "Witness 1" and "Person A") and identify them only in a key that ODR redacts before distributing the reports to the parties.[5] The reports are therefore ready to be released in redacted form *without* identifying student and third-party witnesses by redacting their names in the key.

Harvard does not offer *any* argument in its Motion as to why future Harvard students would refuse to participate in Title IX proceedings just because a public filing discusses the testimony of student witnesses (with names redacted) who "spoke with Harvard voluntarily" about *Plaintiffs*'

---

[5] Plaintiffs received only this redacted version in the course of their participation in ODR's investigation.

6

experiences of harassment and retaliation. Harvard Mot. at 3. And Harvard does not contend that the reports discuss the details of any harassment or abuse other than the conduct against the Plaintiffs that has already been aired at length in the Amended Complaint and in media reports. *See* Dkt. 35. That is because, contrary to Title IX, ODR ignores past reports of misconduct against the same perpetrator when it evaluates later complaints. *See*, *e.g.*, Sealed Mot. to Dismiss Ex. B (Dkt. 20) at 14 n.21. Nor does Harvard point to any other facts in the ODR Reports that would deter witnesses from participating if disclosed. If anything, unsealing the ODR Reports would give potential future witnesses crucial insight into how ODR treats—and ultimately dismisses—witness testimony. Harvard cannot avoid transparency by vaguely gesturing at "sensitive" and "nonpublic" student information.

*Third*, as for Harvard faculty, the Amended Complaint already identifies the names of all but very few of the Harvard employees mentioned in the ODR Reports—including Professors John and Jean Comaroff and Dr. Seth Avakian—and explains their actions relevant to the case. *See Kravetz*, 706 F.3d at 63 ("[P]rior publicity weighs strongly against sealing.").[6] And Harvard does not dispute that it can and does require its own employees to share information about sexual misconduct. *See* Sexual and Gender-Based Harassment Policy and Procedures for the Faculty of Arts and Sciences (Dkt. 51-2) at 9–10. Harvard thus does not provide *any* evidence that its employees would refuse to comply with their obligations under Harvard's policies because of the faint prospect that some incrementally additional portion of their testimony might later became public in a lawsuit. Again, Harvard's broad, conclusory, and speculative assertions do not satisfy the strictures of the First Circuit's precedents.

---

[6] Indeed, Plaintiffs' Amended Complaint specifically concerns Harvard's failure to prevent and address retaliation by Professor Jean Comaroff. *See* Dkt. 35 ¶¶ 188-191, 208.

7

*Fourth,* the ODR Reports do not contain any personal information that would otherwise implicate the privacy interests of third parties. And, if they did contain such information, Harvard should have proposed redactions that addressed this information instead of wholesale sealing of the reports. *See infra* Section III; *Kravetz*, 706 F.3d at 62. Harvard did not do so—because the ODR Reports contain no such information. The public (including other Harvard students) should be allowed to see for themselves the basis for this conclusion.

*Finally*, Harvard's argument that it places a high value on the confidentiality of ODR proceedings and that its policies impose confidentiality on participants to that process actually weighs in favor of public access to these reports. Harvard Mot. at 3. Harvard's procedures concerning confidentiality are squarely at issue in this case: as Plaintiffs allege in their Amended Complaint, Harvard's secretive and non-transparent complaint procedures played an integral role in allowing multiple professors in the Anthropology Department to harass students for years. Dkt. 35 at ¶¶ 17, 128-143, 205. It was only when Plaintiffs began realizing that Harvard had repeatedly failed to act on previous reports of harassment that they were able to take action against the university. *Id.* at ¶¶ 122-143. If the ODR Reports are truly evidence of a "searching and thorough process"—as Harvard alleges in its Motion to Dismiss, Dkt. 54 at 18—they should be available on the docket to permit the public, including Harvard students, to evaluate for themselves whether Harvard treated Plaintiffs' complaints justly. *See Richmond Newspapers*, 448 U.S. at 595 (1980); *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410. Indeed, the fact that these ODR Reports are at the center of this inquiry—including before this Court—is precisely why they should be public. *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015) ("The more important the document is to the core judicial function of determining the facts and law applicable to the case, the stronger the presumption of public access and the higher the burden to overcome

it."). Critiques Harvard might face for its labyrinthine and biased ODR processes once the ODR Reports are public do not constitute the compelling reasons needed to overcome the presumption against sealing. *See Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) ("The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.").

### III.   Harvard Flouts this Circuit's Precedent By Not Even Attempting to Identify Proposed Redactions

To be sure, Plaintiffs do not oppose the sealing of certain portions of the ODR Reports to protect legitimate privacy interests of third parties. Indeed, Plaintiffs have already "edit[ed] and redact[ed] [these] judicial document[s] in order to allow access to appropriate portions of the document"—as required by the precedents of this Circuit. *See Kravetz*, 706 F.3d at 62. This Court's task is thus simple: It should reject Harvard's audacious proposal that the Court dismiss Plaintiffs' claims based on secret evidence, and order sealing and redaction only of the names of all students[7] and other non-Harvard employees whose identities are not revealed by the Complaint (Dkt. 1) or Amended Complaint (Dkt. 35) as already set forth in Plaintiffs' proposed redactions (Dkt. 36).

### CONCLUSION

Harvard should not be rewarded for its attempts to flout this Circuit's jurisprudence. The Court should therefore deny Harvard's Motion for Leave to file under seal the ODR Reports attached to its Motion to Dismiss.

---

[7] These redactions moot Harvard's vague claim that unspecified "FERPA protections … for other [students] discussed in the reports" justify sealing. Harvard Mot. at 3. Harvard does not even explain what "FERPA protections" might apply here. *See id.* As explained above, the reports do not contain any other non-public personal or sensitive information about third-party students. To the extent they contain information that *might* identify a student—such as a student's area of study or affiliation with a Harvard organization—Plaintiffs would not oppose redacting such identifying information.

Dated: August 2, 2022                        Respectfully submitted,

*/s/ Carolin Guentert*
Carolin Guentert (*pro hac vice*)
Russell Kornblith (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
rkornblith@sanfordheisler.com
cguentert@sanfordheisler.com

Sean Ouellette (BBO# 697559)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
souellette@sanfordheisler.com

*Attorneys for Plaintiffs*