### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA**<br><br>*Plaintiffs,*<br><br>v.<br><br>**HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE**<br><br>*Defendant.* | Case No. 1:22-cv-10202-JGD |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT TEN**</u>

**<u>TABLE OF CONTENTS</u>**

I.   FACTUAL BACKGROUND .................................................3
   A. <u>Plaintiff Kilburn's Claims</u>................................................3
   B. <u>Harvard's Motion for Summary Judgment on Count Ten</u>................3
      *1. Kilburn Repeatedly Expressed Concerns About Harvard's Investigation*........4
      *2. Kilburn Contacted Her Therapist, Asked to Review Her Own Therapy Notes, and Asked Her Therapist to Prepare a Brief Summary for Her Review*................5
      *3. Kilburn Told Harvard That She Believed Her Therapist Would Have Memories of Their Conversations*................5
      *4. Harvard Questioned Kilburn's Therapist About Her Sessions with Kilburn and Obtained Kilburn's Therapy Records Without Kilburn's Consent*................6
      *5. Harvard Shared Excerpts of Kilburn's Therapy Notes with Comaroff and Other Harvard Officials Without Kilburn's Consent*................7
      *6. Harvard Refused to Produce Kilburn's Full Therapy Notes to Kilburn*..........8
II.  HARVARD'S BURDEN ON SUMMARY JUDGMENT ................9
III. HARVARD CANNOT MEET ITS BURDEN BEFORE DISCOVERY .............10
   A. <u>Evidence from Un-Deposed Witnesses Cannot Meet Harvard's Burden</u>..........10
   B. <u>Even if Admissible on Summary Judgment, Harvard's Affidavits and Notes Would Not Defeat Plaintiff's Claim Under the Massachusetts Privacy Statute</u> ................12
      *1. Massachusetts Law Gives Robust Protection for Medical Records*.................12
      *2. Harvard's Failure to Obtain Written Consent Violated Federal Regulations, its Own Guidance, and Custom in the Field*................13
      *3. Harvard Does Not Establish that It Reasonably Believed that It Obtained Kilburn's Oral Consent*................15
      *4. Harvard Does Not Establish that It Reasonably Assumed that Kilburn's Therapist Obtained the Required Consent*................17
      *5. Harvard Does Not Establish that It Reasonably Disclosed the Records*..........18
   C. <u>Plaintiff's Massachusetts Common Law Claims Survive Summary Judgment</u> ................18
   D. <u>Key Issues Remain for the Jury to Resolve</u> ................19
IV.  THE COURT SHOULD DENY THE MOTION UNDER RULE 56(d) .................19
V.   CONCLUSION ................20

This case concerns Defendant Harvard University's deliberate indifference to complaints of sexual harassment and retaliation by multiple Anthropology professors, which allowed Professor John Comaroff to similarly victimize Plaintiffs Lilia Kilburn, Margaret Czerwienski, and Amulya Mandava. When Plaintiffs formally complained in 2019 (following prior complaints by others), Harvard sat idle for over a year, until the media was poised to reveal the school's inaction. Harvard's ensuing investigation failed to hold Comaroff accountable and only compounded Plaintiffs' ordeal. Count Ten addresses just one example: it alleges that during Harvard's belated investigation, Harvard's investigators unreasonably obtained Kilburn's private therapy records without a release or her consent and then shared them with Comaroff.

Harvard now asks the Court to enter an unprecedented order granting **pre-discovery** summary judgment on Count Ten based on the affidavits and notes of its own employees, whom Plaintiffs have had no opportunity to depose. Def.'s Am. Mot. Partial Summ. J. Count Ten, Dkts. 47–52 (hereinafter "Def's Mot."). Harvard does not cite a single decision in this Circuit to have ever granted such a premature summary judgment motion based on such untested, self-serving testimony. This Court should not be the first to do so.

**First**, Harvard's Amended Motion for Partial Summary Judgment as to Count Ten (the "Motion") fails under the plain language of Rule 56. "The plain language" of Rule 56 provides for summary judgment only "**after adequate time for discovery**," and only after the movant has met its burden to "**demonstrate the absence** of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (emphasis added). Harvard cannot meet this burden based on "untested affidavits" submitted by witnesses Plaintiffs have not "had an opportunity to depose." *Est. of Rahim by Rahim v. United States*, 506 F. Supp. 3d 104, 113 (D. Mass. 2020) (Talwani, J.).

***Second***, even taken as true—which is inappropriate at this stage—the contents of Harvard's affidavits and notes fail to show the absence of a triable issue on the reasonableness of its actions. Psychotherapy records are among the most sensitive and private records in existence. The law repeatedly recognizes their sensitivity: multiple federal and state statutes and regulations impose heightened safeguards, which required ***Harvard*** to seek Ms. Kilburn's "voluntary, written consent" to "access," "disclose," or "use" her medical records. *See* 34 C.F.R. § 106.45(b)(5)(i). Harvard acknowledges that it lacked such written consent and instead obtained these records based "***solely***" on one alleged oral statement by Kilburn that her private therapist "should have" some "notes or memories." *See* Def.'s Am. Statement Material Facts, Dkt. 49 ("SMF") ¶ 68. Harvard took this ambiguous statement as license to obtain ***full*** psychotherapy progress notes from two private sessions—neither of which Harvard had discussed with Kilburn, and both of which disclosed intimate details of her family life that Harvard admits had "***nothing to do with the case.***" Povich Aff. Ex. 21 at 15 (emphasis added). And Harvard then shared those notes with Kilburn's harasser and others. At each step of the way, Harvard could have asked a simple question to clarify Kilburn's intent, but it did not bother. This failure was plainly *unreasonable* and therefore violated Mass. Gen. Laws ch. 214, § 1B and Massachusetts common law.

***Third***, even if Harvard could carry its initial burden on summary judgment, the Court should deny Harvard's motion under Rule 56(d) to give Plaintiffs time for discovery. "Typically, when the parties have no opportunity for discovery, denying [a] Rule 56[d] motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *In re PHC, Inc. S'holder Litig.*, 762 F.3d 138, 144 (1st Cir. 2014); *see also* 10B Wright & Miller, Fed. Prac. & Proc. § 2741 (4th ed. 2008) ("[T]he granting of summary judgment will be held to be error when discovery is not yet completed."). Just so here.

Harvard has jumped the gun. The Court should deny the motion.

## I.   FACTUAL BACKGROUND

### A.  <u>**Plaintiff Kilburn's Claims**</u>

Plaintiffs' Complaint details that Comaroff sexually harassed Kilburn for over two years. Am. Compl. ¶ 85 (Dkt. 35). He repeatedly kissed her lips without her consent, groped her thigh, and imagined aloud her rape and murder while they were alone in his office on her first day of graduate school. *Id.* ¶¶ 85–103. When Kilburn sought to avoid his harassment and refused to meet with him alone, Comaroff retaliated: he became possessive, forbade her from working with her primary advisor, pressured her to change her dissertation topic to one in which he alone specialized, and attempted to force himself into a small space with her over her physical resistance. *Id.* ¶¶ 104–07. His behavior caused Kilburn extreme emotional distress, for which she sought therapy. *Id.* ¶¶ 87, 164, 168, 324.

Kilburn filed a complaint with Harvard's Office for Dispute Resolution ("ODR") in 2020, but Harvard's investigation was grossly deficient. *Id.* ¶¶ 149–50. Among those deficiencies, as set forth in Count Ten, Harvard obtained Kilburn's confidential therapy records without her consent and shared them with Comaroff and various other Harvard employees, at least two of whom Harvard has still not identified. *Id.* ¶¶ 164–69, 322–37.

### B.  <u>**Harvard's Motion for Summary Judgment on Count Ten**</u>

Plaintiffs filed this case on February 8, 2022. Discovery has not commenced. Nevertheless, along with its Motion to Dismiss Counts One through Nine, Harvard has moved for summary judgment on Count Ten based on affidavits and cherry-picked notes of Harvard employees whom Plaintiffs have had no opportunity to depose. As explained below, the Court may not consider this information now. But even if credited, the pre-discovery evidence before the Court is insufficient to win Harvard summary judgment.

### 1. *Kilburn Repeatedly Expressed Concerns About Harvard's Investigation*

On June 4, 2020, after *The Harvard Crimson* published an article detailing misconduct in Harvard's Anthropology Department, Ilissa Povich, an investigator for ODR, emailed Kilburn to notify her of an investigation into Comaroff. *See* Povich Aff. Ex. 2. Kilburn responded that she "would like to participate" in the investigation and asked for a meeting "to hear more about the process, as I don't feel that I have a strong understanding of what it entails." Kilburn Decl. ¶ 14; Kilburn Decl. Ex. 1. In their first meeting, Kilburn told Povich that she feared that Comaroff would retaliate against her for participating in the process. Kilburn Decl. ¶ 16. She nonetheless agreed to file a complaint to correct errors in ODR's complaint and to prevent future harm to students. *See* Plaintiffs' Resp. Def.'s Am. Statement Material Facts ("RSMF") ¶ 26.

In subsequent emails, Kilburn expressed concerns about ODR's handling of information. She wrote, "***I would have concerns about sharing electronic copies of things, given how easily they can be copied,***" and asked ODR how it would handle sharing documents. RSMF ¶ 23. ODR responded that it would share any information "used by [ODR] in reaching its conclusions" as well as "other information received from the complainant and respondent during the investigatory process." *Id.* As to information provided by ***witnesses*** "[on which] ODR may rely," ODR Fellow Jessica Shaffer told Kilburn that ODR would share such information with the parties "orally." *Id.* ODR did not mention confidential medical records or say when ODR "may rely" on such records. *See id.*; *see also* RSMF ¶¶ 29, 30, 56 (stating that ODR would share only information on which it "may rely" and not addressing electronic sharing of documents provided by witnesses).[1]

---

[1] Povich claims that ODR also told Kilburn that it would share any information ***she*** provided with Professor Comaroff. *See* SMF ¶¶ 36–37. These statements do not help Harvard, which admits that Kilburn's therapist, not Kilburn, provided ODR with the records and information at issue. *Id.* ¶ 65.

### 2. Kilburn Contacted Her Therapist, Asked to Review Her Own Therapy Notes, and Asked Her Therapist to Prepare a Brief Summary for Her Review

Comaroff responded to Kilburn's ODR complaint on August 12, 2020. *See* RSMF ¶ 42. He argued that Kilburn was lying about his behavior causing her emotional distress, which he claimed stemmed from "reasons unrelated" to his conduct. *See* Kilburn Decl. ¶ 30. This assertion was false. In fact, Kilburn had sought out a private therapist unaffiliated with Harvard *specifically* to speak about Comaroff's sexual harassment. *Id.* ¶ 31. Concerned that ODR would credit Comaroff's misrepresentations about her mental health if she did not have a witness to rebut them, Kilburn emailed her therapist on August 20, 2020 to ask if she could review the therapist's notes from **May 2019**, when Kilburn had discussed Comaroff's harassment in therapy sessions. *See* Kilburn Decl. ¶ 34. On the same day, the therapist responded that she was on vacation and could not find notes from May 2019. *Id.* ¶ 35. She offered to check her files once she returned to Boston, and to write up a "brief statement" summarizing these issues. *Id.* Kilburn consented to her therapist searching her files for notes from May 2019, as well as writing the statement which Kilburn understood would be sent for her review. *Id.* ¶ 36. Kilburn did *not* authorize the therapist to disclose raw notes from any therapy session to anyone other than Kilburn herself. *See id.* ¶ 37.

### 3. Kilburn Told Harvard That She Believed Her Therapist Would Have Memories of Their Conversations

Kilburn submitted a reply to Comaroff's ODR submission on August 24, 2020. *Id.* ¶ 38. She wrote that she believed her therapist would have "memories of [their] conversations" about specific discrete issues—"about misconduct in [her] department, [her] concerns about the damage [Comaroff] could do to [her] career"—and wrote that the therapist was "ready to attest to this when she return[ed] from vacation." *Id.* Povich admits that when she "followed up" in Kilburn's next interview on the topic, she was following up on these *specific subjects*. SMF ¶ 50.

That interview took place on August 28, 2020. Povich pressed Kilburn to name witnesses to whom she had "provided information" about Comaroff "that was not provided to other people." *Id.* According to ODR's notes, Kilburn responded that she spoke with her therapist about the "impact [sic] a lot about worries in my career" and "what it would mean" to complain. *Id.* The ODR notes, taken by a former Harvard employee who has not verified them or been deposed, state that Kilburn told Povich that the therapist "should have" some "notes *or* memories for you." *Id.* (emphasis added). Harvard then told Kilburn that it would "need contact information for [the therapist] as well." Povich Aff. Ex. 10 at 27. Kilburn complied and provided the therapist's email. *See* Povich Aff. Ex. 12. Povich did not seek or obtain signed consent from Kilburn to discuss Kilburn's confidential therapy sessions with the therapist, nor did Povich clarify the scope of any authorization that she may have believed she possessed.

### 4.  *Harvard Questioned Kilburn's Therapist About Her Sessions with Kilburn and Obtained Kilburn's Therapy Records Without Kilburn's Consent*

Kilburn had no further contact with her therapist after the August 20, 2020 email exchange asking if her therapist could review her notes from May 2019 and write a "brief statement" about those issues. *See* Kilburn Decl. ¶ 43. To lawfully disclose Kilburn's records, Massachusetts and federal law required the therapist to obtain a written release describing the "specific" "information to be used or disclosed." 45 C.F.R. § 164.508; 104 Mass. Code Regs. 27.16(9)(b). **No such release was ever executed, much less provided to Harvard**.[2]

---

[2] ODR repeatedly suggested—on August 28, 2020 and several other occasions—that Kilburn could not discuss case-related documents with witnesses and that having contact with her witnesses would damage her case. *See* Kilburn Decl. ¶ 40–42. Unsure if her outreach to her therapist had run afoul of this rule, Kilburn raised the issue in her August 28, 2020 interview, telling Povich that she feared that ODR would conclude she was "messing with witnesses" if she contacted them about documents. Povich Aff. ¶ 26 (citing Povich Aff. Exhibit 10). Povich did not correct her. And Kilburn never contacted her therapist again. Kilburn Decl. ¶ 43.

Two months later, on October 19 and 22, respectively, **Harvard nonetheless contacted and interviewed Kilburn's private therapist**. *See* SMF ¶¶ 57, 59. The therapist's answers revealed that she, too, had no written release from Kilburn: when asked if Kilburn had "provide[d] [her] with any documents," the therapist said "No." Povich Aff. Ex. 16 at 2. She said that Kilburn had sent her only the "[o]ne email" to ask if she had relevant documentation. *Id.* at 1–2.

Yet Harvard apparently breezed past these red flags, questioned the therapist about her sessions with Kilburn, and even **probed "other issues" unrelated to the case**. *Id.* at 5. At the end of the interview, ODR asked the therapist for "**any documents related to anything we've discussed**." *Id.* The therapist responded that two progress notes "might be helpful" because they discussed harassment in Kilburn's department, but further told Harvard that these notes also discussed Kilburn's unrelated "family" issues, Povich Aff. Ex. 16 at 6–7, which (as Povich later admitted to Kilburn) "**ha[d] nothing to do with the case**." Kilburn Decl. Ex. 8 at 15. Shaffer nonetheless replied that this "could be information we'd consider." Povich Aff. Ex. 16 at 7. So, at Harvard's request, the therapist told Harvard that she would send the notes with Kilburn's name redacted and sent two progress notes from March 6 and 20, 2019 by email only hours later. *Id.*; RSMF ¶ 65. No one notified Kilburn that this was happening or confirmed that she approved.

### 5. *Harvard Shared Excerpts of Kilburn's Therapy Notes with Comaroff and Other Harvard Officials Without Kilburn's Consent*

On August 30, without advance notice to Kilburn, Harvard shared excerpts of Kilburn's therapy notes with both Kilburn and Comaroff. *See* RSMF ¶ 72; Kilburn Decl. ¶ 51. Harvard did not redact the notes' reference to Kilburn's "issues with family of origin." Kilburn Decl. Ex. 7. Later, Povich **questioned Kilburn about the "family issues" identified in the notes (even though**

*she admitted they were irrelevant)*, thereby making them part of ODR's record and compounding the invasion of Kilburn's privacy. Kilburn Decl. Ex. 8 at 15–16.[3]

Harvard did not rely on the therapy records in its Draft Report, deeming them immaterial to the case. Kilburn Decl. ¶ 58. Yet, inexplicably, Harvard had nonetheless provided them to Comaroff in contravention of its own policies. Comaroff, in turn, predictably used the notes to gaslight Kilburn in his response to ODR's draft report. He quoted the records in detail to argue that Kilburn's "PTSD and history of trauma" must have distorted her perceptions or memories so that she imagined the facts to which she testified (i.e., that he kissed her on the lips multiple times, groped her thigh, and graphically described her rape and murder at length while they were alone in his office). Kilburn Decl. Ex. 10 at 2–4. Harvard then attached both the therapy records and Comaroff's argument based on them to its Final Report, which it shared with at least seven University officials and one "other individual" whom Harvard does not name. RSMF ¶¶ 103–7.[4]

### 6. *Harvard Refused to Produce Kilburn's Full Therapy Notes to Kilburn*

Harvard then refused to produce the unredacted therapy records, as well as any information concerning their acquisition or disclosure, to Kilburn. On September 29, 2021, Plaintiffs' counsel asked Harvard to produce the communications between ODR investigators and the therapist concerning Kilburn's treatment, including any representations Harvard's investigators made to obtain Kilburn's medical records as well as an unredacted version of all records the therapist sent to the Harvard. *See* Guentert Decl. ¶ 3.  Plaintiffs' counsel also asked Harvard to agree not to

---

[3] Harvard's policy of sharing complainant interviews with respondents suggests that it would have shared Povich's questions and Kilburn's answers with Comaroff. *See* SMF ¶ 21. But Harvard conspicuously omits most of Comaroff's evidence review from the record. *See* Povich Aff. Ex. 30 (containing three of 350 pages). Plaintiffs requested that Harvard share the entirety of Comaroff's 350-page evidence review pursuant to Federal Rule of Evidence 106. Guentert Decl. at 10.  Harvard has improperly ignored this request. *Id.*

[4] An un-deposed witness claims that Harvard did not attach the therapy notes or Comaroff's response to the Draft Report when it shared the report with this "other individual." RSMF ¶ 107.

8

further disclose Kilburn's medical records, to identify the individuals who have received a copy of the records, and to instruct these individuals to return the records to Harvard's general counsel's office. *See id*. Harvard refused. *See id*.

The first time Kilburn saw her own unredacted medical records was when Harvard attached them as exhibits to its May 31, 2022 Motion for Partial Summary Judgment. Kilburn Decl. ¶ 78.

## II.    HARVARD'S BURDEN ON SUMMARY JUDGMENT

A court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322 (the "plain language" in Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery"). A plaintiff has **"no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact."** *Carmona v. Toledo*, 215 F.3d 124, 133 (1st Cir. 2000) (emphasis added); *see Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). To meet its "initial burden," Harvard must "demonstrate the absence of a genuine issue of material fact" in "one of two ways": (a) "demonstrate that [Plaintiff] will be unable to carry [her] burden of persuasion at trial" based on the evidence produced in discovery or (b) "affirmatively produce evidence that negates an essential element of [Plaintiff's] claim." *Carmona*, 215 F.3d at 132.

Harvard can do neither. A plaintiff "must have had sufficient time and opportunity for discovery before a [defendant] will be permitted to carry its initial burden of production by showing that the [plaintiff] has insufficient evidence." *Id.* at 133. And a defendant cannot negate a claim "based on affidavits" submitted by witnesses plaintiffs have not "had an opportunity to depose." *Rahim*, 506 F. Supp. 3d at 114. Rather, "[a] pre-discovery motion for

summary judgment is only appropriate for pure questions of law or incontrovertible questions of fact that must be shown through documentary evidence." *Lee v. Conagra Brands, Inc.*, No.17-11042, 2021 WL 3131536, at *1 (D. Mass. July 23, 2021) (Gorton, J.).

This is no such case.[5]  It turns on the reasonableness of Harvard's actions, which is a question of fact for the jury. *See Polay v. McMahon*, 468 Mass. 379, 383 (2014).

## III.   HARVARD CANNOT MEET ITS BURDEN BEFORE DISCOVERY

### A.   Evidence from Un-Deposed Witnesses Cannot Meet Harvard's Burden

Harvard's Motion relies entirely on self-serving affidavits and incomplete notes authored by its employees—all incompetent evidence in this pre-discovery posture. Harvard offers no other evidence of the critical discussions in which Harvard claims it obtained Kilburn's consent, interviewed her therapist, and requested her medical records. *See* SMF ¶¶ 67–68.

Harvard cannot meet its burden based on these untested affidavits. "Defendants may offer affidavits on summary judgment only after Plaintiff has had an opportunity to depose the affiants, and the untested affidavits may not be relied upon here." *Rahim*, 506 F. Supp. 3d at 114. Therefore, the Court must disregard the untested statements of Ms. Povich, Ms. Masud, and Mr. Yu regarding the process by which Harvard obtained and disclosed Kilburn's therapy records.

For the same reason, the Court should reject Harvard's cherry-picked exhibits. The employees who authored these documents have not been subjected to cross examination and thus these documents cannot be considered competent evidence. Moreover, Povich's affidavit shows

---

[5] Indeed, Harvard cites **only one** case to have granted a pre-discovery motion for summary judgment, a 1973 case from the Third Circuit *Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 523 (3d Cir. 1973). There, however, the court relied in part on the plaintiff's *own affidavit*, and the plaintiff did not request relief under Rule 56(d) or its predecessor, Rule 56(f). *See id.* at 524–25. In *Chan Wing Cheung v. Hamilton*, an appeal from an administrative proceeding sixty years ago, the First Circuit **refused to consider the defendant's evidence** and affirmed the grant of summary judgment because the appellant's *own affidavits* and concessions established his ineligibility for relief. 298 F.2d 459, 460–61 (1st Cir. 1962). These cases are inapposite; here, Defendant relies entirely on affidavits of its *own* employees, whom Plaintiffs have yet to depose.

that Harvard has selectively offered exhibits from a wider universe of discoverable evidence in its possession—evidence that Plaintiffs have no means of obtaining.[6] A motion for summary judgment is appropriate only after Plaintiffs have had an opportunity to fully probe all documents in Harvard's possession concerning Kilburn's medical records, as opposed to the select excerpts Harvard believes support its motion. *Lee*, 2021 WL 3131536, at *1  ("Courts are hesitant to allow pre-discovery motions for summary judgment . . . particularly when discovery could uncover evidence in the nonmoving party's favor."); *Resolution Tr. Corp. v. N. Bridge Assoc., Inc.*, 22 F.3d 1198, 1208 (1st Cir. 1994) ("[I]t is [n]either necessary [n]or desirable for a court to attempt to probe sophisticated issues on an undeveloped record"). Harvard's motion thus fails.

Finally, even putting aside this case's pre-discovery posture, Harvard cannot rely on its former employees' notes because it cannot present them in an admissible form. *See* Fed. R. Civ. P. 56(c)(2), Advisory Committee Notes to 2010 Amendment (explaining that the proponent must show evidence submitted on summary judgment can be presented in admissible form at trial). Harvard extensively references Povich's affidavit, specifically regarding her colleagues Shaffer and Erika Christensen's notes. Def.'s Mot. at 7, 9–13. But the notes are hearsay and Povich's affidavit does not even belatedly vouch for the accuracy of ODR's notes from the August 28, 2020 interview, in which Harvard claims to have obtained Kilburn's consent, or ODR's October 22, 2020 interview with Kilburn's therapist. *See* Povich Aff. ¶¶ 26, 32. The *only* notes that Povich says she reviewed for accuracy were the notes of Kilburn's July 13, 2020 interview (which do not discuss Kilburn's therapy records) and Kilburn's January 5–7, 2021 interviews (after ODR obtained and shared the records). *See id.* ¶¶ 16, 40. The failure to present a witness who would

---

[6] Harvard selected *just three pages* of ODR's 350-page evidence review with Prof. Comaroff (Povich Aff. Ex. 30) and *just one page* of ODR's 172-page evidence review with Kilburn (*Id.* Ex. 21). Harvard's refusal to offer full versions of the evidence on which it relies raises questions about both the remainder of these documents and what evidence it may be seeking to hide entirely.

testify to the contents of the notes at trial, or to show that the notes are admissible under an exception to the hearsay rule, alone dooms Harvard's motion. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 832 F.3d 1, 12 (1st Cir. 2016) ("'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted.") (citation omitted); Fed. R. Evid. 803(5) (A record is hearsay except if it "was made or adopted by the witness when the matter was fresh in the witness's memory; [ ] and accurately reflects the witness's knowledge.").

## B.  Even if Admissible on Summary Judgment, Harvard's Affidavits and Notes Would Not Defeat Plaintiff's Claim Under the Massachusetts Privacy Statute

Even if Harvard's untested affidavits and notes were admissible to support a pre-discovery motion for summary judgment—which they are not—Harvard's evidence undermines its own case. Harvard's evidence suggests that it solicited Kilburn's confidential therapy records and disseminated them based "solely" on Kilburn's alleged statement that her therapist "should have" some "notes or memories" for Harvard. SMF ¶ 68. Whether these actions were reasonable is, under Massachusetts law, a question of fact for the jury, and a jury could no doubt find that these statements do not qualify as consent, much less the written consent required by Title IX regulations. A jury could therefore find that Harvard acted unreasonably and therefore violated Mass. Gen. Laws ch. 214, § 1B and Massachusetts common law.

### 1.  *Massachusetts Law Gives Robust Protection for Medical Records*

The doctor-patient relationship is "one of the most sensitive and private spheres of human conduct." *Leysock v. Forest Lab'ys, Inc.*, No. 12-11354, 2017 WL 1591833, at *10 (D. Mass. Apr. 28, 2017). The procurement, retention, or disclosure of confidential medical information without the patient's consent is actionable under Mass. Gen. Laws ch. 214, § 1B, which protects a person's "right against unreasonable, substantial or serious interference with [her] privacy." *See Tower v. Hirschhorn*, 397 Mass. 581, 586–87 (1986); *Amato v. Dist. Att'y for Cape & Islands Dist.*, 80

12

Mass. App. Ct. 230, 240 (2011) (plaintiff stated a claim for "unreasonable intrusion" under § 1B based on allegations that the state retained his DNA records without authorization; such a claim "does not require proof of dissemination"); *Pressman v. Brigham Med. Grp. Found. Inc.*, 919 F. Supp. 516, 524 (D. Mass. 1996) (hospital violated statute by obtaining medical records that exceeded scope of plaintiff's consent to obtain records).

"[A] plaintiff also may support a claim of invasion of privacy by showing that a defendant has intruded unreasonably" on her privacy. *See Polay*, 468 Mass. at 382. This issue of "whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a ***question of fact***" for the jury. *Id.* at 383 (emphasis added).

### 2. Harvard's Failure to Obtain Written Consent Violated Federal Regulations, its Own Guidance, and Custom in the Field

A jury could find that Harvard unreasonably obtained Kilburn's medical records because it obtained them without her written consent. Federal Title IX regulations prohibit university investigators to "access, consider, disclose, or otherwise use" therapy records without the student's "voluntary, ***written*** consent." 34 C.F.R. § 106.45(b)(5) (emphasis added). The rule protects victims of harassment who are navigating an unfamiliar investigative process from misunderstandings or misconduct that may expose their most private records. Povich herself trained investigators to follow this regulation and obtain written consent before seeking medical records. Guentert Decl. Ex. 1 at 77; *id.* Ex. 2 at 73.

The regulation bears directly on the "reasonableness of an intrusion" under the Privacy Act. *See Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 116 (1st Cir. 1988) (explaining that specific prohibitions on an employer's access to "personal data" are "the most important test of the reasonableness of an intrusion"); *Bratt v. Int'l Bus. Mach. Corp.*, 392 Mass. 508, 520 n.17, 523 n.22 (1984) (looking to other statutes to determine when an intrusion was "unreasonable"); *see*

*also MacDonald v. Ortho Pharm. Corp.*, 394 Mass. 131, 139–40 (1985) (holding that failure to comply with federal regulations showed negligence); *Michnik-Zilberman v. Gordon's Liquor, Inc.*, 390 Mass. 6, 11 (1983) ("When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community, from which it is negligence to deviate.").

Likewise, the requirements of Harvard's own trainings and the customs of other universities bear on the reasonableness of Harvard's actions. *See, e.g.*, *MacDonald*, 394 Mass. at 140; *see also Bratt v. Int'l Bus. Mach. Corp.*, 785 F.2d 352, 361 (1st Cir. 1986) (holding that "fact finder could further conclude that [an institution's] employees did not have a legitimate interest in obtaining [private] information in a manner which violated the [institution's own] internal rules."); *Com. v. Angelo Todesca Corp.*, 446 Mass. 128, 138 (2006) (holding that "an employee's violation of [her] employer's rules," or her departure from unwritten "custom or practice," evinces unreasonable conduct amounting to negligence); *see further* Restatement (Second) of Torts § 892 (1979) ("In determining whether conduct would be understood by a reasonable person as indicating consent, the customs of the community are to be taken into account."); *see also* Guentert Decl. ¶ 17 (noting that Plaintiffs would seek discovery into customs of other universities).

Here, Harvard admits that it obtained the records "***solely***" because of Kilburn's alleged ***oral*** statement that her therapist "should have" had some "notes or memories" for ODR. SMF ¶ 68. Harvard thus lacked the written authorization required by federal regulations and its own trainings. A jury could therefore find Harvard's actions "unreasonable."

Harvard's argument that the regulation is not "retroactive" and therefore has no bearing is a red herring. Harvard obtained and shared Kilburn's therapy records in October 2020—months after the regulation took effect on August 14, 2020. In reality, Harvard contends that the regulation

14

contains an unwritten exemption, such that a university may access and use a student's medical records without written consent whenever it is investigating conduct that occurred before the regulation's effective date. But the regulation contains no hint of any such exemption. *See Doe v. Rensselaer Polytechnic Institute*, 2020 WL 6118492, *9-10 (N.D.N.Y. 2020) (2020 Title IX rules apply to investigations conducted after August 14, 2020 even when the underlying harassment happened earlier, and the FAQs Harvard cites are not authoritative); *see also Kisor v. Wilkie*, 139 U.S. 2400, 2415 (2019) (when a regulation is unambiguous, the court must apply it as written); *United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016) (rejecting interpretation of a regulation when there was "no mechanism or textual hook" in the rule to support it). And, in any event, Harvard's retroactivity argument does nothing to address the written consent requirement of its own trainings.

### 3. Harvard Does Not Establish that It Reasonably Believed that It Obtained Kilburn's Oral Consent

Harvard's evidence does not even suggest that Harvard reasonably believed it had Kilburn's *oral* consent to obtain the therapy records and disclose them to others. Massachusetts law sets high standards for when investigators may intrude on someone's privacy based on a mistaken belief in consent. The Privacy Act's "test of reasonableness" turns on the same balancing test that applies under Article 14 of the Massachusetts Constitution, which weighs the interests of the defendant against "the seriousness of the intrusion" on the plaintiff's privacy. *O'Connor v. Police Com'r of Bos.*, 408 Mass. 324, 330 (1990); *Jackson*, 863 F.2d at 116 (using the same "balancing" test to interpret the Privacy Act and Art. 14); *see also Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 383 (2005) (explaining that courts determine what is "reasonable" under the Privacy Act by balancing the interests of the defendant against the "substantiality of the intrusion"). In striking that balance under Art. 14, the Supreme Judicial Court has held that the

"scope" of consent "must be unambiguous" to render an intrusion "reasonable." *Commonwealth v. Ortiz*, 478 Mass. 820, 825–26 (2018) ("It is fair to conclude that the scope of [a] search should not extend into the realm of the ambiguous, especially when the police can easily resolve that ambiguity with a clarifying question").

Likewise, a jury could conclude that a reasonable investigator would clarify ambiguities before construing an off-hand statement as consent to access therapy notes—among the most intimate of personal records—and disclose them to the patient's harasser. "[T]he process of asking, in a brief and even-handed fashion, simple clarifying questions does not burden" and resolves the obvious risk of an unauthorized disclosure of highly sensitive records. *Id.* at 826. Yet Harvard's investigators declined to clarify both whether they had consent and the scope of such consent.

Instead, based "solely" on Kilburn's remark that her therapist "***should have***" some "notes ***or*** memories" for ODR, Harvard gave itself carte blanche. SMF ¶ 68 (emphasis added).[7] A jury could easily conclude that this passing, disjunctive, and unspecific reference to "notes" did not constitute permission—let alone unambiguous permission—for ODR to obtain ***full*** records from ***two specific sessions*** without any further discussion or authorization from Kilburn. At minimum, the jury could find that Harvard should have asked Kilburn a "simple clarifying question" before it obtained those sensitive records and disclosed them to her harasser. *See Ortiz*, 478 Mass. at 826.

Moreover, even if the jury were to find that Kilburn made the statements Povich attributes to her, and even if it found that the statements constituted apparent consent to obtain *some* therapy notes, the jury could find Harvard liable because it failed to clarify *which* notes and exceeded the scope of any consent. *See Pressman*, 919 F. Supp. at 524 (plaintiff's consent to undergo a medical

---

[7] And this analysis presumes that the foregoing words were even said—which the Court need not do at this stage. Povich does not testify that she remembers Kilburn saying these words—only that her former colleague's unsworn notes reflect them. The Court need not, therefore, credit them. *See supra* Part III.A.; Fed. R. Evid. 803(5).

examination and contact a hospital to obtain "any other information relevant to my character or my professional competence" was not consent to review his medical records; denying summary judgment); *Amato*, 80 Mass. App. Ct. at 241 (plaintiff stated a claim based on allegations that investigators used his DNA sample beyond the scope of his limited consent). There is simply **no evidence** that Kilburn gave Harvard blanket consent to obtain information entirely unrelated to the investigation. *See generally* Kilburn Decl. Yet that is exactly what Harvard did.

### 4. Harvard Does Not Establish that It Reasonably Assumed that Kilburn's Therapist Obtained the Required Consent

Nor was Harvard entitled to infer that it had *Kilburn's* consent from the fact that *her therapist* was willing to hand over the notes. As set forth above, neither federal regulations, nor Harvard's trainings, nor custom suggest that Harvard could reasonably assume away the need for its own written release. *See supra*, Section III.B.2. *See* 34 C.F.R. § 106.45(b)(5).

Yet even assuming arguendo that Harvard could assume away the need for its own written release from Kilburn, a jury could *still* find the school's conduct unreasonable: Harvard's motion identifies **no** steps to ensure that the therapist had Kilburn's consent to release her records to Harvard—let alone the "express, written consent" required. Mass. Gen. Laws ch. 112, § 129A; 45 C.F.R. § 164.508. **To the contrary: The therapist indicated that she did not receive a written release from Kilburn**. *See* Povich Aff. Ex. 16 at 2. The therapist's statement that she had received only "an email" put Harvard on notice that a written release had not been obtained. A simple question could have clarified, but, once again, Harvard did not bother. A jury could easily find this careless.[8] *Cf. Com. v. Porter P.*, 456 Mass. 254, 272 (2010) (explaining that when the facts were "ambiguous" as to whether a third party has authority to consent to an intrusion on another's

---

[8] The therapist's statement that she would "comply with HIPAA" *by redacting Kilburn's name from the records* before she sent them does not help Harvard. *See* RSMF ¶ 64.

privacy, investigators "owe[d] a duty to explore, rather than ignore, contrary facts tending to suggest that the [mother]. . . lack[ed] actual authority" to consent to the search).

### 5. *Harvard Does Not Establish that It Reasonably Disclosed the Records*

Because Harvard did not act reasonably to ensure Kilburn gave ODR her permission to obtain the therapy records from her March 6 and 20, 2019 sessions in the first place, it was not reasonable for Harvard to share those confidential records with Kilburn's harasser, attach them to its investigative reports, and disseminate them. Harvard incants *ad nauseum* that it warned Kilburn it would share information produced by third parties with Comaroff to the extent that ODR "may rely" on that information. SMF ¶ 23, 29, 30, 33, 40. Yet Harvard effectively concedes that it did not "rely" on or even discuss Kilburn's therapy records. *See* RSMF ¶¶ 95, 98. Harvard does not even attempt to explain why it nonetheless attached these confidential records to its report, which it disseminated to not only Comaroff, but also to at least eight other people.[9]

### C. Plaintiff's Massachusetts Common Law Claims Survive Summary Judgment

As explained above, Massachusetts common law prohibits a healthcare provider to "disclose without the patient's consent medical information about the patient. . . ." *Alberts v. Devine*, 395 Mass. 59, 68 (1985). A third party (such as Harvard) who "induces" a psychotherapist to disclose information it reasonably should have known was confidential "may be held liable to the patient for the damages that flow from that disclosure." *Id.* at 70. Harvard does not dispute the first two elements of this cause of action—that it (1) "knew . . . of the existence of the physician-

---

[9] Harvard's last point—that Kilburn did not immediately object after-the-fact to its use her private records—does not establish that she consented to it. By the time Kilburn learned that Harvard had obtained and shared her records, the damage was already done: ODR had already seen them and sent them to Comaroff two minutes after sending them to Kilburn—hardly sufficient time for Kilburn to object. *See* RSMF ¶ 72. Harvard does not even contend that an after-the-fact objection would have made any difference, thus precluding a laches defense. *See Vineberg v. Bissonnette*, 548 F.3d 50, 58 (1st Cir. 2008) (party asserting laches must provide "at least a hint" on what an earlier objection "might have yielded"). Nor could it: when Plaintiffs' counsel *did* bring the issue to Harvard's attention in writing, Harvard refused to recall the records or take steps to limit further disclosure. Guentert Decl. ¶ 3.

patient relationship" between Kilburn and her therapist and (2) "intended to induce the [therapist] to disclose information about the patient." *Id.*

"To be entitled to summary judgment" on the common law claim, therefore, Harvard must "demonstrate that there was no dispute of material fact that [its investigators] reasonably believed that [Kilburn's therapist] could give them the information they sought without violating [her] duty of confidentiality owed to [Kilburn]." *Id.* at 71–72. Harvard cannot do so even if its untested affidavits and notes were taken as a true. As explained above, Harvard's exhibits *do not* show that Harvard  (1) obtained any written release as required by federal regulations designed to ensure that an institution's belief in consent is reasonable (*see supra* section III.B.2), (2) reasonably believed it had oral consent to obtain the records and information it did (*see supra* section III.B.3), and (3) reasonably believed the therapist had Kilburn's permission to disclose the records and information unrelated to the investigation (*see supra* section III.B.4).

## D.  Key Issues Remain for the Jury to Resolve

Harvard's untested affidavits and notes themselves highlight several fact issues for the jury: *i.e.*, whether ODR acted reasonably when it (1) violated federal regulations and its own trainings, (2) took Kilburn's alleged statement that her therapist had "notes or memories" as license to obtain two records from specific sessions without asking a single clarifying question, (3) requested those notes from Kilburn's therapist after she indicated that she did not have a written release from Kilburn and that the notes contained irrelevant information, and (4) disseminated those notes to Comaroff and various other people without checking with Kilburn. These issues should be tried.

## IV.   THE COURT SHOULD DENY THE MOTION UNDER RULE 56(d)

Even if the Court finds that Harvard has met its initial burden of production, the Court should still deny Harvard's Motion for Summary Judgment because Plaintiffs require discovery to

"produce additional evidence showing the existence of a genuine issue for trial." *Celotex*, 477 U.S. at 332 n.3; Fed. R. Civ. P. 56(d). The accompanying Declaration of Carolin Guentert sets out in detail the discovery necessary to produce facts essential to justify Plaintiffs' opposition, including:

- Depositions of Povich, Shaffer, and Christensen to determine the accuracy of ODR's notes and the contents of ODR's discussions with Kilburn and her therapist.

- A deposition of Kilburn's therapist to ascertain her recollection of her interview with Harvard and whether Harvard inquired about Kilburn's permission to disclose the records.

- Document discovery to prove that Kilburn never signed a release for therapy notes.

- Document discovery to determine all recipients of the therapy notes and what those recipients were told regarding the notes.

- Depositions and document discovery to establish Harvard's customary practices for handling students' sensitive medical records.

- Document discovery to determine whether there are documents unfavorable to Harvard's position.

- Evidence of other universities' customary practices to ensure that they have informed consent to seek medical records, including through potential expert discovery.

Granting pre-discovery summary judgment based on Harvard's affidavits and notes—in the absence of the foregoing discovery—would be a clear "abuse of discretion." *In re PHC*, 762 F.3d at 144; *see Rahim*, 506 F. Supp. 3d at 114; *Collision Commc'ns, Inc. v. Nokia Sols. & Networks OY*, 2021 WL 1124725, *3 (D.N.H. 2021) ("No discovery has been undertaken in this case, and therefore the record has not been developed for purposes of summary judgment."); *Wood v. United States*, 115 F. Supp. 2d 9, 16 (D. Me. 2000) (denying summary judgment because defendants relied on declarations from witnesses plaintiffs had no opportunity to depose).

## V.   CONCLUSION

Harvard's premature Summary Judgment Motion would run roughshod over discovery—just as Harvard ran roughshod over the protections for Ms. Kilburn's privacy. The Court should deny the Motion.

Dated: August 23, 2022                    Respectfully submitted,

                                          /s/ Carolin Guentert
                                          Russell Kornblith (*pro hac vice*)
                                          Carolin Guentert (*pro hac vice*)
                                          **SANFORD HEISLER SHARP, LLP**
                                          1350 Avenue of the Americas, 31st Floor
                                          New York, New York 10019
                                          Telephone: (646) 402-5650
                                          rkornblith@sanfordheisler.com
                                          cguentert@sanfordheisler.com

                                          Sean Ouellette (BBO# 697559)
                                          **SANFORD HEISLER SHARP, LLP**
                                          700 Pennsylvania Avenue SE, Suite 300
                                          Washington, DC 20003
                                          Telephone: (202) 499-5200
                                          souellette@sanfordheisler.com

                                          *Attorneys for Plaintiffs*