UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA**<br><br>*Plaintiffs,*<br><br>v.<br><br>**HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE**<br><br>*Defendants.* | CASE NO. 1:22-cv-10202-JGD |

**HARVARD'S REPLY MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT TEN**

**I. INTRODUCTION**

Plaintiff Lilia Kilburn's Opposition to Harvard's Motion for Partial Summary Judgment as to Count Ten of Plaintiffs' Amended Complaint acknowledges that *Kilburn herself* urged Harvard to speak to her psychotherapist and to obtain the therapist's notes because she believed those records would help support—in her own words at the time, provide "contemporaneous corroboration" for—her sexual harassment complaint against Harvard Professor John Comaroff. Moreover, Kilburn's Opposition and own Declaration further demonstrate that she did so only after being informed that, under Harvard's procedures, Harvard would share any records on which it might rely with Professor Comaroff.

Plaintiff may regret her deliberate decision to inject her psychotherapy notes into ODR's investigation, but the record before the Court is unambiguous as to the facts underlying Count Ten.

1

Facts Kilburn has not disputed demonstrate that Harvard neither induced her therapist to breach her fiduciary duty to Kilburn nor violated the Massachusetts invasion of privacy statute. Kilburn's other arguments—that Harvard's motion is based on inadmissible evidence; that it is untimely; and that she is entitled to additional discovery—are each meritless. The Court should grant summary judgment on Count Ten.

## II. ARGUMENT

### A. Plaintiff Fails to Dispute Facts that Warrant Summary Judgment.

Harvard's Motion for Partial Summary Judgment relies on sworn testimony about written and oral communications directly between Harvard's Office of Dispute Resolution ("ODR") and Kilburn. In response, Kilburn has filed an 18-page Declaration. But that Declaration fails to dispute the plain facts, supported by the sworn testimony Harvard has submitted, demonstrating, among other things, that Kilburn: (1) volunteered to ODR information about her treatment by a therapist, Harvard's Amended Statement of Material Facts ("SOF") (Dkt No. 49) ¶47; *see also* Declaration of Lilia Kilburn in Opposition to Defendant's Amended Motion for Partial Summary Judgment as to Count Ten ("Kilburn Decl.") (Dkt. No. 65) ¶38 ; (2) told ODR the therapist "should have ***a bunch of notes*** or memories ***for you***" that would act as "contemporaneous corroboration" for her claim, SOF ¶50 (emphasis added); (3) said the therapist was "ready to attest" to her complaint, SOF ¶46; (4) identified the therapist as among the "first set of people" ODR should speak with, SOF ¶54; *see also* Kilburn Decl. ¶38; (5) gave ODR the therapist's name and contact information; SOF ¶55; *see also* Kilburn Decl. ¶38; and (6) contacted the therapist in advance of ODR's interview with the therapist, asking her to search for documentation supporting her allegations against Comaroff, SOF ¶60; *see also* Kilburn Decl. ¶38.

The evidence necessary to find in Harvard's favor on Count Ten addresses events within Kilburn's own personal knowledge, and is undisputed. Kilburn must therefore do more than complain that she has not yet deposed ODR staff to avoid summary judgment. "When a plaintiff opposes summary judgment, she bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020) (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)); *see also Theidon v. Harvard Univ.*, No. 15-cv-10809-LTS, 28 U.S. Dist. LEXIS 240028 (D. Mass. Feb. 28, 2018), *aff'd* 948 F.3d 477 (1st Cir. 2020) (Plaintiff's "statement that a fact is disputed does not make it disputed. She must set forth admissible, contrary evidence that establishes a genuine dispute."). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Chong v. Northeastern Univ.*, Civ. Action No. 20-10844-RGS, 2021 WL 1857341, at *3 (D. Mass. May 10, 2021) (quoting *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000)). Here, Kilburn's Declaration does not dispute that Harvard repeatedly informed her, orally and in writing, that information that she provided, *or that ODR itself collected from witnesses*, would be shared with Comaroff. Here are just two examples[1] of ODR informing Kilburn *in writing*:

**Example One**: Kilburn's Declaration does not dispute that on June 4, 2020, ODR sent her a link to the ODR Flowchart to the Investigative Process, which stated:

> ODR collects additional information (e.g., interview witnesses, collect documents, conduct site visits). The parties may submit additional materials they believe may

---

[1] Harvard's Amended Memorandum of Law in Support of Harvard's Motion for Partial Summary Judgment as to Count Ten (Dkt. No. 48) identifies at least eight occasions when Harvard explicitly informed Kilburn about its policies requiring it to share any information it collected with Comaroff. *Id.* at 17.  Harvard does not repeat the evidence relating to each of those occasions here.

3

be relevant. ***Copies of these materials will be given to the other party and, at that party's discretion, their personal advisor (if applicable) . . . .*** [2]

SOF ¶ 20 (emphasis added).

**Example Two**:  Kilburn's Declaration does not dispute that on July 2, 2020, ODR again reminded Kilburn that information ODR gathered from Kilburn or witnesses Kilburn identified would be shared with Comaroff. In response to a question from Kilburn, ODR wrote Kilburn:

> *Both parties have the right to review and respond to all information that ODR may rely on in the investigation, including the complaint, the response, **any written information provided by a witness, or other documents submitted.***

*Id*. ¶ 23 (emphasis added). Kilburn acknowledged receipt of ODR Fellow Shaffer's email, stating: "Hi Jessica and Ilissa, Thank you for this information—it is helpful . . . ." *Id*. ¶ 24.[3]

*Second*, Kilburn does not dispute that it was *she* who injected the issue of her therapy into the case, in a document that she submitted to ODR. On August 24, 2020, after ODR shared Comaroff's response to Kilburn's complaint with her, she volunteered information about her therapy, informing ODR that she had sought out a:

---

[2] Plaintiffs' Response to Defendant's Amended Statement of Material Facts ("Pl.'s Resp.") (Dkt. No. 63) also disputes Harvard's assertion that the email ODR sent Kilburn on June 4, 2020 linked to the document quoted "because Defendant's Exhibit 4 does not contain a working hyperlink and Plaintiffs have not had the opportunity to depose affiant." *Id.* at 6 (¶17). Harvard did, of course, provide a *copy* of the ODR Flowchart of the Investigative Process as an exhibit to the Affidavit of Ilissa Povich ("Povich Aff.") (Dkt. No. 51, Ex. 4). Tellingly, Kilburn's own Declaration does not dispute that she received this document.

[3] Kilburn takes issue with the occasions when ODR told Kilburn that it would share information on which it "may" or "might" rely with Comaroff, claiming that "she never fully understood" Harvard's procedures. *See* Kilburn Decl., ¶¶ 21-25; *see also* Plaintiff's Memorandum of Law in Opposition to Defendant's Amended Motion for Partial Summary Judgment as to Count Ten ("Opp. (Dkt No. 62) at 4, 18). Kilburn also states that ODR did not "specifically tell [her] how it would treat medical records." Kilburn Decl. ¶27. But Kilburn does not dispute what Harvard told her about its policies, or suggest that Harvard said that it would treat those records differently than any other records. Indeed, her Declaration confirms what Harvard said. ODR's disclosure to Kilburn that it would share with Comaroff information on which it "may" or "might" rely put Kilburn squarely on notice that information she provided, or that ODR otherwise collected, could be shared with Comaroff. This decisively ends any dispute about whether any invasion of privacy occurred, because it demonstrates that Harvard's conduct was reasonable in light of the disclosures to Kilburn. *See Alberts v. Devine*, 395 Mass. 59, 70-71 (1985).

> licensed mental health professional with whom to discuss these issues.. . . She is currently on vacation, but I believe ***she has specific memories of our conversations about misconduct in my department, my concerns about the damage Professor Comaroff could do to my career, and my repeated and unfruitful attempts to get assistance. She is ready to attest to this when she returns from vacation.***

*Id.* ¶¶45-47 (emphasis added). Kilburn even thanked Professor Comaroff for reminding her about her therapy:

> ***Thank you to Professor Comaroff for jogging my memory on this additional incident of contemporaneous corroboration*** and disclosure of his misconduct and its effects on me.[4]

*Id.* (emphasis added). ODR followed up on Kilburn's August 24, 2020 submission when ODR met with Kilburn on August 28, 2020. *Id*. ¶48. In that interview, Kilburn told ODR that she was sure that, in therapy, she had spoken "about worries in my career and what I said and what it would mean to say something" about Comaroff's harassment of her. *Id*. ¶50. She continued, informing ODR that the therapist she had worked with in 2018 and 2019: "should have a ***bunch of notes*** or memories ***for you***." *Id.* (emphasis added). Kilburn's 18-page Declaration nowhere disputes that she made this statement to ODR. Neither does Kilburn dispute that, on September 25, 2020, she provided her therapist's name and email address to ODR. Her email expressed no reluctance about Harvard contacting the therapist (whom, after all, she had injected into the case in the first instance as a source of "contemporaneous corroboration"). Instead, she urged ODR to make speaking with the therapist a priority: "***I*** think the following would make sense as ***a first set of people for you to speak to***; I'll attach email addresses for non-Harvard people, but please let me know if you'd like phone numbers also." *Id*. ¶ 55 (emphasis added). Harvard would not have known of this therapist,

---

[4] The fact that she addressed Comaroff directly is further evidence that Kilburn knew that information provided to ODR was and would be shared with him.

5

let alone that Kilburn had sought her counsel in 2018 and 2019, had Kilburn herself not volunteered the information and suggested it would be helpful to her ODR complaint.

Kilburn's Declaration provides an account, nearly two years after these contemporaneous exchanges, about what Kilburn now says she subjectively expected Harvard to do. She claims that she "expected that ODR would reach out to my therapist and ask *whether* she had any relevant notes" (emphasis in original). Whether or not Kilburn actually expected that at the time, Kilburn does not dispute what she actually said *in writing*: that the therapist "should have a **bunch of notes** or memories *for you*." (emphasis added). In sum, the record leaves no room for doubt: Kilburn saw advantage in informing ODR that she had seen a psychotherapist and that person's notes would provide "contemporaneous corroboration" of her allegations. She told ODR that the therapist "should have a bunch of notes or memories" *for ODR*. And ODR repeatedly informed Kilburn that its policies required it to share information it collected with Comaroff, particularly when it might rely on that evidence, as the record shows Kilburn wanted ODR to do. Indeed, the undisputed evidence shows that ODR told Kilburn no fewer than eight times that it would share information Kilburn or her witnesses provided with Comaroff, *see* SUF ¶¶ 19-20, 23, 29, 37-38, 40 and 51, but Kilburn expressed no objection until this litigation.[5] The reasonableness of Harvard's conduct must be judged by what the record evidence shows Harvard told Kilburn, and what Kilburn wrote and said—not on purported reservations she never expressed.

---

[5] ODR also provided Kilburn with information that Comaroff or witnesses he identified had provided on at least eight occasions. *See* SUF ¶¶ 44, 70.

## B. Harvard Has Established that it Neither Induced the Therapist to Breach a Fiduciary Duty Nor Violated Kilburn's Privacy Rights.

These undisputed facts show that Harvard neither induced her therapist to breach her fiduciary duty to Kilburn nor violated the Massachusetts invasion of privacy statute. Plaintiff's arguments that Harvard could not reasonably believe it had obtained Kilburn's consent after she instructed them, both orally and in writing, to pursue her therapy notes as corroborating evidence, or reasonably assume that a therapist who stated "confidentiality is my bread and butter," among other key facts, obtained the required consent of her patient, are baseless. Plaintiff's other arguments similarly misstate the case law, ignore the plain text of the relevant statutes, or both.

Plaintiff cites *Doe v. Rensselaer Polytechnic Institute*, 2020 WL 6118492, *9-10 (N.D.N.Y. 2020), as purported support for the argument that the 2020 Title IX rules requiring written consent prior to obtaining therapy records apply retroactively to investigations of claims alleged to have occurred prior to August 14, 2020. Opp. at 15. In *RPI*, however, the court considered whether to issue a preliminary injunction that would prevent the university from conducting a disciplinary hearing against a student who *specifically insisted* that RPI carry out its investigation under the 2020 rules. *RPI,* at *10. In allowing plaintiff's request for a preliminary injunction, the court also explicitly stated that its determination was "not made because of any position concerning the retroactivity of the new Title IX rules," and was in fact a recognition of that plaintiff's individual circumstance. *Id.* at *40.

Plaintiff's citation to ODR trainings is similarly misplaced. *See* Opp. at 14. These trainings do not "bear on the reasonableness of Harvard's actions," *id.*, because the pages cited by Plaintiff pertain to the Interim Title IX Sexual Harassment Policy ("ITIXSHP") **"applicable to certain alleged conduct occurring on or after August 14, 2020."** Guentert Decl. Ex. 1 at 4, 77; Ex. 2 at

7

73 (emphasis added). Indeed, the training materials in fact illustrate that the written consent requirement was not introduced until the 2020 Title IX rules took effect on August 14, 2020, and that the new rules did not apply retroactively to alleged conduct that occurred before that date.

Plaintiff's Opposition insists that there is "no hint" that the Department of Education did not intend for the 2020 Title IX rules to apply retroactively, ignoring both the plain text of the 2020 rules and the DOE's own guidance on this point. *See* 85 Fed. Reg. 30026, 30061, 30072 (May 19, 2020) and U.S. Dep't Educ., Questions and Answers on the Title IX Regulations on Sexual Harassment (July 2021) (Updated June 28, 2022) (available at: https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf) ("[I]f the conduct at issue in the complaint took place prior to August 14, 2020, the 2020 amendments do not apply even if the complaint was filed with a school on or after August 14, 2020"). More importantly, however, Plaintiff ignores that she bears the burden of showing that the 2020 Title IX rules expressly *mandate* retroactive application, rather than assuming that retroactivity applies and placing the onus on Harvard to point to an exception. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). There are no express provisions in the 2020 Title IX rules requiring retroactive application to Kilburn's complaint. Here, where the clear evidence supports the DOE's contrary intent, the Court "should be reluctant to find such authority absent an express statutory grant." *Id*.

### C. Plaintiff's Evidentiary Claims are Without Merit.

Kilburn also claims that the Court should disregard much of the evidence that Harvard has placed before the Court, arguing that notes quoted in the Povich Affidavit are hearsay. Opp. at 10-11. But this argument misreads Povich's Affidavit. Povich, as the Affidavit makes clear, was present on each of the occasions when ODR interviewed Kilburn and personally received each of

8

Kilburn's emails that Povich's Affidavit quotes. Povich's sworn statements about what Kilburn said and wrote are therefore not hearsay. *See* Fed. R. Evid. 801(d)(1)(2)(A) ("A statement that meets the following conditions is not hearsay . . . . [a] statement [that] is offered against an opposing party and . . .was made by the party in an individual or representative capacity." Povich's Affidavit begins by making clear that it is made "under oath and ***upon personal knowledge.***") (emphasis added). Where the Affidavit quotes from notes, it likewise relies on information Povich provides upon personal knowledge. For example, with respect to the August 28, 2020 interview where Kilburn volunteered that her therapist "should have a bunch of notes or memories" for ODR, Povich attested under oath, based on personal knowledge, that Kilburn in fact said what "ODR Fellow Shaffer's notes reflect." *Id.*

### D. Harvard's Summary Judgment Motion is Not Premature.

The plain language of Fed. R. Civ. P. 56(b) states that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery" (emphasis added). Nothing in the Opposition precludes this Court from acting on a motion for partial summary judgment before discovery where, as here, it is appropriate to do so. Nor does anything in the Opposition preclude this Court from acting on (and granting) Harvard's Motion for Partial Summary Judgment where it is supported by affidavits of university employees that Plaintiffs have yet to depose.

Another Court in this District recently granted a pre-discovery motion for summary judgment based on affidavits of Northeastern University employees. *See Chong*, 2021 WL 1857341, at *5; *Chong*, Civ. Action No. 20-10844-RGS, Dkt. No. 67. Indeed, in *Chong*, Judge Stearns granted summary judgment for Northeastern before documents were exchanged and any depositions taken because clear language in student handbooks foreclosed any reasonable

9

expectation of in-person instruction during the COVID-19 pandemic. *See* 2021 WL 1857341, at *5. In so doing, Judge Stearns rejected arguments identical to those Plaintiff makes here, namely, that the plaintiffs were entitled to discovery (both documents and deposition testimony) to rebut the university's proffered facts. *See Chong*, No. 20-10844-RGS, Dkt. Nos. 75 at 6-8, 75-2 at 20-39. As explained above, and as Judge Stearns implicitly found in *Chong*, no amount of discovery would alter the absence of material facts on the central issues before the Court. In short, Harvard's Motion for Partial Summary Judgment is ripe for decision.

The cases cited by plaintiff do not require a different result. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), did not even address a pre-discovery summary judgment motion. And Judge Talwani's opinion in *Estate of Rahim v. United States*, 506 F. Supp. 3d 104 (D. Mass. 2020), did not purport to establish a firm rule stating that a court may never enter summary judgment before discovery. In fact, *Rahim* acknowledges that, "unless a local rule or court order provides otherwise, the movant may file a summary judgment motion before discovery is complete or before it has even commenced." *Id.* at 112. Nothing in the cases plaintiff cites suggests that summary judgment must always follow discovery, or that summary judgment is premature in this case.

### E. Plaintiff Has Failed to Establish that Discovery Is Necessary to Permit Her to Oppose Summary Judgment.

Kilburn claims that discovery is necessary for the Court to address Harvard's Motion for Partial Summary Judgment. But none of the discovery that Kilburn proposes—including document discovery and the depositions of at least eight Harvard staff and faculty—bears on the central points relevant to Harvard's motion. To obtain summary judgment on Kilburn's claim for invasion of privacy and inducing breach of fiduciary duty, Harvard must merely show that it "reasonably believe[d]" that Kilburn's therapist "could disclose that information to [Harvard] without violating the duty of confidentiality that the [therapist] owed" Kilburn. *Alberts*, 395 Mass. at 70-71. Here,

10

the undisputed evidence points unmistakably to that conclusion. Kilburn has not disputed that Harvard placed her on notice that documents she or her witnesses provided would be shared with Comaroff. *See* SUF ¶¶ 19-20, 23, 29, 37-38, 40 and 51. Neither has Kilburn disputed that she introduced the fact that she had obtained therapy into the investigation and urged ODR to make an interview of the therapist a priority. *See* SUF ¶¶ 49, 54. Finally, she has failed to dispute that she informed Harvard that the therapist had "a bunch of notes or memories" for ODR. *See* SUF ¶ 50. No further discovery is necessary for the Court to resolve Harvard's Motion for Partial Summary Judgment on Count Ten.

### III. CONCLUSION

For the reasons set forth above, and in Harvard's Memorandum in Support of its Motion for Partial Summary Judgment as to Count 10, Harvard respectfully requests that the Court enter summary judgment on that Count.

Respectfully submitted,

| | |
|---|---|
| Victoria L. Steinberg, BBO #666482<br>Rebecca M. O'Brien, BBO #693592<br>TODD & WELD LLP<br>One Federal Street<br>Boston, MA  02110<br>Telephone:     (617) 624-4714<br>Facsimile:      (617) 624-4814<br>vsteinberg@toddweld.com<br>robrien@toddweld.com | */s/ Martin F. Murphy*<br>Martin F. Murphy, BBO #363250<br>Madeleine K. Rodriguez, BBO #684394<br>FOLEY HOAG LLP<br>155 Seaport Boulevard, Suite 1600<br>Boston, MA 02210<br>Telephone: (617) 832-1000<br>Facsimile: (617) 832-7000<br>mmurphy@foleyhoag.com<br>mrodriguez@foleyhoag.com<br><br>*Attorneys for Defendants,*<br>*Harvard University and President and*<br>*Fellows of Harvard College* |

11

FH11069471.5

## **CERTIFICATE OF SERVICE**

    I, Martin F. Murphy, hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served to all counsel of record on September 6, 2022.

                                    */s/ Martin F. Murphy*
                                    Martin F. Murphy

FH11069471.5