UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA,<br>            Plaintiffs,<br><br>          v.<br><br>HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>            Defendant. | CIVIL ACTION NO. 1:22-cv-10202-JGD |

## UNITED STATES' STATEMENT OF INTEREST

The United States respectfully submits this Statement of Interest, under 28 U.S.C. § 517,[1] to clarify the legal standards governing retaliation claims for damages under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.* The United States has a significant interest in the proper interpretation of Title IX and in ensuring that schools receiving federal financial assistance meet their Title IX obligations to provide a safe, nondiscriminatory learning environment by responding appropriately to reports of sex discrimination, including sex-based harassment and retaliation. The United States Departments of Justice and Education share primary responsibility for ensuring that recipients of federal financial assistance ("recipients") comply with Title IX. In addition to its own enforcement interest, the United States has an interest in ensuring effective private enforcement of Title IX.

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1

The three Plaintiffs in this case are doctoral students in Harvard University's Anthropology Department. One of the Plaintiffs, Lilia Kilburn, alleges that Harvard Professor John Comaroff sexually harassed her by making unwanted comments of a sexual nature and engaging in unwanted hugging, kissing, and touching, and retaliated against her for complaining about his sexual harassment. The other two Plaintiffs, Margaret Czerwienski and Amulya Mandava, allege that Professor Comaroff retaliated against them because they warned other students of his behavior and reported his sexual harassment of Kilburn and other female students to Harvard faculty members and officials. Specifically, Plaintiffs allege that Professor Comaroff and his wife, also a Harvard professor, retaliated against them by, among other things, threatening to destroy their careers and disseminating disparaging and misleading statements about them to the public.

As relevant here, all three Plaintiffs allege that Harvard discriminated against them through its knowledge of and deliberate indifference to these retaliatory acts. Harvard has moved to dismiss Plaintiffs' Title IX retaliation claims under Federal Rule of Civil Procedure 12(b)(6) arguing, among other things, that "Harvard is only potentially liable for its own allegedly retaliatory actions" and not for "retaliation by its employee[s]." Def's Memo in Supp. at 21-22. Harvard's claim that it is immunized from liability for the retaliatory acts of its own faculty members lacks support in the applicable law. In fact, the relevant case law instructs that: (1) retaliation is a form of sex discrimination prohibited under Title IX; (2) unlawful retaliation may be carried out by the employees of a federal-funding recipient; and (3) the recipient may be found liable for damages under Title IX for such retaliation where it amounts to an official act or policy of the recipient, or where the recipient is on notice of such retaliation and is deliberately indifferent to it.

Below, the United States sets forth the proper legal standards applicable to Plaintiffs' retaliation claims in more detail.[2]

## ARGUMENT

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although the statute does not explicitly provide for a private right of action, the Supreme Court has long held that Title IX contains an implied right of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979). Thus, a private litigant may sue a recipient of federal financial assistance for money damages based on allegations that the recipient subjected the litigant to sex discrimination in its education programs or activities. *Id.* As explained below, retaliation against a person because they have engaged in conduct protected by Title IX is a form of intentional sex discrimination. As such, retaliation can give rise to a private suit under Title IX in the same manner as other types of sex discrimination.

Harvard argues that Plaintiffs' retaliation claims should be dismissed because they allege that Harvard employees, rather than "Harvard itself," engaged in retaliatory conduct. Def's Memo in Supp. at 22. This argument not only ignores that retaliation is typically carried out by individuals employed by the recipient, but also conflicts directly with Supreme Court and other relevant case law. Indeed, courts have held funding recipients liable in private damages actions under Title IX where an employee's retaliatory conduct amounts to an official act or policy of

---

[2]   The purpose of this Statement of Interest is to convey the views of the United States about the proper legal standard. The government does not take a position as to whether the facts alleged state plausible Title IX claims for damages under these standards. The United States also does not address here any of Plaintiffs' other claims.

the recipient, as well as in cases where the recipient has notice of retaliation by an individual and is deliberately indifferent to it. This Court should apply these well-established legal standards to assess whether Plaintiffs have adequately alleged retaliation claims for damages under Title IX.

### I. Retaliation By A Recipient's Employees May Support a Claim for Damages Under Title IX

In *Jackson v. Birmingham Board of Education*, the Supreme Court explained that "the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional discrimination on the basis of sex." 544 U.S. 167, 178 (2005) (internal quotation marks omitted). Because Title IX "authorizes private parties to seek monetary damages for intentional violations of Title IX," the Court reasoned, recipients may be held liable in private damages actions for retaliation. *See id.* at 173. When analyzing whether a plaintiff experienced retaliation under Title IX, courts examine whether: (1) the plaintiff complained about sex discrimination or otherwise engaged in protected conduct; (2) the plaintiff suffered an adverse action; and (3) the adverse action is causally linked to the protected conduct. *See Theidon v. Harvard University*, 948 F.3d 477, 505 (1st Cir. 2020).

Harvard asserts that Plaintiffs' retaliation claims must be dismissed because Plaintiffs allege they were subjected to retaliation by individual employees, rather than by Harvard itself. Def's Memo in Supp. at 20-23. In support of this argument, Harvard cites to *Jackson* and *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), claiming that these cases "establish that a retaliation claim lies under Title IX for a funding recipient's own retaliation—but does not establish a cause of action against an entity for retaliation by its employee." Def's Memo in Supp. at 22. This is an incorrect interpretation and application of Supreme Court case law. Rather than bar a retaliation action based on employee conduct, these cases provide two distinct ways plaintiffs may rely on allegations of retaliatory conduct by employees to show that the recipient

4

itself intentionally discriminated in violation of Title IX. Specifically, a plaintiff may state a claim for private damages under Title IX based on allegations of retaliation by individual employees where the alleged retaliatory conduct amounts to an official act of the recipient, as in *Jackson*, or, as the *Gebser* Court explained, where the recipient was on notice of and deliberately indifferent to such discriminatory employee conduct. In either case, the recipient is not being held strictly or vicariously liable in damages for the "independent actions" of its employees, as Harvard suggests, but rather, for its "own official decision" to discriminate. *See Gebser,* 524 U.S. at 290-91.

### A. A Recipient May be Held Liable for Damages under Title IX Where Retaliatory Conduct Amounts to an Official Act of the Recipient

In *Jackson*, the Supreme Court found that the former coach of a high school girls' basketball team stated a claim for damages under Title IX after his supervisor gave him negative performance reviews and members of the Birmingham Board of Education terminated his coaching duties, allegedly in retaliation for his complaints about discriminatory treatment of the girls' team. 544 U.S. 169.

Harvard appears to mistakenly misconstrue *Jackson* to stand for the sweeping proposition that only allegations of retaliatory conduct by the "entity itself" can support a claim under Title IX for institutional liability and that such a claim can never be premised on allegations of retaliatory employee conduct. *See* Def's Memo in Supp. at 20-22. Not so. Rather, *Jackson* stands for the straightforward (but prior to that point unsettled) proposition that retaliation is intentional discrimination under Title IX.

It is true that *Jackson* involved allegations of retaliatory conduct by board members who were clearly acting on behalf of the entity itself, and there is no question after *Jackson* that in such cases, the entity itself can be found to have retaliated and held liable for damages under

5

Title IX. But *Jackson* cannot reasonably be read to state or even suggest that retaliation under Title IX can only be premised on acts undertaken directly by the entity. Rather, *Jackson* means what it says: retaliation is discrimination under Title IX. Moreover, numerous courts have since applied *Jackson* to find that allegations of retaliatory conduct carried out by school employees were sufficient to support a claim that the recipient itself retaliated in violation of Title IX. *See, e.g., Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91-93 (2d Cir. 2011) (holding that a reasonable jury could find that college retaliated in violation of Title IX when it followed through with Honor Code proceedings allegedly initiated by the plaintiff's professor for retaliatory reasons); *Emeldi v. Univ. of Oregon*, 673 F.3d 1218 (9th Cir. 2012) (finding that professor's resignation as plaintiff's advisor was retaliatory conduct sufficient to support a Title IX retaliation claim under *Jackson*); *Valersi v. Wayne State University*, 643 F. App'x. 507, 518-19 (6th Cir. 2016) (upholding jury damages award against university for engaging in retaliation under Title IX where jury found that professor gave plaintiff a failing grade because of her complaints of sex discrimination); *Castro v. Yale University*, 518 F.Supp.3d 593, 611-12 (D. Conn. 2021) (finding that plaintiff stated a claim that university engaged in prohibited retaliation under Title IX based on her supervisor's retaliatory removal of plaintiff from shifts at the ICU).

And, of course, the Court in *Jackson* had no reason to address scenarios where, as in this case, plaintiffs seek damages premised on a university's knowledge of and inadequate response to retaliatory employee conduct. *See Jackson*, 572 U.S. at 172 ("It is assumed, for purposes of the appeal, that the *Board* retaliated against Jackson for complaining about Title IX violations.") (emphasis added). That scenario is, instead, governed by the well-established deliberate indifference framework, discussed below.

### B. A Recipient Also May Be Held Liable for Damages under Title IX Where It is Deliberately Indifferent to an Employee's Retaliatory Conduct

In other cases where it is not evident that the retaliatory conduct at issue constitutes an official act or policy of the recipient, a plaintiff may nonetheless demonstrate that the recipient is liable for retaliation by its employees where an official with sufficient authority is on notice of the retaliatory conduct, but the recipient is deliberately indifferent to it. As the Supreme Court explained in *Gebser*, private damages against a recipient may lie under Title IX not only in cases of sex discrimination that "involve official policy of the recipient," but also where "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." 524 U.S. at 290; *see also Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 646-47 (1999) (applying the deliberate indifference framework to claims of peer-on-peer sexual harassment under Title IX). Because retaliation is itself a "form of intentional sex discrimination," *Jackson*, 544 U.S. at 173, this framework is properly applied to claims of retaliation under Title IX. To hold otherwise would allow recipients to subject individuals to retaliation, a form of sex discrimination, in direct violation of the statute's language. Such an outcome cannot be squared with the reasoning of *Gebser*.

Indeed, consistent with *Gebser* and *Davis*, at least two Circuits have explicitly recognized that recipients may be held liable for their deliberate indifference to individuals' acts of retaliation. *See Doe v. Sch. Dist. No. 1*, 970 F.3d 1300 (10th Cir. 2020) (a school may be held liable where it has actual knowledge of retaliatory harassment and its response is deliberately indifferent); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 695 (4th Cir. 2018) ("an educational institution can be liable for acting with deliberate indifference toward known instances of [retaliation]"). In *Hurley*, the Fourth Circuit clarified that, to state a claim for

damages under Title IX based on a recipient's deliberate indifference to retaliation, the plaintiff must demonstrate both that they experienced retaliation and that they have met the standard for holding the recipient liable for damages. Specifically, a plaintiff must allege that (1) they complained of sexual harassment or otherwise engaged in protected activity; (2) the "retaliatory conduct" constituted "materially adverse" action against them; (3) a causal connection exists between the adverse action and their protected activity; (4) the recipient knew of the retaliation; and (5) the recipient responded with deliberate indifference. 911 F.3d at 694-96. The *Hurley* Court further confirmed that university administrators need not "personally participate" in the retaliation for a university to be held liable for retaliation. *Id.* at 696.

These Circuit Court cases are consistent with the U.S. Department of Education's Title IX regulations, which are applicable to that agency's administrative enforcement of Title IX. Those regulations provide that "[n]o recipient *or other person* may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX[.]" 34 C.F.R. § 106.71(a) (2020) (emphasis added). When enacting this regulation, the Department of Education made clear that the federal-funding recipient must respond to alleged acts of retaliation by individuals, including their own employees. "The Department [of Education] will hold a recipient responsible for responding to allegations of retaliation under § 106.71." 85 Fed. Reg. at 30536. Indeed, the Department clarified that recipients are responsible for addressing retaliation by *any* individual over whom they may exert some measure of authority—including, but not necessarily limited to, their employees and their students:

> The recipient's ability to respond to retaliation will depend, in part, on the relationship between the recipient and the individual who commits the retaliation. For example, if a respondent's friend who is not a recipient's student or employee and is not otherwise affiliated with the recipient threatens a complainant, then the recipient should still

8

>respond to such a complaint of retaliation to the best of its ability . . . such as issuing a no-trespass order.

85 Fed. Reg. at 30536.[3]

Harvard's assertion that it can never be held liable for its own failure to respond to the retaliatory acts of its employees is therefore inconsistent with relevant Title IX case law and regulations and at odds with the purpose of the statute. The suggestion that universities may simply ignore known acts of retaliation by their employees, allowing them to retaliate with impunity against students attempting to vindicate their rights, flies in the face of the Supreme Court's admonition that "[r]eporting incidents of discrimination is integral to Title IX enforcement and would be discouraged if retaliation against those who report went unpunished… Without protection from retaliation, individuals who witness discrimination would likely not report it, indifference claims would be short circuited, and the underlying discrimination would go unremedied." *Jackson*, 544 U.S. at 180-81. This Court should therefore not hesitate to apply the well-established deliberate indifference framework to Plaintiffs' Title IX retaliation claims.

## C. The Cases on Which Harvard Relies Do Not Hold Otherwise

The cases Harvard cites to support its motion to dismiss do not suggest that this Court should dismiss Plaintiffs' claims merely because their allegations rely on the retaliatory acts of

---

[3] Although the current Title IX regulations became effective on August 14, 2020, after some of the retaliatory acts alleged by Plaintiffs, *see* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026 (May 19, 2020), prior to 2020, the Title IX regulations addressed retaliation by incorporating the anti-retaliation provision from the Title VI regulations, which contains identical language stating that "[n]o recipient *or other person* shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI]." 34 C.F.R. § 100.7(e) (emphasis added). *See* 34 C.F.R. § 106.71 (1980) (incorporating Title VI regulations by reference). The current regulations continue to incorporate that provision. Therefore, recipients have been on notice for decades that retaliation by their employees can result in a violation of Title IX's administrative enforcement scheme.

Harvard employees to demonstrate institutional liability, rather than pleading retaliation by "Harvard itself."

First, Harvard cites cases where courts have held that the entity in question could not be held liable for retaliation under Title IX, but these cases do not state that only an "entity" and not an "individual" can engage in retaliatory conduct that provides the basis for Title IX liability. In both cases, the issue was the plaintiff's failure to establish the causal link between the protected activity and the adverse action, not a failure to plead retaliation by the appropriate entity. In *Turley v. McKenzie*, the plaintiff alleged that his dismissal from a police academy was retaliatory, but the court found that he had alleged no facts supporting an inference that the academy knew of the protected activity before it dismissed him. *Turley v. McKenzie*, No. CV 14-14755-LTS, 2018 US Dist. Lexis 1990, *33-34 (D. Mass. Jan. 5, 2018). Similarly, in *Theidon*, the plaintiff alleged that she was denied tenure in retaliation for complaining about discrimination in the Anthropology Department, but the First Circuit found that there was no evidence that the members of the tenure committee were aware of her protected activity or had acted based on retaliatory animus. 948 F.3d at 506.

Harvard also cites to two Sixth Circuit cases in which the court questioned whether deliberate indifference to employee retaliation is actionable under Title IX, but those cases did not address or analyze the issue, as the claims failed on other grounds. *See, e.g., Bose v. Bea*, 947 F.3d 983, 989, 993 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1051 (2021) (choosing "not [to] speculate" as to the theory that school was deliberately indifferent to known retaliation, since the argument was not raised below); *M.D. ex rel. Deweese v. Bowling Green Ind. Sch. Dist.*, 709 F. App'x. 775, 779 (6th Cir. 2017) (noting that even if deliberate indifference analysis were to apply to plaintiff's retaliation claim, the school district's response was "not clearly

10

unreasonable"). These cases therefore provide no indication that the well-established deliberate indifference framework is not properly applied to Plaintiffs' Title IX retaliation claims.

Finally, contrary to Harvard's suggestion that *Gebser* and *Jackson* preclude liability against a recipient based on retaliatory acts by its employees, the Court made clear in those cases that the opposite is true—namely, that discriminatory conduct of individuals (often employees) can provide a basis for a cause of action against the recipient employer. This is not synonymous with holding a recipient "strictly" or "vicariously" liable for individual employee conduct, as Harvard suggests. *See* Def's Memo in Supp. at 21-22 ("Harvard cannot be held strictly liable for Comaroff's alleged retaliatory conduct"). Indeed, whether liability is premised on retaliatory conduct that constitutes an official act of the recipient, as in *Jackson*, or "an official decision by the recipient not to remedy" an employee's discriminatory conduct, as in *Gebser*, the theory is one of intentional discrimination by the recipient, not vicarious liability for the "independent actions" of an employee. *Gebser*, 524 U.S. at 290-91; *see also Davis*, 526 U.S. at 645-46 ("[T]he theory in *Gebser* was that the recipient was *directly* liable for its deliberate indifference to discrimination. Liability in that case did not arise because the 'teacher's actions [were] treated as those of the funding recipient; the district was directly liable for its *own* failure to act.") (internal citations omitted).

## CONCLUSION

Under Title IX, students have the right to report sex discrimination, including sexual harassment, to their schools without fear of reprisal. For that to happen, schools must protect students who participate in the Title IX process from retaliation and respond effectively to known retaliatory acts of their employees. Relevant case law instructs that the retaliatory conduct of a funding recipient's employees may provide the basis of a retaliation claim against the

11

recipient for private damages under Title IX. In particular, a recipient may be held liable where the retaliation amounts to an official act or policy of the recipient, or where the recipient has actual knowledge of such retaliation but is deliberately indifferent to it. For the reasons explained above, this Court should apply these well-established legal standards to Plaintiffs' Title IX retaliation claims.

Dated: September 7, 2022

Respectfully Submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KATHLEEN P. WOLFE
Acting Deputy Assistant Attorney General
Civil Rights Division

SHAHEENA A. SIMONS
Chief
Educational Opportunities Section
Civil Rights Division

/s/ *Veronica Percia*
AMANDA DALLO
VERONICA PERCIA
Educational Opportunities Section
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-5984
veronica.percia@usdoj.gov

RACHAEL S. ROLLINS
United States Attorney
District of Massachusetts

*/s/ Torey B. Cummings*
TOREY B. CUMMINGS
Assistant United States Attorney
United States Attorney's Office
Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3281
torey.cummings@usdoj.gov

*/s/ Lisa Brown*
LISA BROWN
General Counsel
VANESSA SANTOS
Attorney
U.S. Department of Education
Office of the General Counsel
400 Maryland Ave., SW
Washington, D.C. 20202-0001

## Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                        */s/ Torey B. Cummings*
                                        Torey B. Cummings
                                        Assistant United States Attorney