UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA** *Plaintiffs,* v. **HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE** *Defendants.* | CASE NO. 1:22-cv-10202-JGD  LEAVE TO FILE GRANTED ON SEPTEMBER 28, 2022 |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS COUNTS ONE THROUGH NINE
OF PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs' Amended Complaint ("Am. Compl.") and Opposition ("Opp.") to Harvard's Motion to Dismiss ("Motion") make very clear that Plaintiffs are dissatisfied with the outcome of Harvard's investigations into their complaints. They would like Harvard to adopt a number of changes to its Title IX policies and procedures—changes Plaintiffs advance in their pleadings and outside of this litigation.[1] But in this jurisdiction, it is settled law that "[t]he Title IX cause of action is not a mechanism for judicial review of the wisdom or prudence of the institution's response to a plaintiff's grievances." *Grace v. Bd. of Trustees*, NO. 19-10930-GAO, 2022 WL 3754756, at *1 (D. Mass. Aug. 30, 2022) (collecting cases). Without waiving its arguments as to dismissal of Counts One through Nine in the Amended Complaint, Harvard submits this Reply Brief to address certain novel arguments set forth in Plaintiffs' Opposition.

I.      **Plaintiffs Fail to State a Claim Against Harvard for a Violation of Title IX.**

  A.    *Plaintiffs' "Pre-Harassment" Claims Should be Dismissed.*

Plaintiffs' Opposition asserts that the Amended Complaint's Title IX counts are an amalgam of three distinct theories of liability: (1) a "principal theory" that Harvard was deliberately indifferent to alleged reports of earlier harassment towards individuals other than Plaintiffs; (2) that Harvard had a "custom and practice" of deliberate indifference to sexual harassment; and (3) that Harvard's response to Plaintiffs' complaints was "clearly unreasonable." Opp. at 12-17. None of these reformulations save Plaintiffs' Title IX claims from dismissal.

  *i.   Plaintiffs Fail to Plausibly Allege that Harvard Was Deliberately Indifferent to Complaints Against Comaroff Before Plaintiffs Themselves Complained.*

Harvard's Title IX policies and processes are robust, and have been previously found *not* to

---

[1] *See, e.g.*, Sanford Heisler Sharp Files Sexual Harassment and Retaliation Lawsuit against Harvard, Sanford Heisler Sharp LLP (February 8, 2022), *available at* https://www.sanfordheisler.com/blog/2022/february/sanford-heisler-sharp-files-sexual-harassment-an/ ("All of this, Plaintiffs allege, was due to failings in Harvard's Title IX process, which is designed to protect star faculty and allow Harvard to downplay credible accounts of sexual misconduct."); Ariel H. Kim and Meimei Xu, Comaroff, Domínguez, Urton Accusers Call for Title IX Reform at Harvard (Sept. 14, 2022) *available at* https://www.thecrimson.com/article/2022/9/14/letter-to-bacow-comaroff-urton-dominguez/ (describing letter that Plaintiffs and others submitted to Harvard University President demanding that Harvard reform its Title IX and Office of Dispute Resolution ("ODR") procedures, with reference to this lawsuit).

1

constitute deliberate indifference. *See Leader v. President & Fellows of Harvard Coll.,* No. 16-10254, 2018 WL 3213490, at *4 (D. Mass. June 29, 2018) (Casper, J.) (rejecting plaintiff's allegations that Harvard had a "policy of indifference" towards sexual misconduct). Indeed, Plaintiffs' Amended Complaint recounts that once Plaintiffs raised complaints to Harvard about Comaroff, Harvard responded by conducting an investigation that resulted in sanctioning Comaroff. Am. Compl. ¶ 185. In opposition to Harvard's Motion, Plaintiffs recast their claims into an additional category of purported liability: "pre-harassment" indifference. Opp. at 12-13.

This claim falls short. As explained in Harvard's Motion, to proceed with a Title IX claim, the Plaintiffs must plausibly allege that a Harvard official authorized to take corrective action had "actual knowledge" of sexual harassment and either failed to act or exhibited deliberate indifference to it. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288-90 (1998). Courts have set a "high[] standard" for sufficiently pleading "actual knowledge" that Plaintiffs were at risk of severe misconduct that would compromise their educational opportunities. *See Doe v. Town of Stoughton*, No. 17-CV-12337-IT, 2018 WL 1951180, at *3 (D. Mass. Apr. 25, 2018) (dismissing Title IX claim for insufficient showing of actual knowledge); *see also Doe v. Bradshaw*, 203 F. Supp. 3d 168, 185 (D. Mass. 2016); *Turley v. McKenzie*, No. 14-14755-LTS, 2018 WL 314814, at *11 (D. Mass. Jan. 5, 2018).[2] "Actual knowledge requires that the defendant is deliberately indifferent to 'known acts' of harassment or discrimination," severe enough to compromise educational opportunities. *D'Agostino*, 367 F. Supp. 2d at 166. The "case law is clear that only reliable and

---

[2] Even assuming *arguendo* that Harvard had the requisite "actual knowledge," Plaintiffs do not plausibly allege, as they must, that Harvard's response was deliberately indifferent. *See Gebser*, 524 U.S. at 290, 292-93 (declining to hold school district-funding recipient "liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice *and* deliberate indifference" (emphasis added)). Although the Amended Complaint states that at this time, Harvard "implemented no safeguards" on Comaroff's "contact with students," and "could have" heeded "warnings" regarding his conduct at the University of Chicago, *see* Am. Compl. ¶¶ 46; 62-64, these are nothing more than conclusory allegations that do not sufficiently plead that Harvard's actions were "clearly unreasonable in light of the known circumstances." *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *see also Doe v. D'Agostino*, 367 F. Supp. 2d 157, 166-67 (D. Mass. 2005) (finding that prior incidents did not provide "actual notice" and that, regardless, deliberate indifference evidence was insufficient).

unambiguous reports have been deemed sufficient to provide actual knowledge." *Bradshaw*, 203 F. Supp. 3d at 185. For example, "'rumors, investigations, and student statements' have been held not to constitute 'actual knowledge.'" *Id.* (citations omitted).

Plaintiffs here fail to plausibly allege that, before their own complaints were raised in October 2017, Harvard had "actual knowledge" of alleged misconduct sufficient to ground a deliberate indifference claim. The allegations regarding Comaroff's behavior prior to arriving at Harvard contend, at most, that Comaroff had a reputation, known to some and based on rumor, that he had acted badly at a previous employer. *See* Am. Compl. ¶¶ 42-45. Plaintiffs' allegations concerning "Harvard Student 2's" ("HS2") purported report, even if accepted as true, fail to state a claim against Harvard for "pre-harassment" deliberate indifference, where they do not even specify what was purportedly reported to a Harvard official authorized to take corrective action or how Harvard's response to any such report was clearly unreasonable. *See Santiago v. Puerto Rico*, 655 F.3d 61, 74 (1st Cir. 2011) (affirming dismissal of Title IX claim for failure to plausibly allege actual knowledge); *Doe No. 1 v. Boulder Valley Sch. Dist. No. Re-2*, No. 11–cv–02107–PAB–KLM, 2012 WL 4378162, at *5 (D. Colo. Sept. 25, 2012) (dismissing Title IX claim because alleged incidents of misconduct prior to assault were dissimilar, infrequent, and/or too distant in time to alert school officials that teacher "posed a substantial risk of abuse" to students).[3]

> ii. *Plaintiffs Fail to Plausibly Allege that Harvard Maintained a "Custom and Practice" of Deliberate Indifference.*

As part of their newly-formulated "pre-harassment" claim, Plaintiffs also allege that Harvard has a "custom and practice of deliberate indifference" evidenced by the following alleged

---

[3] *See also Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 780 (8th Cir. 2001) ("rumors, investigations, and student statements" absent "conclusive proof" of prior related conduct is insufficient to constitute actual knowledge); *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1373 (11th Cir. 2000) (holding that a prior complaint of touching and a perceived additional touching could not, as a matter of law, provide the principal with actual knowledge that the teacher was sexually assaulting students); *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 63 (D. Me. 1999) (a substitute teacher reporting both rumors and her own observations of sexualized dancing between student and teacher insufficient to show institution's "actual knowledge").

practices: (1) Harvard's failure to investigate faculty misconduct unless a student initiates a formal complaint with ODR; (2) Harvard's "disclaim[ing] the power to prevent professional retaliation;" and (3) maintaining "these practices" and "routinely discourag[ing] students from filing formal ODR complaints." Opp. at 14. In so arguing, Plaintiffs rely wholly on *Karasek v. Regents of University of California*, 956 F.3d 1093 (9th Cir. 2020), and the lower court's opinion in that case, 500 F. Supp. 3d 967 (N.D. Cal. 2020).[4] Plaintiffs have not cited (nor is undersigned counsel aware of) any case in the First Circuit that has adopted or analyzed a Title IX claim under a "custom and practice" doctrine. To the contrary, Plaintiffs appear to be importing this doctrine in order to assert, again, their dissatisfaction with certain Harvard Title IX processes and the outcomes in their cases.

But even if the First Circuit had adopted this doctrine, Plaintiffs' allegations fail at the first two steps of the Ninth Circuit's analysis. First, Plaintiffs fail to allege *facts* (as opposed to conclusions) to support their claims that the "practices" were adopted by Harvard and constitute a "policy of deliberate indifference." Indeed, the alleged practice that Harvard fails to investigate absent a formal complaint and routinely discourages such complaints is belied by the Amended Complaint itself, which concedes that Avakian was the first to initiate an ODR complaint based on the Plaintiffs' statements. *See* Am. Compl. ¶ 119. Second, apart from conclusory allegations, Plaintiffs do not allege how the purported "practices" caused Plaintiffs to be harassed or created a "heightened risk of sexual harassment."[5] Thus, even under this standard, the "custom and practice"

---

[4] According to that Ninth Circuit case, a claim of indifference to "pre-assault" conduct can survive a motion to dismiss only if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious, (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it deprived the plaintiff of educational opportunities or benefits. *Karasek*, 956 F.3d at 1112.

[5] *See Reed v. S. Ill. Univ.*, No. 3:18-CV-1968-GCS, 2020 WL 3077186, at *7 (S.D. Ill. June 10, 2020) (dismissing "pre-assault" *Karasek* claim stemming from school's "deficient and slow investigative process" on 12(b)(6) motion "absent an allegation of actual notice of a particularized risk" and/or "a clear intention to slow or redirect investigations in order to discriminate based on gender"); *see also Barlow v. Washington*, No. 21-35397, 2022 WL 2256318, at *1 (9th Cir. June 23, 2022) (Even viewed in the best light, university policies at issue were, at most, "deficient" and not "maintained . . . despite a known or obvious risk of sexual misconduct," such that "no reasonable jury could conclude that the [u]niversity was, as a matter of policy, deliberately indifferent to reports of sexual misconduct." (citations omitted)).

claim must be dismissed.

### B. *Plaintiffs' Claim of Post-Harassment Deliberate Indifference Should be Dismissed.*

As for Harvard's response once Plaintiffs did raise complaints, the Opposition again emphasizes Plaintiffs' disagreement with the structure, process, and outcome of the ODR investigations. *See, e.g.,* Opp. at 15-16 ("Harvard allowed Comaroff to call [certain] witnesses, despite their irrelevance . . . manufactured 'inconsistencies' in Kilburn's testimony that were obviously unsupported in the evidence . . . [and] refused to consider relevant evidence."). This is not a valid basis on which to proceed with a Title IX complaint because "Title IX does not guarantee that an investigation will yield the outcome the complainant desires." *Doe v. Emerson Coll.*, 271 F. Supp. 3d 337, 355 (D. Mass. 2017); *see Davis*, 526 U.S. at 648 (Title IX complainants lack a "right to make particular remedial demands"); *Doherty v. Am. Int'l Coll.*, No. 17-cv-10161-IT, 2019 WL 1440399, at *8 (D. Mass. Mar. 31, 2019) (school's investigation and hearing process found "not clearly unreasonable" despite not resulting in plaintiff's desired resolution).[6] In addition, "[t]hat the school administrators might have done more or responded differently than they did does not establish indifference." *Grace*, 2022 3754756, at *1.

Harvard's opening brief details the many ways in which Plaintiffs fail to allege that Harvard's response to Plaintiffs' complaints was anything other than thorough, searching, and far from "clearly unreasonable." Motion at 21-23 (collecting cases).[7] Harvard need not repeat those

---

[6] Any distinctions between this case and *Leader*, *see* Opp. at 17 n.7, do not change the fact that the same ODR process with which Plaintiffs take umbrage was found not deliberately indifferent by a Court in this District. *See Leader*, 2018 WL 3213490, at *4.

[7] Any claimed "delay" in Harvard's investigation of Plaintiffs' complaints does not, in and of itself, evince "deliberate indifference." *See Emily O. v. Regents of Univ. of Cal.*, No. CV-20-08159-AB-JEM, 2021 WL 1535539, at *7 (C.D. Cal. Mar. 9, 2021). A school's "delayed response" constitutes deliberate indifference only if it prejudices the plaintiff or if the delay was a deliberate attempt to sabotage the plaintiff's complaint or its orderly resolution. *Id.* Plaintiffs have alleged no facts establishing that any "delay" was an attempt to sabotage their claims or that their claims were affected in some way due to a delay. *See id.* at *7. On the contrary, Plaintiffs have not alleged that they were subject to further harassment by Comaroff following Ms. Kilburn's May 2019 complaint to Avakian.

arguments except to reiterate that where, as here, the school "engaged in a reasonable process for investigating and addressing claims of sexual harassment," it has "satisfie[d] its obligations" under Title IX. *Doherty*, 2019 WL 1440399, at *5 (quoting *Emerson Coll.*, 271 F. Supp. 3d at 356).[8]

### C. Plaintiffs' Attempt to Alter the "Severe and Pervasive" Standard Must be Rejected.

Harvard's opening brief also explains that in assessing whether a complaint states a claim under Title IX, courts consider whether a plaintiff was subject to "severe, pervasive, and objectively offensive sexual harassment." Motion at 19-21. Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with a student's performance." *Keskinidis v. Univ. of Mass. Bos.*, 76 F. Supp. 3d 254, 259-60 (D. Mass. 2014) (quotation and internal punctuation marks omitted).[9] As explained in Harvard's opening brief, two Plaintiffs—Mandava and Czerwienski—allege no physical contact with Comaroff at any time; Czerwienski alleges no contact *whatsoever* (not even a conversation), and Mandava alleges a single conversation. *See* Am. Compl. ¶¶ 69-73. These allegations do not allege severe and pervasive conduct as that term is defined in the relevant caselaw. *See Keskinidis*, 76 F. Supp. 3d at 260.[10] For the foregoing reasons, Count One fails to state a claim and should be dismissed.

### II. Plaintiffs' Retaliation Claims Should be Dismissed.

---

[8] The Opposition states that "Harvard does not dispute" that the Amended Complaint "plausibly alleges Comaroff's repeated sexual harassment created a hostile environment for Kilburn." Opp. at 17. Harvard has made no such concession. Harvard's opening brief instead makes clear that Harvard was not deliberately indifferent to *any* of the Plaintiffs' complaints and that Count One must therefore be dismissed. Motion at 21-23.

[9] As stated in Harvard's opening brief, *see* Motion at 20, just because certain of Comaroff's conduct violated Harvard's policies does not mean that it was sufficiently "severe and pervasive" under Title IX jurisprudence to state a claim against Harvard.

[10] Plaintiffs argue that *Doe v. Pawtucket School Department*, 969 F.3d 1 (1st Cir. 2020) sets a new standard for teacher-on-student hostile environment claims, specifically, that the teacher's conduct need only be *either* severe *or* pervasive, not severe *and* pervasive. *See* Opp. at 19-20. Harvard disagrees. In *Pawtucket*, the Court explains that conduct perpetrated by a person in authority "*might* be deemed more likely to exclude, or discriminate against the potential targets" than student conduct. 969 F.3d at 11 (emphasis added). However, the First Circuit ultimately concluded that, taken as true, the facts of that case plausibly alleged "conduct *severe and pervasive enough* to result in excluding, or discriminating against, a victim of that behavior." *Id.* (emphasis added).

### A.      *Harvard and the Government Agree on the Relevant Standard, Which Plaintiffs Ask This Court to Disregard.*

Plaintiffs' Opposition and the Government's Statement of Interest, Dkt. No. 78 ("SOI"),[11] misconstrue Harvard's arguments in favor of dismissing Plaintiffs' retaliation claim.  First, contrary to Plaintiffs' misleading assertion, Harvard has *not* argued that Title IX "provides no remedy" for students when a school's deliberate indifference exposes them to retaliation.  Opp. at 18.  To the contrary, Harvard has *expressly recognized* the precise standard that the Government also recites: a funding recipient may be sued under Title IX where a plaintiff plausibly alleges that "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  Motion at 24 (quoting *Gebser*, 524 U.S. at 277); SOI at 7 (quoting the same standard).

Here, however, Plaintiffs are attempting to hold Harvard *strictly liable* for the actions of John Comaroff, Jean Comaroff, and a host of other faculty members.  *See, e.g.,* Opp. at 17-19; Am. Compl. ¶¶ 244-53.  Indeed, Plaintiffs argue that Harvard should be strictly liable for a letter the Comaroffs allegedly convinced 54 academics "across the world" to sign.  Opp. at 19 (citing Am. Compl. ¶ 195).  Undersigned counsel is not aware of *any* United States Supreme Court or First Circuit case that has held a Title IX funding recipient *strictly liable* for the retaliatory actions of its employees (or academics outside of the institution).[12]  Indeed, in *Jackson v. Birmingham Board of Education*, the Supreme Court concluded that "when *a funding recipient* retaliates against a person because he complains of sex discrimination, this constitutes intentional discrimination on the basis

---

[11] On September 7, 2022, the United States submitted a Statement of Interest in this case, providing its view of the standard this Court should apply in deciding whether the Amended Complaint sufficiently pleads a claim for retaliation against Harvard under Title IX.  Of course, interpretation of the confines of such a claim is a "pure question of statutory construction . . . well within the province of the Judiciary" and the United States' views on the subject "merit no special deference."  *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004).  Even so, as explained herein, Harvard's position is largely consistent with that of the Government.

[12] The only remotely similar strict liability standard of which undersigned counsel is aware is an employer's strict liability for a supervisor's harassment of an employee (in certain circumstances) under Title VII.  *See, e.g.*, *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

of sex, in violation of Title IX." 544 U.S. 167, 174 (2005) (emphasis added). The *Jackson* Court *did not* conclude that a funding recipient is automatically, strictly subject to suit because of retaliation by the recipient's faculty member.[13]

Likewise, other cases on which the Plaintiffs and the Government rely, *see* Opp. at 18 n.8, SOI at 6, do not stand for the novel and incorrect proposition advanced by Plaintiffs: that a university is strictly liable for retaliatory conduct carried out by its employees. For the most part, their cited cases involve a school *itself* taking action directly against a plaintiff. *See, e.g.*, *Varlesi v. Wayne State Univ.*, 643 Fed. Appx. 507, 512, 516, 519 (6th Cir. 2016) ("retaliatory" actions were *university* denying student a degree and related conduct); *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1225, 1229 (9th Cir. 2012) ("retaliatory" actions were the "*University* . . . render[ing]" student "unable to complete the degree")[14] (emphasis added)).[15]

In this case, Plaintiffs have not alleged that *Harvard* took retaliatory action against them. Rather, they allege that Harvard can be held strictly liable for the retaliatory actions of a range of people not acting on behalf of the University, including but not limited to: John Comaroff, Jean Comaroff, every one of the 38 signatories of open letters to the community, and others at and outside of Harvard. *See* Am. Compl. ¶¶ 64, 70-73, 189-96. This is not the standard which this

---

[13] Notably, the retaliatory conduct at issue in *Jackson* was the Birmingham Board of Education's *own* termination of the plaintiff's duties. *See* 544 U.S. at 172, 183. The Government acknowledges this. SOI at 5 ("It is true that *Jackson* involved allegations of retaliatory conduct by board members who were clearly acting on behalf of the entity itself."); *see Papelino v. Albany Coll. of Pharm.*, 633 F.3d 81, 91-93 (2d Cir. 2011) ("retaliatory" actions were *the school's* initiation of honor code proceedings following student's complaint and *school's* refusal to provide an unqualified certification of Papelino's degree); *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 610-11 (D. Conn. 2021) (complaint alleged that *Yale* and affiliated hospital retaliated against plaintiffs by failing to properly investigate their claims of discrimination and sexual assault).

[14] Ultimately, the Ninth Circuit directed a verdict for the university on the issue of retaliation. *See Emeldi v. Univ. of Or.*, Civ. No. 6:08–cv–06346–MC, 2014 WL 1155301, at *1 (D. Or. Mar. 19, 2014)

[15] Moreover, other cases on which the Government relies, *see* SOI at 7-8, are inapposite because they concern an institution's liability for student-on-student retaliatory harassment, which is not at issue here. *See Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1309 (10th Cir. 2020); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 696 (4th Cir. 2018). Even in that context, however, courts have recognized that "a school may not be held liable under Title IX for what its students do, but only for what is effectively an official decision by the school to act in a clearly unreasonable manner in light of the known circumstances." *Hurley*, 911 F.3d at 709 (citing *Davis*, 526 U.S. at 645).

8

Court can or should apply; nor does the Government suggest that it is. Rather, both Harvard and the Government agree that a funding recipient can be liable under Title IX for retaliatory acts of its employees if it *either* has actual notice of that conduct and is deliberately indifferent to it, *or* the retaliation is carried out as directed by the university, or as university policy. Motion at 24 (quoting *Gebser*, 524 U.S. at 277); *see also* SOI at 7 (quoting the same standard).

    **B.**   ***When the Correct Standard is Applied, Plaintiffs' Claims Fail.***

    Plaintiffs do not plausibly allege that Harvard had actual notice of, and was deliberately indifferent to, retaliation, nor that Harvard had an "official policy" of retaliation. Plaintiffs' allegations show that Harvard addressed the claims they made against Comaroff. Even though the ODR investigations concluded that the alleged conduct was legally insufficient to make out a retaliation claim under the Title IX Policy, Harvard nevertheless determined that it was important to evaluate the alleged October 2017 threats under the FAS Professional Conduct Policy. Accordingly, Harvard engaged a third-party investigator who found that Comaroff had engaged in threatening and coercive conduct in that instance, in violation of the FAS Professional Conduct Policy. Am. Compl. ¶¶ 182-83; Opp. at 10, n. 2.

    Likewise, the Amended Complaint acknowledges that ODR concluded that Comaroff had violated Harvard's Title IX Policy as to Kilburn. *Id.* ¶ 179. And there is no dispute that Harvard then issued sanctions against Comaroff. *Id.* ¶¶ 179, 183, 184-85. Thus, Plaintiffs' allegations about Harvard's response to complaints of retaliation show Harvard was neither "clearly unreasonable" nor deliberately indifferent. As to the events occurring after the investigation concluded, there is no legally cognizable claim that a University is liable for retaliation when faculty pen an open letter on a topic of public debate related to the outcome of a Title IX case. Aside from the First Amendment issues implicated if the University or the government were to punish such speech, Plaintiffs have not asserted how faculty opinions about the process interfered with their studies. *See* Opp. at 19 (citing Am. Compl. ¶¶ 189, 194-95, 188-202). For all these reasons, Count Two must be dismissed.

### III. Plaintiffs Fail to Plausibly Allege that Harvard Discriminated Against Them on the Basis of Gender.

The Opposition alleges (for the first time) that Harvard's purported "independent corroboration requirement" is the basis for their Title IX gender discrimination claim. Plaintiffs argue that as a matter of policy, Harvard uniformly finds that uncorroborated claims of a complainant are insufficient to support a finding that a respondent has violated Harvard policy. Opp. at 34-35. Plaintiffs then invoke a supposed "scholarly consensus" that such a requirement is biased against women. *Id.* (citing Am. Compl. ¶¶ 134, 206, 214).

However, in the Title IX context, "[c]ognizable allegations of gender bias typically include 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Doe v. Wentworth Inst. of Tech.*, No. 1:21-cv-10840-IT, 2022 WL 1912883, at *5 (D. Mass. June 3, 2022) (quotation omitted). No such allegations—or any other suggesting gender-based bias towards the Plaintiffs— are set forth in the Amended Complaint.

Even if Plaintiffs' claims that an alleged "independent corroboration requirement" were alone enough to state a claim of gender bias, Plaintiffs do not allege, as they must, that the purportedly biased practice as applied to *their specific cases* resulted in discrimination *against them* on account of *their gender*. *See, e.g.*, *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019) (citation omitted) ("To make out a claim under Title IX, [plaintiffs] must show that 'gender bias was a motivating factor'"). Plaintiffs have an "obligation to plead sufficient facts from which an inference of gender bias" can be drawn and have failed to do so. *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 188 (D. Mass. 2017).[16] Rather, the Amended Complaint alleges that Harvard

---

[16] Notably, in dismissing the gender bias claim in *Western New England University*, Judge Ponsor acknowledged that "questions of motive and intent are generally reserved for trial," 228 F. Supp. 3d at 191 (citation omitted), but dismissed the claim because "[p]laintiff had an obligation to plead sufficient facts from which an inference of gender bias could be drawn, and he has failed to do so." *Id.* So too here.

10

took action, even before Plaintiffs were willing to file their own complaints; and that the investigative processes resulted in findings and sanctions. *See, e.g.*, Am. Compl. ¶¶ 119, 173-78, 182, 185. Plaintiffs' gender bias claim is simply another example of Plaintiffs' attempt to use this litigation to alter Harvard's processes according to their preferences without alleging that those processes, as applied to Plaintiffs, violated state or federal law. Count Three should be dismissed.

**IV.    Neither the Discovery Rule Nor the Continuing Violation Doctrine Salvage Plaintiffs' Untimely Claims.**

The Opposition attempts to save Plaintiffs' untimely claims from dismissal by applying the discovery rule, the continuing violation doctrine, and the Supreme Judicial Court's ("SJC") 105-day COVID-19 tolling order. *See* Opp. at 2, 20-28. As explained below and in Harvard's Motion, these doctrines do not save Counts One through Six, which are governed by a three-year statute of limitations and accrued, at the latest, in 2017, five years before the original Complaint was filed.[17]

**A.    *The Discovery Rule Cannot Save Plaintiffs' Title IX Claims*.**

Plaintiffs now argue, incredibly, that their Title IX claims did not accrue until *2020*, when "press coverage first publicized Harvard's alleged deliberate indifference." Opp. at 3 (internal quotations and citations omitted). Relying on *Ouellette v. Beaupre,* 977 F.3d 127 (1st Cir. 2020), a non-Title IX case, Plaintiffs argue that application of the discovery rule means that both their "pre-harassment" and "post-harassment" deliberate indifference claims accrued not when Comaroff allegedly harassed or threatened Plaintiffs themselves, but once the Plaintiffs knew of Harvard's

---

[17] The Opposition argues that the SJC's 105-day COVID-19 tolling order moves the cut-off date for accrual of Plaintiffs' claims from February 8, 2019 to October 26, 2018. Plaintiffs cite one case in support, *Silva v. City of New Bedford*, CV 20-11866-WGY, 2022 WL 1473727, at *1 (D. Mass. May 10, 2022), which Plaintiffs mischaracterize as having applied the SJC's tolling order to all "federal claims that borrow state statutes of limitation." Opp. at 5. *Silva* contains no such holding. In a matter of first impression, *Silva* applied the SJC's tolling order to a Section 1983 claim, but neither *Silva* nor any other federal or state case has decided whether that tolling order applies to Title IX claims. Moreover, even if it applied in this case, only Kilburn's allegations are relevant to the shift in the relevant statute of limitations. The other two Plaintiffs' claims, which accrued in 2017, remain clearly outside of the limitations period regardless of whether the accrual date is February 8, 2019 or October 26, 2018.

alleged deliberate indifference.[18]  Plaintiffs pin that date squarely on the 2020 *Harvard Crimson* article, contending that before its publication they had "no reason to suspect that Harvard's Title IX Office was not doing its job." Opp. at 3.  This argument ignores the law, Plaintiffs' own pleadings, and multiple publicly available statements made by the Plaintiffs themselves,[19] all of which establish that Plaintiffs were dissatisfied with Harvard's response well before 2020.

First, Plaintiffs ignore basic tenants of the federal discovery rule that "discovery of the injury, not discovery of the other elements of the claim, is what starts the clock." *Rotella v. Wood,* 528 U.S. 549, 555 (2000).  For purposes of applying the discovery rule to Title IX cases, the relevant injury is the harassment or abuse itself, such that a claim accrues when the plaintiff is harassed.[20]  This has been applied to so-called "pre-harassment" claims.  *See, e.g., Univ. of S. Cal.*,

---

[18] Plaintiffs also point to a Sixth Circuit case, *Snyder-Hill v. Ohio State Univ.*, No. 21-3981, 2022 WL 4233750 (6th Cir. Sept. 14, 2022), in their Notice of Supplemental Authority, Dkt. No. 80, as adopting *Ouellette*'s reasoning in a Title IX context.  However, as explained in more detail below, *Snyder-Hill* misapplies Supreme Court precedent on the discovery rule, and *Snyder-Hill* itself recognizes that for post-harassment claims, "[a] plaintiff will typically know or have reason to know that a school mishandle[d] their own report of an assault close to the time of the school's inadequate response." *See id.* at *13. Mandava and Czerwienski reported Comaroff's alleged harassment in 2017 and explicitly state they found Harvard's response disappointing.  *See* Am. Compl. at ¶¶ 78-79.  Thus, even under the case law that Plaintiffs rely upon, their post-harassment claims plainly accrued in 2017.

[19] Plaintiffs have made much of their multi-year purported disappointment with Harvard's responses in the press.  In one example, "Mandava, one of the three plaintiffs, said she and the other two students tried for years to solve the problem quietly, through internal channels at Harvard, but only encountered dead ends and pushback."  *See* Laura Krantz, *Three graduate students file sexual harassment suit against prominent Harvard anthropology professor*, Boston Globe (February 2, 2022), available at https://www.bostonglobe.com/2022/02/08/metro/3-graduate-students-file-sexual-harassment-suit-against-prominent-harvard-anthropology-professor/.

[20] *See, e.g., Twersky v. Yeshiva Univ.*, 579 Fed. Appx. 7, 9-10 (2d Cir. 2014) (assuming without deciding that the discovery rule applies and stating, "…more than 20 years before filing this suit …, [Plaintiffs] were unquestionably aware of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [University].  This information was sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct by its teachers."); *Doe v. Univ. of S. Cal.*, 2:18-cv-09530 (SVW-GJS), 2019 WL 4229750, at *4 (C.D. Cal. July 9, 2019) ("Even if Plaintiff generally did not learn until recently about USC's alleged deliberate indifference spanning over approximately thirty years, Plaintiff's understanding of her injury at the time of her examination… means that the statute of limitations period began to run immediately following the examination."); *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 996 (S.D. Ohio 2018) (finding that sexual harassment by a faculty member started the statute of limitations clock under Title IX); *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) ("[Plaintiff's] claims are based on the sexual assaults…the last of which occurred on May 18, 2012. Thus, her claims accrued, at the latest, on May 18, 2012—even if [plaintiff's] claim is based on Defendants' actions or inactions in failing to protect her"); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp. 2d 662, 668 (E.D. Ky. 2009) (plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board, at the time it was allegedly inflicted. This is to say that Plaintiffs' causes of action accrued at the time of the alleged abusive acts.").

2019 WL 4229750, at *4; *A.T. v. Everett Sch. Dist.*, 300 F. Supp. 3d 1243, 1258–59 (W.D. Wash. 2018). Thus, all three Plaintiffs' claims plainly accrued in 2017, when each alleges they were first harassed by Comaroff, and all three claims are time-barred. *See* Am. Compl. at ¶¶ 70-76, 88-90.

Second, regardless of which accrual standard is applied, Czerwienski and Mandava's pre-harassment *and* post-harassment deliberate indifference claims plainly accrued in 2017. Plaintiffs' Amended Complaint explicitly states that by the time Comaroff allegedly retaliated against them in October 2017, Czerwienski and Mandava: (1) knew that Comaroff was allegedly sexually harassing Harvard Student 2 and pursuing Harvard Student 3; (2) had both reported Comaroff's alleged behavior towards Harvard Students 2 and 3 to faculty; and (3) had been dissatisfied with Harvard's response and thus had taken it upon themselves to start warning students about Comaroff. *See* Am. Compl. ¶¶ 55-76. After Comaroff allegedly retaliated against them, Czerwienski and Mandava immediately reported his conduct to Avakian and *explicitly allege* that they found Avakian's response to this report inadequate. *Id.* ¶¶ 78-79. Thus, regardless of whether their claims accrued when they were retaliated against or when they first became unhappy with the response to their report of concerns, Plaintiffs' own pleadings place the accrual date squarely in 2017.

    **B.**  ***The Continuing Violation Doctrine Does Not Render Plaintiffs' Claims Timely***.

Plaintiffs' Opposition cites to other jurisdictions to support their request that this Court apply the continuing violation doctrine to salvage their untimely claims. But neither the First Circuit nor the Supreme Court has addressed whether the continuing violation doctrine applies to Title IX claims, and federal courts have recognized that the continuing violation doctrine would be "a poor fit with the goals of Title IX." *See* Motion at 17 (collecting cases). Furthermore, even if the continuing violation doctrine applied, Plaintiffs have not alleged actionable conduct within the statute of limitations period that may serve as an "anchoring act." Czerwienski and Mandava's supposed anchoring "acts" are merely assertions that Harvard showed "continued deliberate indifference to Professor Comaroff's sexual harassment" and "maintained an official policy,

13

custom, and/or practice of deliberate indifference to a known overall risk of sexual harassment, retaliation, and gender-based disparate treatment." Am. Compl. ¶¶ 236-37. These "acts" are merely circuitous and conclusory, and not independently actionable. Thus, they cannot anchor untimely allegations of a single incident in *2017*. *Perez v. Horizon Lines, Inc.*, 804 F.3d 1, 8 (1st Cir. 2015) (rejecting claim of continuing violation where purportedly anchoring conduct was not "actionable as a matter of law"). Thus, Czerwienski and Mandava's Title IX, MCRA, and MERA claims, all rooted in the same alleged actions, are time-barred and must be dismissed.[21]

V.     **Plaintiffs Do Not Salvage Their Contract and Fair Dealing Claims.**

Nor does Plaintiff's Opposition salvage their counts for breach of contract or breach of the covenant of good faith and fair dealing (Counts Eight and Nine). Plaintiffs first purported to bring suit for a long list of allegedly violated contract terms. *See* Am. Compl. ¶¶ 303-10. Harvard's Motion to Dismiss subsequently explained that those terms are not actionable. *See* Motion at 35-37. Now, Plaintiffs appear to have narrowed their contract claim to an assertion that Harvard failed to provide a "prompt and equitable" investigation. Opp. at 6, 35-37.

Conspicuously, Plaintiffs do not cite *any case* relevant to the breach of this purported term. Instead, Plaintiffs appear to principally rely on two cases: *Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997), and *Wentworth Inst. of Tech.*, 2022 WL 1912883, at *6. *Guckenberger* is a disability accommodations case with little relevance to Plaintiffs' claims. *Wentworth* stands for the unremarkable and irrelevant proposition that a claim may proceed where plaintiff had "made *specific allegations* regarding how Wentworth breached" the terms of the school's Title IX policy. 2022 WL 1912883, at *6 (emphasis added). In that case, plaintiff's prior sexual history was referenced throughout the Title IX investigative file despite a specific rule in the school's policy

---

[21] Kilburn's MERA, MCRA, and M.G.L. ch. 214, § 1C claims are similarly barred. As set forth in Harvard's Motion, the Amended Complaint alleges that the latest instance of actionable harassment directed at Kilburn occurred in Fall 2018. *See* Am. Compl. ¶¶ 102, 103. Kilburn has not alleged that Comaroff's conduct or Harvard's allegedly insufficient response was "inherently unknowable." Kilburn was thus required to file her statutory claims no later than Fall 2021 to comply with the three-year statute of limitations. Accordingly, all three statutory claims are time-barred.

14

prohibiting consideration of a complainant's sexual history. *Id.* Here, despite Plaintiffs' very long and detailed Amended Complaint, no specific contract term is identified which promised something that was not provided, or prohibited something that was allowed. Plaintiffs are thus still seeking to move forward based on a generalized statement that does not ground viable contract claims.[22] Counts Eight and Nine should therefore be dismissed.

## VI. Plaintiffs' Statutory Claims Must Be Dismissed.

Plaintiffs' Opposition fails to explain how Plaintiffs' claims are sufficient to proceed pursuant to MERA, MCRA, and M.G.L. ch. 214, § 1C, and justifies that omission by claiming that "Harvard does not dispute that Plaintiffs allege conduct that would plausibly violate three Massachusetts civil rights statutes…" Opp. at 19. But, of course, Harvard does assert that Plaintiffs fail to state a claim as to all three statutes. *See* Motion at 32-34. The Opposition also declines to explain how the statutory claims are timely where none of the incidents giving rise to knowledge of Plaintiffs' injury (and Harvard's response) was "inherently unknowable." *See id.* at 32-33. Moreover, as set forth in Harvard's opening brief, the MCRA and MERA claims are barred to the extent that Plaintiffs seek the same redress through those statutes that is available under ch. 214, § 1C. Thus, Counts Four, Five, and Six should be dismissed.

For the foregoing reasons, as well as those set forth in Harvard's opening brief, Counts One through Nine of the Amended Complaint should be dismissed in their entirety.

---

[22] *See, e.g., Doe v. Maryland*, No. CV ELH-20-1227, 2021 WL 1174707, at *32 (D. Md. Mar. 29, 2021) (where plaintiff did not identify specific terms, but rather claimed that the school "breached its contract with plaintiff because it 'failed to provide the fair and impartial resolution it promised' in the Handbook," to wit, a "prompt, fair, equitable, and impartial investigation and resolution of all reports of sexual misconduct," claim was dismissed).

15

Respectfully submitted,

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE,**

By its attorneys,

*/s/ Victoria Steinberg*
Victoria L. Steinberg, BBO #666482
Rebecca M. O'Brien, BBO #693592
TODD & WELD LLP
One Federal Street
Boston, MA 02110
Telephone: (617) 624-4714
Facsimile: (617) 624-4814
vsteinberg@toddweld.com
robrien@toddweld.com


/s/ *Martin F. Murphy*
Martin F. Murphy, BBO #363250
Madeleine K. Rodriguez, BBO #684394
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
mmurphy@foleyhoag.com
mrodriguez@foleyhoag.com

Dated: September 30, 2022

## CERTIFICATE OF SERVICE

I, Victoria Steinberg, hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served on all counsel of record.

*/s/ Victoria Steinberg*
Victoria Steinberg