1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3


4      Margaret Czerwienski, et al.,)
                       Plaintiffs,    )
5                                     )
                                      )
6      vs.                            )   Case No. 22-cv-10202-JGD
                                      )
7                                     )
       President and Fellows of       )
8      Harvard College, et al.,       )
                       Defendants.    )
9


10

       BEFORE:  The Honorable Magistrate Judge Judith G. Dein
11

12
                            Motion Hearing
13

14


15
                              United States District Court
16                            1 Courthouse Way
                              Boston, Massachusetts
17                            September 2, 2022

18

19

20

21

22
                        Marianne Kusa-Ryll, RDR, CRR
23                        Official Court Reporter
                       United States District Court
24                        595 Main Street, Room 514A
                        Worcester, MA 01608-2093
25                    508-929-3399 justicehill@aol.com
                   Mechanical Steno - Transcript by Computer

```
1    APPEARANCES:

2    Sanford Heisler Sharp
     By Carolin Guentert, Esquire
3    1350 Avenue of the Americas
     31st Floor
4    New York, New York  10019
     on behalf of the Plaintiffs
5
     Sanford Heisler Sharp, LLP
6    By Sean R. Ouellette, Esquire
     700 Pennsylvania Avenue SE
7    Suite 300
     Washington, D.C.  20003
8    on behalf of the Plaintiffs

9    Todd & Weld
     By Victoria L. Steinberg, Esquire
10   By Rebecca M. O'Brien, Esquire
     One Federal Street
11   27th Floor
     Boston, Massachusetts  02110
12   On behalf of the Defendants

13   Foley Hoag LLP
     By Madeleine K. Rodriguez, Esquire
14   Martin F. Murphy, Esquire
     155 Seaport Boulevard
15   Seaport World Trade Center West
     Boston, Massachusetts  02210
16   On behalf of the Defendants

17

18

19             Proceedings recorded by sound recording
              and produced by computer-aided stenography

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S

2              (Recording begins 02:35:23 p.m.)

3              THE CLERK:  The United States District Court for the

4     District of Massachusetts is now in session on September 2nd,

5     the year 2022, in the matter of Czerwienski versus President

6     and Fellows of Harvard College, et al., Civil Action

7     No. 2022-10202.

8              Could counsel please identify themselves for the

9     record.

10             MS. GUENTERT:  Good afternoon, your Honor.  Carolin

11    Guentert from the law firm Sanford Heisler Sharp for the

12    plaintiffs, and I'm with my colleague Sean Ouellette.

13             THE COURT:  Thank you.

14             MS. STEINBERG:  Good afternoon, your Honor.  Victoria

15    Steinberg for Harvard, et al.

16             MS. RODRIGUEZ:  Good afternoon, your Honor.  Madeleine

17    Rodriguez for Harvard.

18             MS. O'BRIEN:  Good afternoon, your Honor.  Rebecca

19    O'Brien also for Harvard.

20             MR. MURPHY:  Good afternoon, your Honor.  Marty Murphy

21    also for Harvard.

22             THE COURT:  Okay.  Welcome, everybody.

23             Not that this is standing in the way of a long

24    vacation, but -- no.  Thank you, and I do actually apologize

25    for the scheduling, but this seemed to be the only time that
```

1    everybody could do it.  So let's just go forward.

2            I think it makes sense to start with the Defendants'

3    motion; and again, just identify yourself for the record.

4            MS. STEINBERG:  Thank you, your Honor.  Victoria

5    Steinberg for Harvard.

6            Your Honor, there are several -- there are two motions

7    at issue, but I'll start with defendants' motion, and my

8    colleague can speak to the opposition to plaintiffs' motion.

9            THE COURT:  Okay.

10           MS. STEINBERG:  Defendants' motion concerns

11   Exhibits A, B, and C to the motion to dismiss plaintiffs'

12   amended complaint.

13           Exhibits A, B, and C are the final reports into the

14   investigations of the Office of Dispute Resolution, ODR, at

15   Harvard into the complaints that plaintiffs brought.

16           These are full, long, hundred-plus page, I believe,

17   reports, which concern basically every step taken in the

18   investigation into these complaints.  They include -- well, I

19   should say, first, they're referenced throughout the amended

20   complaint.  And I don't believe there's any dispute here that

21   your Honor should and can take these reports into account as

22   you are deciding the motion to dismiss.

23           THE COURT:  Well, okay.  Let me cut to the chase.

24           MS. STEINBERG:  Sure.

25           THE COURT:  I don't understand why these are attached

1    to your memo.  I don't understand why they're necessary for the

2    motion to dismiss at all.  I've read the motion to dismiss a

3    number of times.  You've raised legal issues, you know,

4    I -- the outcome of which I have no idea of.  But it seemed to

5    me that the only reason that these reports were attached were

6    for sort of the background section; and even then, there's

7    very -- very little citation to it.

8           So I -- I want to make it clear, and you'll hear it on

9    the other motion, this is -- motion practice is not the place

10   to just exchange discovery.  All right.

11          So I guess I'd like you to address that, because I

12   don't see at all what's in these reports, why I need to

13   consider them on the motion to dismiss.

14          MS. STEINBERG:  Thank you, your Honor.

15          So certainly we are not intending in any way to use

16   motion practice to exchange discovery.  We will have, if this

17   case moves forward, full discovery in this matter.

18          The ODR reports are submitted as -- in support of our

19   motion to dismiss, because the gravamen of the -- of the

20   complaint here is that Harvard exhibited deliberate

21   indifference, and there is no way to -- to -- there's no better

22   way to see what Harvard did here even as the --

23          THE COURT:  When you file a motion to dismiss -- the

24   crux of their complaint is that your whole investigatory

25   process was skewed, was that the report was skewed, was -- I

1    have no idea on the merits, but what they are challenging is

2    the whole process.  That's a factual dispute.  If that's what

3    your motion to dismiss is brought based on, then I can tell you

4    right now, it's denied.

5         MS. STEINBERG:  I -- I understand that, but I would

6    respectfully, your Honor, I actually think that the gravamen is

7    deliberate indifference.  In other words, I don't believe that

8    they are taking issue with every part of the process.  I think

9    they, in fact, their -- their complaint recites many aspects of

10   the process.  They took full advantage of our process.

11        What it says is that somehow even when you look at

12   that whole process, Harvard was deliberately indifferent in

13   violation of Title IX.  And it is -- it is -- it can -- it

14   simply cannot be and it's actually been found in this

15   jurisdiction not to be deliberately indifferent to have the

16   kind of process that we have.

17        I do want to say, your Honor, I actually think you can

18   find for Harvard on the motion to dismiss without looking at

19   these reports.  I believe you can and should look at them,

20   because they are referenced at least a half dozen times in the

21   amended complaint.  They are part and parcel of what the

22   plaintiffs have set before you.

23        But even according to their complaint, just their

24   complaint, there's more process that they were given than could

25   possibly be deliberate indifference under Title IX.

1          So I will say, I don't think that you absolutely need

2     to.  I think you can, I think you should, and I think when you

3     do, you just -- the -- even the pieces that they refer to of

4     the ODR final reports show Harvard was not deliberately

5     indifferent.

6          And I know we're not arguing the motion to dismiss,

7     but I want you to know why I submit it.

8          THE COURT:  Well, I think it's important for me to

9     understand, because I look at your motion to dismiss, I see you

10    have a statute of limitations claim --

11         MS. STEINBERG:  We do.

12         THE COURT:  -- which is your prime -- your lead

13    argument on this, right?

14         And then you have the conduct does -- does not rise to

15    the level, but you don't go into what the report did, right?

16         I mean, your argument is based on the complaint as it

17    needs to be on the motion to dismiss.  So for the life of me, I

18    can't understand why you attached these and then say and then

19    keep them under seal.

20         MS. STEINBERG:  Well, your Honor, frankly, the -- the

21    complaint refers over and over again to the -- to this report.

22    It, in our view, is an incomplete picture of what the complaint

23    is saying to not look at the document that they're relying on

24    over and over and over and over.

25         We did -- you're right, we didn't rely on the

1    substance of all the parts of the report, because we can't and

2    shouldn't.  It's a motion to dismiss.  But to the extent that

3    plaintiffs have referenced this throughout their complaint, it

4    is -- it is proper, and the other two courts that have accepted

5    these or the other two -- in the other two cases where the

6    Court accepted these and accepted them under seal, they were

7    considered for exactly this purpose.  They were considered as

8    part of the response to an argument that Harvard was

9    deliberately indifferent.

10         THE COURT:  Okay.  They were under seal by agreement

11   in the other two cases, as I'm reading it.

12         MS. STEINBERG:  That is true, although, your Honor,

13   the judge in each of those cases, received a brief.  It was

14   assented to, but received a brief delineating the reasons, did

15   an analysis, and granted it.  And I actually don't think the

16   analysis is different, whether it is assented to or not.  The

17   reason -- there has to be good reason.  The Court has to have

18   good reason to overcome the presumption of public access.

19   Presumably the judge in each of those two cases did that

20   analysis as to exactly these types of documents.

21         THE COURT:  My guess is that if they were assented to

22   there was less of an analysis than what needed to be done in a

23   disputed situation.

24         MS. STEINBERG:  Your Honor, with -- again, with all

25   due respect --

1        THE COURT:  Yeah.

2        MS. STEINBERG:  -- we had a hearing in front of

3   Judge Talwani.  She, frankly, did not care that we all agreed.

4   As many of these cases make clear, it is not enough for the

5   parties to agree that something ought to be sealed.  It is

6   simply not enough.  The judge has to find a basis for good

7   reason in order to allow sealing, and both judges did this.

8   Judge Talwani did it after a hearing on the matter.  So this

9   was --

10       THE COURT:  Okay.

11       MS. STEINBERG:  -- not an unthinking decision.  It was

12  at least one case.  Frankly, I can't remember it.  It's the

13  first case, but at least as to one case it was discussed

14  and -- and it was absolutely a thoughtful decision, as I think

15  it has to be, and we don't take lightly the motion to seal.

16       THE COURT:  Okay.  Thank you.

17       MS. STEINBERG:  Thank you.

18       THE COURT:  Opposing it?

19       MS. GUENTERT:  Thank you, your Honor.

20       First, these documents are central to the case.

21  Defendant has placed these records front and center of the case

22  arguing as you heard just now that these documents show that

23  its investigation was thorough and that, therefore, the

24  Title IX claims that we've asserted in our complaint should be

25  dismissed.

1         In the instances like that, the presumption of public

2    access that exists in the First Circuit is especially strong;

3    and the First Circuit has been extremely clear on this, when

4    there are confidentiality interests at stake, as we agree there

5    are in these reports, then the documents should be redacted.

6    There should be limited redactions.  Wholesale sealing is

7    extremely disfavored in this circuit.

8         And the First Circuit also requires compelling and

9    fact-based and specific reasons why a document needs to be

10   sealed, and Harvard's arguments just fall short of that

11   standard.  Their vague assertions of hypothetical chill to

12   future students just aren't sufficient under the First Circuit

13   standard.

14        Second, to the extent that there are privacy interests

15   at stake here, and again we don't disagree that there are.

16   Those privacy interests are our clients, not Harvard's, and our

17   clients who have put these documents at issue in the complaint

18   and who went to ODR to lay there what happened to them, they

19   want these documents to be public, because they believe they

20   were subject to an unfair process at Harvard, and that this

21   should now be a transparent process in the court.

22        THE COURT:  Well, but Harvard does say we have

23   witnesses who have an interest in their privacy as well.

24        FEMALE VOICE:  We agree.

25        MS. GUENTERT:  We agree, your Honor, and there we've

1    proposed redacting all of the witnesses' names.

2            If you take a look at Exhibits A, B, and C, they're

3    actually designed to protect third-party privacy.  They use

4    pseudonyms throughout, and there's a key at the beginning of

5    the document that links up each witness's name with the

6    pseudonym.  It would be very easy to redact that key in

7    addition to any demographic information, information about

8    students that might be particularly sensitive, or any other

9    information that could identify a student; and, in fact, we've

10   repeatedly proposed to Harvard to make these redactions, and

11   we've proposed them to the Court, and Harvard has refused to

12   engage with that process, and that doesn't merit sealing.  It's

13   entirely feasible to redact these reports, and that is what the

14   First Circuit case law demands under *Kravitz*.

15           And fourth --

16           THE COURT:  Can you for my -- just to make sure I

17   understand though --

18           MS. GUENTERT:  Uh-huh.

19           THE COURT:  -- the key was provided to the

20   participants in the ODR process?

21           MS. GUENTERT:  No, your Honor, it was redacted when my

22   clients received it.

23           THE COURT:  Okay.

24           MS. GUENTERT:  So my clients have not seen the

25   unredacted key until we received these documents in the

1   litigation, and that just goes to show, when everybody who

2   participated in the ODR process received the reports when

3   they -- when they were first distributed, they were redacted,

4   so it's possible to redact them.

5           THE COURT:  And the exchange of the other information,

6   which we'll get to your motion, but that was not redacted?

7   Like you -- your clients received the professor's statements

8   unredacted?

9           MS. GUENTERT:  Witness names are redacted throughout

10  those documents.

11          THE COURT:  All right.

12          MS. GUENTERT:  And we have no objection to that; and,

13  in fact, your Honor, in the complaint you may have noticed that

14  we also used pseudonyms.  Whenever we discussed anybody who

15  isn't our client and who isn't a Harvard employee or directly

16  involved with the matter, because we have no interest in

17  revealing third-party names.

18          We also want to protect students, and we think it's

19  feasible to redact those names and redact information

20  surrounding their names that could identify them to the larger

21  community.

22          And, finally, your Honor, we believe that Harvard

23  shouldn't get to unilaterally decide what the public knows

24  about this case.  Harvard attached documents to its motion for

25  summary judgment that were part of the ODR process, so it's

1       clearly comfortable filing some documents on the public record.

2       Just not these documents.  That's an inconsistent approach

3       that's unfair to plaintiffs and would make it difficult for us

4       to litigate in the future if Harvard gets a say in which of our

5       documents we can use, which are sealed, and which aren't

6       sealed.

7               THE COURT:  Well, I think that's a bigger question

8       that we'll take it step by step throughout the litigation

9       process, right.  Obviously, some things are sealed for certain

10      purposes and not for others.

11              MS. GUENTERT:  Of course.  Thank you.

12              THE COURT:  All right.

13              MS. STEINBERG:  Your Honor, if I may just respond to

14      just a couple of things --

15              THE COURT:  Yeah.

16              MS. STEINBERG:  -- very, very briefly.

17              First of all, I don't want there to be any

18      misunderstanding that the plaintiffs somehow did not know in

19      the ODR process who those witnesses were.  They were told who

20      those witnesses were, just not in the document itself in the

21      event that the document, you know, was shared in some way.

22              So I just -- it has been made to seem that they were

23      redacted and those witnesses were -- they were told by phone.

24      They were told in meetings, they were told who those witnesses

25      were.  So I just want the record to be clear.

1           THE COURT:  But there was a copy that was provided --

2           MS. STEINBERG:  Correct.

3           THE COURT:  -- to the complainants, who -- which was

4      redacted?

5           MS. STEINBERG:  Correct.  And that was within the

6      process which is held to be confidential, not only by Harvard's

7      policies, but by Title IX; and on this point I just -- I meant

8      to say earlier that the *Doe versus MIT* case, which just came

9      out is very instructive on this point and says among other

10     things that in federal -- I'm quoting -- in federal suits that

11     amount to collateral attacks on Title IX proceedings, a full

12     appreciation of the public's interest and transparency must

13     factor in the choice by Congress and the department to inhibit

14     the school's disclosure of private information.  And so

15     the -- in other words, the litigation should reflect the fact

16     that this is a confidential process.

17          The plaintiffs were instructed to keep it

18     confidential.  The -- the respondent was instructed to keep it

19     confidential.  The Court in Doe also says destroying that

20     confidentiality may throw a wrench into other Title IX

21     proceedings because people may not come forward.  And so it

22     is -- that is exactly the issue that we have to the extent,

23     your Honor, that I would say, if your Honor is inclined to

24     unseal these documents, a few things would need to happen.

25          First of all, Harvard actually can't disclose this

1    information to the public under Title IX without going through

2    a FERPA analysis, providing certain people with advanced

3    notice, who have a FERPA, you know -- sorry.

4            FEMALE VOICE:  Block.

5            MS. STEINBERG:  Block, thank you.  A FERPA block, and

6    there would have to be steps taken.  We would say, your Honor,

7    rather than unseal those documents, we would prefer that you

8    consider the motion to dismiss without those documents, if need

9    be.

10           That's how strongly we feel about maintaining that --

11           THE COURT:  Well, and actually that's my suggestion to

12   you.  I will give you the option of withdrawing these

13   exhibits --

14           MS. STEINBERG:  Uh-huh.

15           THE COURT:  -- all right, because I don't think it

16   changes the pleadings at all.  I am inclined, just so you know

17   for the future, that some redaction, you know, that these are

18   confidential enough within -- within them.  There are enough

19   steps taken within them to hide the identity of the people.

20   The witnesses that I think that there are steps that can be

21   taken to further redact it.

22           MS. STEINBERG:  So, your Honor, I suppose --

23           THE COURT:  It's going to be messy.

24           MS. STEINBERG:  Right.

25           THE COURT:  It's going to be messy.  So since I -- I

1    strongly don't think they're necessary for your motion,

2    I -- but I'm not going to dictate that, but I will give you the

3    option of withdrawing that.

4           MS. STEINBERG:  Thank you, your Honor, and we will --

5    we will speak to our client about that.  I -- I can't, as I

6    stand here right now, honestly we have -- as we have for all

7    documents, I think we have shown we are willing to look at

8    redacting as -- as a means to providing as much in the public

9    eye as we possibly can.

10          In these documents, there is so much in there, you

11   know, how far someone is into their degree, for example,

12   whether someone is Facebook friends with somebody else.

13   There's so much that people come forward and share with Harvard

14   that is private, intimate, confidential, and they do that so

15   that Harvard can investigate these very important issues, and

16   there are -- there really is no way, in -- in my view, to

17   redact this so that it is both readable in any form and

18   protects all third-party identification.

19          So, in any event, the last thing I wanted to say is

20   that, as you'll probably hear from -- from my colleague that

21   plaintiffs have said that they are certainly wanting to protect

22   third-party information.  In the -- in the documents that they

23   have proposed, in the redactions that they have proposed, they

24   only redact certain names and not others, and it seems to

25   depend, frankly, on which third parties will be helpful to them

1    and which will not, who they are willing to out and who they

2    are not.

3          So we are not on the same page at all about

4    maintaining third-party privacy, and that is -- it is not just

5    about plaintiffs' privacy interests.  Harvard has an obligation

6    to all of the third parties at issue here.

7          THE COURT:  All right.

8          MS. STEINBERG:  Thank you.

9          THE COURT:  So what makes the most sense?  Do you want

10   some time to decide whether or not to withdraw that?

11         MS. GUENTERT:  Yes, your Honor, I think we can make

12   that decision relatively quickly.

13         THE COURT:  Okay.  All right.  But I'm hearing

14   actually from counsel that if there were redactions it would go

15   beyond just the names, and that there would be -- I don't think

16   there's a dispute.  You may have a dispute as to the specifics,

17   but conceptually there's no dispute that it should be

18   identifying information.

19         MS. GUENTERT:  Correct, your Honor.

20         THE COURT:  Okay.  All right.  So I guess I get to

21   take it under advisement, right, and tell you to let me know.

22         Do you think you'd know today?

23         MS. STEINBERG:  The only hesitation I have, your

24   Honor, is that because it's Friday before a long weekend, I

25   don't know for sure that I can reach decision-makers.  If we

1    could have until the end of the day Tuesday.

2             THE COURT:  How about until Tuesday?

3             MS. STEINBERG:  Thank you very much.

4             THE COURT:  Okay.  Let me know by Tuesday at some

5    point.

6             Okay.  So then I have the plaintiffs' motion for which

7    I have the same questions, as I don't really understand why

8    these are attached either.

9             MS. GUENTERT:  May I, your Honor?

10            THE COURT:  Yeah.

11            MS. GUENTERT:  The reason we attached them is because

12   we were responding to Harvard's motion for summary judgment,

13   which as you'll see in our opposition that we filed last week,

14   we believe is inappropriate and premature at this stage, but

15   because Harvard filed that motion and appended exhibits to it

16   and affidavits, we had to do the same in order to oppose the

17   motion for summary judgment.

18            THE COURT:  All right.  But I don't understand these

19   specific documents.

20            MS. GUENTERT:  Okay.

21            THE COURT:  So I guess I -- my reaction, and you can

22   try to argue me out of it, that's what we're here for, and I

23   schlepped you up here for a purpose, but my reaction is that

24   these specifics documents are not nec- -- when I read the

25   affidavit, and I read the, you know, the pleadings that I have

1    to date, these specific documents are not critical in any way

2    to the issues that's raised by the -- by the summary judgment

3    motion so --

4          MS. GUENTERT:  Understood, your Honor.  I'll address

5    that briefly.  Thank you for giving me that opportunity.

6          Exhibits 4 and 10, as I'm sure you've seen, are

7    Professor Comaroff's responses to Ms. Kilburn's complaint and

8    his response to the ODR's draft report.

9          The reason that we attached them, and the reason that

10   they're referenced in the opposition and Ms. Kilburn's

11   affidavit is because they show that she did not willingly bring

12   her therapist into the ODR process.  The reason that she

13   brought her therapist in and offered ODR to speak with her is

14   because Professor Comaroff put her mental stability and

15   credibility at issue when he first responded to the complaint

16   that she had filed against him.  So that's one of those two

17   exhibits.

18         And then the other one was attached because that's his

19   response to the ODR's draft report, and in there he -- there's

20   a -- there are several paragraphs where he goes on at length

21   about the medical records themselves and uses them to show why

22   she shouldn't be believed and why a medical diagnosis that she

23   had received actually had nothing to do with him and

24   that -- that document -- she didn't realize that he had

25   received the medical records until far later on in the process.

1    That's why they were attached.

2         THE COURT:  Okay.  And I guess my problem, as always,

3    in all of these matters, and it's actually a much bigger issue

4    than just this case.  There are assertions of fact that I take

5    in the affidavit that I don't need the supporting data unless

6    it's disputed, right?

7         So we have a whole process of sealing documents and

8    having things sealed on the docket, which just really

9    complicates things that are really not necessary to support the

10   assertions of fact.  She has made these assertions.

11   She's -- they're not at issue in connection with the summary

12   judgment motion.  So I don't see why we need them.

13        MS. GUENTERT:  Understood, your Honor.

14        THE COURT:  Okay.

15        MS. GUENTERT:  I -- I just want to reiterate what I

16   said before which is --

17        THE COURT:  Okay.

18        MS. GUENTERT:  -- the reason --

19        THE COURT:  So let me give you the same option.

20        MS. GUENTERT:  Yeah, the reason that we attached these

21   is because we were responding to a prediscovery motion for

22   summary judgment and doing our best to respond to it with the

23   very limited evidence that we have, and we do hope that we get

24   to discovery where we can actually have some of these issues

25   out.

1          THE COURT:  All right.  But the issue that's raised is

2    raised, I think, has to do with her consent or not --

3          MS. GUENTERT:  Exactly.

4          THE COURT:  -- right?  So she has filed a detailed

5    affidavit --

6          MS. GUENTERT:  Yeah.

7          THE COURT:  -- on that and on the information that she

8    had, and it seems to me that that's not -- I mean, it may be

9    challenged as to whether it's true or not, but the underlying

10   exchange of information isn't in dispute at this time.  So I'm

11   going to give you the same options as well --

12         MS. GUENTERT:  Thank you, your Honor.

13         THE COURT:  -- of withdrawing these exhibits.

14         MS. GUENTERT:  Thank you.

15         THE COURT:  Okay.

16         MS. GUENTERT:  We'll take it under advisement with our

17   client.

18         THE COURT:  Thank you.

19         I guess I should hear the response to the opposition.

20   Whose --

21         MS. RODRIGUEZ:  Yes, your Honor.

22         THE COURT:  Don't talk me out of this now.

23         MS. RODRIGUEZ:  I -- I hope not to, your Honor.  I

24   would just reiterate some of the points that Attorney Steinberg

25   raised earlier in terms of why Harvard would seek to seal these

1  motions, specifically if your Honor were to -- if counsel

2  decides not to, you know, strike them from their -- from their

3  opposition from the declaration of Ms. Kilburn, both the fact

4  that the ODR process is something that was represented to her

5  as needing to be maintained as confidential, including any

6  documents provided during that process; and these documents

7  were provided to her by Harvard as part of that process with

8  the expectation of confidentiality.

9  But, your Honor, Harvard agrees with you that these

10  documents are not necessary for the consideration of the

11  summary judgment motion.  This was something that was raised

12  with counsel prior to their filing of other opposition and is

13  why also Harvard provided the alternative of perhaps there

14  might be only certain select pages that might be relevant if,

15  you know, it needed to be proven, you know, certain -- certain

16  facts.

17  But, your Honor, I would say Harvard agrees with you

18  that the facts for which, you know, these documents have been

19  put into the record are not contested.  You know, the fact that

20  Ms. Kilburn, for example, decided to bring up her therapist and

21  the potential existence of therapy records because of a comment

22  that, you know, Professor Comaroff had made in his response,

23  the fact that he then, you know, included some of the

24  information about those records and his response to the draft

25  report or that this, you know, that we did speak to her

1    therapist and also speak to Ms. Kilburn about those therapy

2    records during the course of the investigation.  These are not

3    facts that are in dispute, and the documents are not necessary

4    in order to prove those facts.

5              MS. GUENTERT:  Your Honor, may I just respond briefly?

6              THE COURT:  Yeah.

7              MS. GUENTERT:  You mentioned earlier that this may

8    become a larger issue for another day, of course, but one thing

9    I do just want to note is that we've been put in a position

10   where that Harvard appended documents to its motion for summary

11   judgment without consulting with us, and now we are unable to

12   put documents that belong to our client into the public record.

13   We've been forced to consider at some point we may need

14   guidance from the Court on the protective order.

15             MS. RODRIGUEZ:  And I would -- I'm sorry, your Honor.

16   I don't mean to interrupt.

17             THE COURT:  You have a very detailed complaint here

18   that put a lot of facts out there in the record, which I'm sure

19   you filed without consulting with Harvard, right?

20             So you have a detailed complaint, all right, that has

21   a lot of information and a lot of personal information that I

22   assume your clients are -- you know, okay with having out

23   there.  I mean that's -- that's okay, but there was, unlike the

24   Doe case, there was no effort here to hide identities, you

25   know, or bring the case in a -- in a pseudonym or anything like

1        that.

2                So that decision has been made, and there's a lot of

3        information out there, and I think we are going to have hard

4        issues as to what gets disclosed.  What I don't want to do is

5        clutter the record with this kind of fight out of context, and

6        that -- and that's really what it is.  I mean, to have

7        these -- both of you have appended big reports with a lot of

8        information, most of which will probably not be at issue

9        somewhere along the line here at a very early stage in the

10       proceedings; and in connection with motions, frankly, that

11       doesn't raise -- if they're raising the veracity of the

12       information in these -- in these documents, then they --

13       they'll be denied, right, because we're too early to have -- to

14       make a decision as to veracity.

15               So I spent a long time on this.  I spent a lot of time

16       looking at the documents.  I spent a lot of time looking at

17       the -- at the pleadings that they were relating to.  I'm not

18       seeing that I need either -- in either case, I don't think I

19       need the defendants' attachments on the motion to dismiss, and

20       I don't see that I need the plaintiff -- these three exhibits.

21       It's the only ones I've looked at, but that these three

22       exhibits in connection with the opposition to the summary

23       judgment.

24               So I'm going to strongly encourage everybody to

25       withdraw them.  All right.  If you don't withdraw them, I will

1   issue an order that will allow for some maybe publication, but

2   with substantial redactions, and I think it's more likely to

3   have -- I mean, I think that if you're trying to read what the

4   Court's thinking, I'm not inclined to allow most of the

5   attachments by the plaintiff.  I -- I just don't think they're

6   issues that are in dispute.

7          And for the -- for Harvard's attachments, frankly, I

8   think that the -- well, I think that the redactions are

9   problematic and hard.  That's based on the way the report was

10  decided to be written, which is not the easiest read.  And

11  while I have some sympathy for that, you know, Harvard made

12  that decision that this was the form that its reports would

13  take.

14         So I'm really going to strongly encourage everybody to

15  withdraw these exhibits and so that we can move on and address

16  the issues that are before me and get this case going.  Okay?

17         Does anybody want to yell at me?

18         No?  Good.  That's a good thing.

19         All right.  Thank you all.

20         COUNSEL IN UNISON:  Thank you, your Honor.

21         THE CLERK:  Court is in recess.

22         (Recording ended at 3:04:50 p.m.)

23

24

25

1                         C E R T I F I C A T E

2

3              I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript is a true and accurate

5    transcription prepared to the best of my skill, knowledge, and

6    ability from the official electronic sound recording of the

7    proceedings before the Honorable Magistrate Judge Judith G.

8    Dein in the above-entitled matter.

9

10

11        /s/ Marianne Kusa-Ryll                        9-26-22

12        Marianne Kusa-Ryll, RDR, CRR                  Date

13        Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25