**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA**<br><br>*Plaintiffs,*<br><br>v.<br><br>**HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE**<br><br>*Defendant.* | Case No. 1:22-cv-10202-JGD<br><br>**LEAVE TO FILE GRANTED OCTOBER 24, 2022** |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs state timely claims under Title IX and state law. "This is a case about Harvard's decade-long failure to protect students from sexual abuse and career-ending retaliation," begins the Amended Complaint in this case. Am. Compl. ¶ 1. Harvard's Reply offers no good reason why its Motion to Dismiss failed to address Plaintiffs' first theory under Title IX—that "Harvard's deliberate indifference allowed" Comaroff to kiss, grope, and verbally harass Kilburn and "allowed [him] to threaten Ms. Mandava and Ms. Czerwienski." *Id.* ¶¶ 2, 11-12. It also cites no case in the First Circuit (or decision by any other circuit) to suggest that this claim expired before Plaintiffs even knew it existed. And Harvard cites **no** case **anywhere** to hold that a school may knowingly continue to subject students to a hostile educational environment so long as the victim does not sue within three years of the first act of harassment. Harvard's Reply arguments fail.

***First***, the Complaint spells out Plaintiffs' claim of pre-harassment and pre-retaliation deliberate indifference in clear terms. *See id.* ¶ 236.[1] It describes specific acts of sexual harassment by Comaroff, details complaints about those acts to a Title IX Officer **designated by Harvard** to "respond[] to sexual harassment," and alleges that Harvard still "chose not to investigate," thereby allowing Comaroff to target Plaintiffs. *Id.* ¶¶ 8-12, 49-51, 62-64. Harvard declined to address these allegations in its Motion to Dismiss and cannot do so now. These Title IX claims should proceed.

***Second***, the Court should also reject Harvard's contention that Plaintiffs' claims expired in 2017—before they could have reasonably known those claims existed. The Court may not dismiss any claim based on the statute of limitations unless the *defendant* meets *its* burden to show there is "**no doubt**" the claim is time-barred. *Blackstone Realty LLC v. F.D.I.C.,* 244 F.3d 193, 197 (1st Cir. 2001) (emphasis added). This rule is "particularly appropriate" when "determining the onset

---

[1] "Harvard knew that Professor Comaroff had sexually harassed … other students before he retaliated against Ms. Mandava and Ms. Czerwienski and before he sexually harassed and retaliated against Ms. Kilburn, but it failed to take adequate measures to prevent harm to Plaintiffs." Am. Compl. ¶¶ 236, 249 (same).

1

of the statute of limitations … requires an analysis of a complete factual record to determine when a plaintiff discovered, or should have discovered, when he or she was harmed and the cause of the harm." *See MacKenzie v. Pfizer, Inc.*, 20-11550, 2021 WL 7451166, at *3 (D. Mass. Jan. 11, 2021) (Dein, J.). Here, all three Plaintiffs lacked the facts needed to ascertain that Harvard (as opposed to Comaroff) harmed them until 2020. Plfs Opp. 23-26. Indeed, Plaintiffs did not rush to court in 2017, but instead pursued their complaints through Harvard's internal process, because they reasonably trusted the school would *not* ignore reports of harassment and retaliation that its written policies assured them it would address. *Id.* 24-26. Their claims are timely under the discovery rule.

**Finally**, the Court should reject Harvard's suggestion that Title IX provides no remedy for deliberate indifference that continues into the limitations period. The Complaint details deliberate inaction after **repeated** complaints that occurred over "years"; not on a "particular day." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002). This is the essence of a continuing violation. *Id.*; Plfs Opp. 26-31. Yet, even if Plaintiffs were required to allege unlawful "acts" in the limitations period, the Complaint alleges several: (1) Harvard ignored Mandava and Kilburn's complaints in 2019; (2) Harvard ignored Plaintiffs' complaints that Comaroff intimidated witnesses and spoliated evidence in 2020; (3) Harvard ignored Comaroff's harassment against others (including Kilburn) in 2019 and 2020; (4) Harvard's 2020-22 investigation was clearly unreasonable, and (5) Harvard's deficient response allowed the Comaroffs and others to downplay Comaroff's abuse and disparage Plaintiffs to potential mentors and the public. Plfs Opp. 13-19, 29-31. Harvard's "failure to take adequate steps in response to [Plaintiffs' 2019] complaint" is itself an anchoring "act of discrimination," as are Comaroff's unremedied "acts of sexual harassment" and retaliation against Plaintiffs and "others that were known to the [P]laintiff[s]." *Id.* 30-31 (citing cases in the First Circuit and Massachusetts courts). And having timely invoked

2

Harvard's process, Plaintiffs "were entitled … [and] should be encouraged to wait a reasonable time for [Harvard] to respond by investigating and remedying the situation before" rushing to federal court. *See Cook v. Entergy Nuclear Ops., Inc.*, 948 F. Supp. 2d 40, 44 (D. Mass. 2013).

In short, Plaintiffs followed Harvard's written policies, and they expected Harvard to do the same. The Court should reject Harvard's request to punish them for it.

I. **Plaintiffs State a Claim Under Title IX**

***First, Plaintiffs state a pre-harassment/retaliation claim***. Harvard agrees that a complaint states a claim under Title IX if it alleges "an official of the school … who at a minimum has authority to institute corrective measures on the [school's] behalf has actual notice of, and is deliberately indifferent to, [a] teacher's misconduct." Reply 7. The Complaint alleges *exactly* that.

It asserts that Comaroff "forcibly kissed [HS 2], groped her buttocks, and … sent her early-morning texts demanding to know with whom she slept." Am. Compl. ¶ 10. And it alleges that HS 2 herself reported this behavior to Dr. Seth Avakian in the Title IX Office. *Id.* ¶¶ 10, 61.[2] This occurred *after* Avakian had already received multiple specific warnings from a Harvard employee about Comaroff's inappropriate relationships with students. *Id.* ¶ 43. Harvard does not dispute that Avakian was an "appropriate official" with "authority to take corrective measures." Plfs Opp. 11. "[N]early all … courts of appeals have found actual notice established where the plaintiff or

---

[2] Harvard's suggestion that Plaintiffs "do not even specify what was purportedly reported" (Reply 3) mischaracterizes the Complaint. The Complaint *specifically* describes the kissing, groping, and sexual comments HS 2 experienced and alleges that she reported that "sexual harassment" to Avakian. Am. Compl. ¶¶ 10, 49-51, 61. Read in a light most favorable to Plaintiffs (as required), these allegations reasonably allege that HS 2 reported the sexual harassment that the Complaint describes. Indeed, Avakian later *confirmed* that HS 2 reported "similar issue[s]" to the kissing, groping, and comments that Kilburn reported in 2019. *Id.* ¶¶ 110-11. Harvard's cases are inapposite. They hold only that "notice of inappropriate conduct *that did not constitute harassment or discrimination* did not give rise to actual notice of sex discrimination." *Doe v. Town of Stoughton*, 17-12337, 2018 WL 1951180, at *3 (D. Mass. Apr. 25, 2018) (emphasis added); *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 166 (D. Mass. 2005) (principal knew only that teacher "used 'inappropriate incentives' [and] was unable to maintain a 'professional distance'"); *Doe v. Bradshaw*, 203 F. Supp. 3d 168, 180 (D. Mass. 2016) ("school officials were only informed of unsubstantiated rumors from students [and a] possible vague report of overly familiar behavior"); *Davis* v. *DeKalb*, 233 F.3d 1367, 1373 (11th Cir. 2000) (complaint of "slight touching" during football game not enough where complainant "did not suggest it was inappropriate").

3

another interested person reported the alleged sexual harassment to a school official with authority to address the alleged harassment and to institute corrective measures." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 267 (4th Cir. 2021); 34 C.F.R. § 106.30 (defining "actual knowledge" to include "a report of sexual harassment" to an appropriate person).³ So it is here.

The Complaint also alleges that Harvard was deliberately indifferent to these prior reports. Plaintiffs *explicitly* allege that Harvard "ignore[d] Harvard Student 2's complaint" to Avakian. Am. Compl. p. 17 (heading b). Avakian "did not investigate" her report, did not "put in place any appropriate supportive measures to protect the educational and work environment," did not "warn Professor Comaroff to stop his harassing behavior," and did not "take action to stop [his] pattern of misconduct." *Id.* ¶¶ 10, 63, 64, 79, 147. "Comaroff confirmed this himself" when "he announced through counsel that Harvard had *never* notified him of any complaint aside from the Plaintiffs'." *Id.* ¶ 143. Indeed, the Complaint alleges that Harvard "failed to act" and "did not investigate Professor Comaroff's misconduct" for more than **three years** after it received HS 2's report, until May 2020. *Id.* ¶¶ 117-18. These concrete facts sufficiently allege deliberate indifference. *See, e.g.*, Reply 2 (agreeing that school is liable if it had "actual knowledge of sexual harassment and … failed to act" on it); *Doe v. Fournier*, 851 F. Supp. 2d 207, 222 (D. Mass. 2012) (plausible claim because school "failed to conduct any investigation" based on prior complaints against teacher, ***even though the school eventually investigated and terminated him*** after he harassed the plaintiff); *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 63-65 (D. Me. 1999) (same).

**_Second, Plaintiffs plausibly allege that their injuries arose from a custom and practice_**

---

³ *See also Bloomer v. Becker Coll.*, No. 09-11342, 2010 WL 3221969, at *5 (D. Mass. Aug. 13, 2010) (agreeing with the "weight of authority" that a school has "actual notice" when "it was aware of complaints by other students regarding the same harassing employee"). Other circuits have rejected Harvard's suggestion that "actual notice" requires a school to have "conclusive proof" of harassment (Reply 3 n.3) as "nonsensical," as it would absurdly "require a school to investigate a complaint alleging sexual harassment only if it has *already* determined that such harassment did in fact occur." *Fairfax Cnty.*, 1 F.4th at 268.

4

***of deliberate indifference***. Every circuit court to have addressed the issue agrees that a plaintiff may state a Title IX claim based on a de facto "policy" (i.e., a custom or practice) of deliberate indifference to reports of sexual harassment, and this district has held the same.[4] *Contra* Reply 4. The Complaint enumerates: (1) repeated, specific reports against three professors in the Department and Harvard's indifferent response (Am. Compl. ¶¶ 10, 13, 126, 128-33, 136-38, 147) ***and*** (2) specific statements by high-ranking administrators and a Title IX officer that (a) Harvard would not investigate unless a student initiated a formal report to ODR (*id.* ¶ 126) and (b) that Harvard would not protect students from professional retaliation (*id.* ¶¶ 126, 131). Plaintiffs clearly allege that these practices subjected them to harassment and retaliation: Consistent with its custom and practice, Harvard did not investigate HS 2's report to Avakian and did not take steps to prevent Comaroff's retaliation against Mandava and Czerwienski or harassment of Kilburn. *Id.* ¶¶ 63, 64, 67, 111, 115-117, 158-63, 188. That Harvard launched an investigation *once,* in 2020—"only when spurred … by the media"—does not make it *implausible* that Harvard routinely failed to do so when the press was not looking. Am. Compl. ¶ 18.

Harvard's failure to act on prior complaints, arising from its custom and practice of deliberate indifference, exposed Mandava and Czerwienski to retaliation in 2017 and subjected all three Plaintiffs to an unequal educational environment from 2017 to the present. *See* Plfs' Opp. 15-19.[5] Plaintiffs therefore state a viable pre-harassment claim.

***Third, Plaintiffs state a plausible post-report claim***. Harvard's recycled refrain that Title

---

[4] *Doe v. Nashville & Davidson Cnty.*, 35 F.4th 459, 465 (6th Cir. 2022); *Karasek v. Regents of University of California*, 956 F.3d 1093 (9th Cir. 2020); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007); *Booker v. City of Bos.*, No. 97-12534, 2000 WL 1868180, at *2 (D. Mass. Dec. 12, 2000).

[5] The First Circuit's statement in *Doe v. Pawtucket School Dep't* that sexual harassment by a teacher need only have sufficient "severity **or** pervasiveness," 969 F.3d 1, 11 (1st Cir. 2020), is not "new," Reply 6 n.10; it has been the law of this circuit for at least 33 years. *See also Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 898 (1st Cir. 1989) (***a teacher***'s conduct creates a hostile environment actionable under Title IX when is sufficiently "severe **or** pervasive" to "alter[ ] [the plaintiff's] working or educational environment." (emphasis added)).

5

IX does not "guarantee … the outcome the plaintiff desires" is a strawman that fails to grapple with Plaintiffs' factual allegations. Plaintiffs allege that Harvard knew that Comaroff harassed HS 2 and threatened Mandava and Czerwienski for ***two years*** (since 2017) and delayed action ***yet another year*** after Kilburn and Mandava complained in 2019. Plaintiffs plausibly allege it was the prospect of bad press, not concern for its students, that spurred Harvard to act. *See Doe 1 v. Howard Univ.*, 396 F. Supp. 3d 126, 139 (D.D.C. 2019) (plaintiff alleged plausible Title IX claim because school failed to investigate for five months and did so only in response to Twitter activity). In the interim, Harvard left Comaroff "unrestricted in his teaching and supervising of students" while Plaintiffs had to study and work in the same department, left Plaintiffs to alter their educational programs to avoid further retaliation, and subjected their classmates to further harassment. Am. Compl. ¶ 117. [6] These allegations alone state a post-reporting claim. *See* Plfs Opp. 18-19.

Still, the Complaint also raises a plausible inference that Harvard's "investigation [was] carried out so inartfully as to render it clearly unreasonable." *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 210 (D.N.H. 2009) (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 175 (1st Cir. 2007)). That Harvard finally investigated after years of inaction does not establish that it responded adequately. *See id.* In *Brodeur*, for example, the court held that a jury could find that the school was deliberately indifferent, even though the school's investigation was otherwise "carried out diligently" and yielded a severe sanction. *Id.* The court cited as evidence of deliberate indifference the school's failure to consider the perpetrator's prior history of harassment against

---

[6] Harvard's delay, therefore, clearly harmed Plaintiffs. *See Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (6th Cir. 2022) (student stated post-report claim when plaintiff "took reasonable steps, including switching majors and enrolling primarily in online classes, to avoid encountering her harasser"); *JD1 v. Canisius Coll.*, No. 21-521, 2022 WL 2308902, at *13 (W.D.N.Y. June 27, 2022) (delay "prejudiced" plaintiffs even though they did not suffer further harassment); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 613 (W.D. Tex. 2017) ("[T]he discriminatory harm can include the harm faced by student-victims who are rendered vulnerable to future harassment … and endure an educational environment that constantly exposes them to a potential encounter with their harasser or assailant").

other students and allowing him to continue teaching without "taking any prophylactic measures, such as training or monitoring," to ensure that he did not reoffend. *Id.* at 210. Similarly, in *Leader*, Judge Casper held that even if Harvard's investigation was otherwise sufficient, the plaintiff had "sufficiently alleged that Harvard's subsequent actions failed to stop … post-reporting harassment" and therefore stated a claim. 2017 WL 1064160, at *4 (D. Mass. Mar. 17, 2017).

Here, as in *Brodeur*, Harvard's investigation not only failed to consider Comaroff's history of harassment of other students, but also disregarded overwhelming evidence that he engaged in a pattern of sexual harassment against Kilburn and retaliation against Mandava and Czerwienski. Am. Compl. ¶¶ 172-78. And Harvard allowed Comaroff to continue supervising female students without "any measures" to prevent him or his allies "from engaging in further harassment or retaliation against Plaintiffs or other students." *Id.* ¶¶ 186-87. As in *Leader*, moreover, Harvard entirely failed to respond to reports of further retaliation—that Comaroff intimidated witnesses, including HS 2, and spoliated evidence to thwart the investigation. *Id.* ¶¶ 152-57. "Viewing these allegations in a light most favorable to [Plaintiffs]," Harvard's investigation simply "does not unequivocally render the Title IX claim facially implausible." *Leader*, 2017 WL 1064160, at *4.

II. **Plaintiffs' Claims Under Title IX and Massachusetts Statutes Are Timely**

A. **Under the First Circuit's Discovery Rule, a Plaintiff Must Have Notice of *Both* (1) the Employee's Harassment/Retaliation *and* (2) the Institution's Complicity**

Harvard's Reply provides no reason to doubt the discovery rule applies to Title IX claims. Harvard now argues instead that, under the discovery rule, a claim for deliberate indifference accrues when the plaintiff learns that someone harassed or abused her. Reply 11-12. The First Circuit has squarely rejected this. "Mere knowledge of the injury is not enough." *Donahue v. U.S.*, 634 F.3d 615, 623 (1st Cir. 2011). "[P]ursuant to the federal discovery rule," a claim does not accrue until the plaintiff knew or should have known of "both the fact of his or her injury ***and the***

7

***injury's likely causal connection with the putative defendant***." *Ouellette v. Beaupre*, 977 F.3d 127, 136 (1st Cir. 2020) (emphasis added). *Rotella v. Wood,* 528 U.S. 549, 555 (2000), cited in Reply 12, is fully consistent with the First Circuit's rule. *See Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 699 (6th Cir. 2022) (explaining that *Rotella* reinforced the established rule that a claim does not accrue until the plaintiff should have discovered that "the defendant harmed them.").

Thus, a claim for pre-abuse deliberate indifference does not accrue until a diligent plaintiff would have learned that an appropriate official knew of prior abuse and was deliberately indifferent to it. *Ouellette*, 977 F.3d at 140. Were it otherwise, such claims would routinely accrue before a reasonable student would have "the necessary factual predicate to file suit." *Id.* at 139. This would contradict the principle behind the discovery rule: "Limitations should not bar a claimant before he has a reasonable basis for believing he has a claim." *Marrapese v. Rhode Island*, 749 F.2d 934, 942 (1st Cir. 1984). And it "would be counter to Title IX's broad remedial purpose." *Snyder-Hill*, 48 F.4th at 699. Harvard provides no reason to deviate from every circuit court to address this issue.[7] *See id.* at 701 (citing "seven other circuits," ***including the First***, that follow the same rule).

### B. Plaintiffs' Title IX Claims Are Timely Under the Discovery Rule

Harvard does not appear to dispute that Plaintiff Kilburn's Title IX claim is timely under the injury-and-cause rule applied in *Ouellette*. For the first time in its Reply, however, Harvard argues that the Complaint implies that Plaintiffs Mandava and Czerwienski knew in 2017 that

---

[7] Harvard's cases do not support its position. Harvard's only circuit decision, *Twersky v. Yeshiva University*, supports Plaintiffs' position that a claim accrues under the discovery rule when "the plaintiff has or should have discovered the critical facts of both his injury ***and its cause***." 579 Fed. Appx. 7, 9-10 (2d Cir. 2014) (emphasis added). *Twersky* held that the plaintiffs' claims accrued when they should have known of the "school's awareness of and indifference to the abusive conduct." *Id.* To the extent that the court reached this conclusion because the plaintiffs knew their abuser was "employed by the school," this reasoning conflicts with the rule in the First Circuit. *See Ouellette*, 977 F.3d at 140. And the Sixth Circuit's decision in *Snyder-Hill* abrogates three of the cases Harvard cites. Compare Def. Reply 12 n.20 (citing *Adams*, *Bowling*, and *Anderson*) *with Snyder-Hill*, 48 F.4th at 706 (agreeing with the First Circuit that a plaintiff's "knowledge that [the defendant] employed [the abuser] is not enough" to start the clock). Finally, the unreported decisions in *Doe v. Univ. of S. Cal.* and *A.T. v. Everett Sch. Dist.* are against the weight of authority even in the Ninth Circuit. *See, e.g.*, *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 979-81 (N.D. Cal. 2020).

Harvard caused their injuries such that their Title IX claims are untimely under that rule. The Complaint alleges the opposite. In 2017, Mandava and Czerwienski knew of only two reports made about Comaroff to an official authorized to take corrective action: (1) one prior report of sexual harassment by HS 2 and (2) Czerwienski's *post*-retaliation complaint. Am. Compl. ¶¶ 61, 77.[8] Mandava and Czerwienski **did not** know that Harvard failed to respond to those complaints **in 2017** (and do **not** allege they were "disappointed" with Harvard's response). *Contra* Reply 13 (pointing to no such allegation). To the contrary, Plaintiffs "trusted that Harvard," informed of these reports, "would take action to stop [their professor's] pattern of misconduct" until they learned in 2020 that Harvard routinely failed do so. Am. Compl. ¶¶ 79, 143.

Plaintiffs' trust was not unreasonable. *See* Plfs Opp. at 25-26. More to the point at this stage, Harvard does not cite a **single case** to suggest that Plaintiffs "necessarily" acted unreasonably "as a matter of law." *See Ouellette*, 977 F.3d at 145; *Snyder-Hill*, 48 F.4th at 698. A reasonable student would not conclude that the school acted with *deliberate indifference* to a prior report of sexual harassment simply because the perpetrator later retaliated. *See Karasek*, 500 F. Supp. 3d at 971-72, 981 (student's claim did not accrue until she discovered the school's pattern of indifference); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 900-01 (W.D. Tex. 2019) (same); *see also Snyder-Hill*, 48 F.4th at 704 (claim for pre-abuse indifference does not accrue even if student knows "that [her own] complaint was mishandled"). Indeed, a reasonable student in Plaintiffs' position could plausibly infer that Comaroff retaliated because Harvard *had* approached him to address the complaints. Plfs Opp. 25 n.14. A court cannot conclude otherwise on a motion

---

[8] As Harvard agrees, Mandava and Czerwienski's complaints to other professors were not themselves complaints to officials with "authority to take corrective action" on the University's behalf and thus were not complaints to *Harvard* under Title IX. *See* Def. Br. 12 n.17. Thus, the failure of those professors to act (even if Plaintiffs were on notice of it) could not have put Plaintiffs on notice of their claim against the University. *See Snyder-Hill*, 48 F.4th at 705 (notice to school employees without "authority to take corrective action" is "not enough" to trigger accrual).

to dismiss. *See Snyder-Hill*, 48 F.4th at 706; *MacKenzie*, 2021 WL 7451166, at *3; Plfs Opp. 25.

Even if Plaintiffs had suspected Harvard's pre-retaliation deliberate indifference in 2017, their claims are still timely. Harvard has not shown (or even argued) that "that a reasonably diligent investigation would have *necessarily*" revealed to Plaintiffs that Harvard acted with deliberate indifference to HS 2's complaint, or that Harvard maintained a custom and practice of deliberate indifference, in 2017. *Ouellette*, 977 F.3d at 144 (emphasis added). To the contrary, it is plausible that a student in Mandava and Czerwienski's position—just threatened by a powerful professor for even *discussing* his misconduct—would not have probed further. And Plaintiffs would not have learned more if they had investigated. Harvard keeps its responses to Title IX complaints confidential, as Harvard argued emphatically in its efforts to seal its investigative reports. *See* Sept. 2, 2022 Tr. 14. Accordingly, Plaintiffs' pleadings plausibly suggest that a student in Plaintiffs' positions would not have investigated *and* learned the facts necessary to infer Harvard's deliberate indifference before October 26, 2018, and that Plaintiffs' Complaint was timely.

Thus, the Court cannot conclude there is "no doubt" that Plaintiffs' Title IX claims are untimely. *Blackstone*, 244 F.3d at 197. "This is a question of fact—one that is improper to resolve at the motion-to-dismiss stage." *Snyder-Hill*, 48 F.4th at 698, 705 ("[A] 12(b)(6) motion is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations.").

C. **The Continuing Violation Doctrine Applies to Plaintiffs' Title IX Claims**

Harvard's Reply fails to address any of Plaintiffs' authorities (including in the First Circuit) holding that the continuing violation doctrine applies to claims for deliberate indifference under Title IX and its analogue, § 1983. *See* Plfs' Opp. 9, 26-27 & nn.16 & 19, 30-31. These cases establish that deliberate indifference to a hostile environment is a textbook continuing violation: it does not "occur on any particular day"; it is an ongoing practice that continues "over a series of

10

days or perhaps years." *Morgan*, 536 U.S. at 103. Harvard *still* fails to explain why it believes the continuing violation doctrine is nonetheless a "poor fit" (Reply 13) for the "broad remedial purpose" of Title IX. *Snyder-Hill*, 48 F.4th at 699. And it fails to cite a single case to decide the issue in its favor. Def. Br. 13-14 (citing **one** district court case that did not decide this issue).

### D. Harvard Does Not Meaningfully Dispute that Kilburn Alleges a Continuing Violation Under Both Title IX and Massachusetts Law

Putting aside its unsupported claim that the doctrine does not apply to Title IX, Harvard no longer meaningfully disputes that Plaintiff Kilburn alleges a timely continuing violation. As Harvard does not dispute, the SJC froze "each and every civil statute of limitations" for 105 days in 2020. *Shaw's Supermarkets, Inc. v. Melendez*, 488 Mass. 338, 342 (2021). That tolling rule applies to Title IX claims because "when a federal statute is deemed to borrow a State's limitations period," as Title IX does, "the State's tolling rules are ordinarily borrowed as well." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 116 (2013). The SJC's tolling order applies to § 1983 claims for that reason. *Silva v. New Bedford*, No. 20-11866, 2022 WL 1473727, at *5 (D. Mass. May 10, 2022). Harvard does not explain why the same logic would not apply to Title IX, which also borrows the forum state's limitations period and its "tolling rules." *See Doe v. State Univ. of N.Y. Purchase Coll.*, No. 21-8417, 2022 WL 2972200, at *8 (S.D.N.Y. July 27, 2022) (New York's COVID tolling order applied to Title IX claim). Plaintiffs' federal **and** state law claims are therefore timely if they accrued after October 26, 2018 (three years and 105 days before they sued).

In its Reply, Harvard *again* concedes that Kilburn alleges "actionable harassment" through Fall 2018. Reply 14 n.21. Her claims are, therefore, indisputably timely. *See* Plfs' Opp. 29.

### E. Mandava and Czerwienski Allege Continuing Violations of Federal and State Law

***Mandava and Czerwienski also allege a continuing violation of Title IX***. Harvard's argument in Reply—that those Plaintiffs have not alleged a continuing violation because they have

11

alleged no discriminatory "act" within the limitations period (Reply 13-14)—is wrong on both the law and the facts. First, Harvard ignores that Plaintiffs allege a systemic continuing violation, which does *not* require a "discrete act of discrimination" in the limitations period. Plfs Opp. 27. "A university's ongoing and intentional failure" to remedy discrimination in its programs is likewise a "systemic violation" of Title IX. *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 974 (9th Cir. 2010). Because Harvard's de facto "policy or practice" of deliberate indifference to reports of sexual harassment and retaliation "continue[d] into the limitations period," Plaintiffs' claims are timely. Plfs' Opp. 27-28 (quoting *Jensen v. Frank*, 912 F.2d 517, 523 (1st Cir. 1990)).

In any event, the Complaint *does* allege specific, unlawful anchoring acts committed within the limitations period. Harvard *repeatedly* failed to respond to *multiple*, *specific* reports of discrimination by Comaroff *nearly every year* from at least 2016 through 2022, and these failures detracted from Mandava and Czerwienski's educational environment. To summarize, *inter alia*:

- In 2016-17, after ignoring warnings about Comaroff for four years, Harvard failed to address multiple reports that Comaroff sexually harassed HS 2 and thereby allowed Comaroff to threaten Mandava and Czerwienski. Am. Compl. ¶¶ 55-76.

- In 2017, Harvard received Czerwienski's report of retaliation but failed to investigate for almost *three years* while Comaroff's threat chilled Mandava and Czerwienski from discussing his behavior and caused them to alter their educational programs to avoid further retaliation. Am. Compl. ¶¶ 77-84. This continued into the limitations period. *Id.*

- As a result, during the limitations period, Comaroff harassed Mandava and Czerwienski's classmate (Kilburn); she and multiple other victims disclosed acts of harassment and retaliation to them and to Harvard; and Harvard failed to respond. *Id.* ¶¶ 86-117, 124-26, 143; *see* Plfs' Opp. at 31 (explaining that harassment and retaliation against others and institution's failure to remedy it contributes to hostile environment).

- In 2019, Harvard's Title IX Office ignored Mandava's complaint, along with Kilburn's, for *another year* while Comaroff continued to teach in the same department, leaving Plaintiffs vulnerable to further harassment and retaliation. Am. Compl. ¶¶ 114-18.

- In 2020, Comaroff and his allies retaliated against all three Plaintiffs by intimidating *multiple* witnesses (including HS 2) and spoliating evidence in Plaintiffs' investigation;

> Plaintiffs reported this to Harvard as retaliation, but Harvard did not investigate or punish Comaroff for it. *Id.* ¶¶ 64, 153-57; Plfs Opp. 7, 14, 16-17.

- From 2020-2022, Harvard conducted a clearly unreasonable investigation, took no apparent steps to prevent further retaliation by Comaroff and his allies against Plaintiffs, and allowed Comaroff to continue teaching the very next semester. Am. Compl. ¶¶ 146, 158-63, 179, 186, 187; Plfs Opp. 13-14.

- In 2022, leveraging Harvard's limited findings against Comaroff, Comaroff's allies disparaged Plaintiffs in three letters sent to their professional network and/or disseminated to the public. Am. Compl. ¶¶ 188-197; Plfs Opp. 17.

These specific allegations show a de facto "policy over several years … of ignoring and/or inadequately addressing [Comaroff]'s sexual misconduct" that Harvard continued by ignoring specific complaints within the limitations period. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (ongoing *de facto* "policy of ignoring and/or inadequately addressing [an employee's] sexual misconduct" and harassment against other inmates in prison anchored claim for deliberate indifference to sexual abuse under § 1983). This constitutes a continuing violation of Title IX, whether framed as systemic or serial violation of the statute. Plfs Opp. 28-30 (collecting cases); *see also Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 43 (D.D.C. 2018) (universities' "series of actions, *and inactions*" anchored Title IX claim (emphasis added)); *Stafford v. G.W. Univ.*, 578 F. Supp. 3d 25, 47 (D.D.C. 2022) ("all of the University's allegedly inadequate responses and non-responses to [student]'s complaints" constituted continuing violation); *cf. Carter v. Englander*, 2018 WL 6593934, at *3 (D.N.H. Aug. 22, 2018) (Section 1983 deliberate indifference claim timely because institution continued to ignore requests to treat medical condition) (citing *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009)).

Harvard's ongoing deliberate indifference also subjected Plaintiffs to an ongoing injury cognizable under Title IX: It left them "vulnerable" to further retaliation and "detract[ed] from [their] educational experience." Plfs Opp. 9, 17-19 (quoting the First Circuit). Comaroff continued

13

to teach on the same campus and in the same department where Plaintiffs studied and worked, and Plaintiffs continued to avoid courses and areas of focus to avoid him. Am. Compl. ¶¶ 80-84, 117; Plfs Opp 18-19. Because of Harvard's indifference, moreover, Comaroff sexually harassed and retaliated against Plaintiffs' classmates (including Kilburn) and he and his allies retaliated against **Plaintiffs themselves** during the limitations period. Plfs Opp. 17. Plaintiffs' Title IX claims are therefore timely under any application of the continuing violation doctrine. *Id.* at 5, 30-31.

### *Mandava and Czerwienski also state continuing violations of Massachusetts law.*

Plaintiffs' Opposition explains in detail why their state statutory claims are timely: because the conduct of Harvard and its agents constituted a continuing violation. *See* Plfs Opp. 28-31 & n.22. Under all three Massachusetts statutes, Harvard is vicariously liable for the acts of its agents, including Comaroff.[9] Under Massachusetts law, "a plaintiff who demonstrates a pattern of sexual harassment" or retaliation "that creates a hostile educational environment and that includes conduct within the three-year statute of limitations," including a failure to take corrective action, states a continuing violation. *Morrison v. N. Essex Cmty. Coll.*, 56 Mass. App. Ct. 784, 797 (2002); *see Youngblood v. Bos. Pub. Sch.*, No. 1584-309, 2020 WL 960319, at *4 (Mass. Super. Jan. 16, 2020) (retaliation and "failure to take corrective steps" anchored claim within limitations period (citing *Clifton v. Mass. Bay Transp. Auth.,* 445 Mass. 611, 616 (2005)). Harassment against others and an institution's failure to adequately respond also anchors a claim. *See* Plfs Opp. at 30-31. Comaroff's continued harassment and retaliation against Plaintiffs and others, and Harvard's failure to respond, were all related acts in the same pattern of abuse and indifference: They all involved the same professor and contributed to the hostile environment Plaintiffs faced. Plaintiffs'

---

[9] *Sarvis v. Bos. Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 95 (1999) (holding that MCRA incorporates respondeat superior liability); *Brooks v. Martha's Vineyard Transit Auth.*, 433 F. Supp. 3d 65, 75 (D. Mass. 2020) (MERA); *Doe v. Bradshaw*, 203 F. Supp. 3d 168, 190 (D. Mass. 2016) (Mass. Gen. Laws c. 214 § 1C).

allegations therefore state a claim for a continuing violation under state law. *Id.*[10]

### F. Plaintiffs' Title IX Claims Are Timely Under the Six-Year Statute of Limitations Generally Applicable to Actions for Breach of Contract in Massachusetts

In the alternative, even if Plaintiffs' claims were not timely under the discovery rule or the continuing violation doctrine, they would still be timely under the six-year statute of limitations applicable to contract actions in Massachusetts. *See* Plfs Opp. 27 n.18. Because Title IX does not specify a statute of limitations, courts must "borrow the most closely analogous statute of limitations in the forum state." *Riley v. Metro. Life Ins. Co.*, 744 F.3d 241, 244 (1st Cir. 2014). The Supreme Court has suggested that Title IX claims are analogous to a claim for the breach of a contract between Harvard and the federal government.[11] If so, then Massachusetts' six-year statute of limitations for breach of contract claims applies to Plaintiffs' Title IX claims. *See id.* at 245 (applying this six-year statute of limitations to federal ERISA claim, which the First Circuit found most analogous to a contract claim). Federal law points in the same direction. *See* 28 U.S.C.A. § 2416(a) (six-year statute of limitations for breach of government contract). Since all of the alleged harassment and retaliation against the Plaintiffs occurred within six years of filing (i.e., after February 8, 2016), Plaintiffs' claims are timely.

For the foregoing reasons, as well as those set forth in Plaintiffs' Opposition, Defendant's Motion to Dismiss the Amended Complaint should be denied.

---

[10] Even if it did not anchor a continuing violation, Harvard's deliberate indifference to Plaintiffs' complaints from 2019-22, and the retaliation and hostile environment Plaintiffs suffered in that period, would itself give rise to claims under both Title IX and state law. *See* Plfs' Opp. at 13-15, 19-20. Harvard's failure to respond to Czerwienski's report in 2017 could not have started the limitations clock on Harvard's *later* deliberate indifference to Mandava's 2019 complaint or on the various acts of harassment and retaliation Plaintiffs allege from 2019-22.

[11] *See, e.g., Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("When a federal-funds recipient violates conditions of Spending Clause legislation," like Title IX, "the wrong done is the failure to provide what the contractual obligation requires; and that wrong is 'made good' when the recipient compensates the Federal Government or a third-party beneficiary (as in this case) for the loss caused by that failure."). In *Barnes*, the Court held that Title IX only incorporates remedies "traditionally available in suits for breach of contract." *Id.* at 187.

Dated: October 24, 2022             Respectfully submitted,

                                           */s/ Russell Kornblith*
Russell Kornblith (*pro hac vice*)
Carolin Guentert (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
rkornblith@sanfordheisler.com
cguentert@sanfordheisler.com


Sean Ouellette (BBO# 697559)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
souellette@sanfordheisler.com

*Attorneys for Plaintiffs*