UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET CZERWIENSKI, LILIA KILBURN, and AMULYA MANDAVA<br><br>*Plaintiffs,*<br><br>v.<br><br>HARVARD UNIVERSITY AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE<br><br>*Defendants*. | Case No. 1:22-cv-10202-JGD |

**STIPULATION AND [PROPOSED] ORDER REGARDING
PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")**

Plaintiffs Margaret Czerwienski, Lilia Kilburn, and Amulya Mandava ("Plaintiffs") and Defendants Harvard University and the President and Fellows of Harvard College ("Harvard")[1] (collectively, the "Parties"), by and through their undersigned counsel, STIPULATE AND AGREE to the following Order for the production of Electronically Stored Information ("ESI") in the above-captioned matter (hereinafter, "this Order").

**I.  GENERAL**

1. This Order shall govern the discovery of Electronically Stored Information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Local Rules of the United States District Court for the District of Massachusetts, this Court's Standing Order in Civil Cases, and any other applicable orders and rules.

2. Nothing in this Order shall supersede the provisions of any applicable Protective Order in this case (hereinafter, "the Protective Order").

---

[1] Defendant President and Fellows of Harvard College is the appropriately-named entity, so the Parties refer to both named Defendants throughout this pleading as "Harvard."

1

3. This Order applies to any third-party discovery, pursuant to Fed. R. Civ. P. 45, if agreed to by the subpoena recipient. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

4. In the event of remand or transfer to other courts, this Order will remain in effect in all respects, until adopted by the remand or transferee court or replaced by a successor order.

5. Nothing in this Order shall be deemed to constitute a waiver of any objections a producing party may have with respect to any discovery request.

6. Subject to the Parties' objections and responses to requests for production of Documents, all non-privileged Documents that are identified as responsive to discovery requests shall be produced in the manner provided herein and consistent with the Protective Order.

## II.    DEFINITIONS

1. "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

2. "**Electronic Document or Data**" mean a Document or Data existing in electronic form at the time of collection, including but not limited to: email or other means of electronic communications, text messages, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF and .JPG).

3. "**Electronically Stored Information**" or "**ESI**" as used herein has the same meaning as in Fed. R. Civ. P. 26 and 34.

4. "**Hard-Copy Document**" means a Document existing in paper form at the time of collection.

5. "**Native Format**" means and refers to the format of ESI in which it was created, maintained, generated, and/or used by the producing party in the usual course of the party's

business and the party's regularly conducted activities.

6. "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or, (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

7. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

8. "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

9. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms are known as MD5 and SHA-1.

10. "**Confidentiality Designation**" means the legend affixed to Documents for confidential information as defined by, and subject to, the terms of the Protective Order.

11. "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

12. "**Load File**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving party's document review platform, and the correlation of such data in the platform.

13. "**Unitization**" means a set of paper-scanned images or electronically processed

files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

### III. COOPERATION

1. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the action.

2. **Custodians.** The Parties agree to meet and confer to identify all custodians who may possess potentially responsive ESI.

3. **Data Sources.** The Parties agree to meet and confer to identify custodial and noncustodial data sources (including but not limited to personal email accounts, e.g. Gmail) which may contain potentially responsive ESI.

4. **Backup and Archiving Systems**. The Parties agree to meet and confer to identify backup and archiving systems which may contain potentially responsive ESI.

5. At the request of any Party, the Parties agree to disclose and/or to meet and confer regarding the methodology and technology to be used to identify and review responsive ESI at any point in the e-discovery lifecycle, including, to the extent applicable, the use of Boolean key word searches, predictive coding, technology-assisted-review ("TAR"), the handling of any unsearchable ESI, and the handling of potentially responsive ESI contained in databases or stored in or by applications in an aggregated or structured form.

### IV. DATA SOURCES AND CULLING CRITERIA

1. Each party is responsible for meeting its obligation under the Federal Rules of Civil Procedure, the Local Rules for the District of Massachusetts, and any other applicable orders and rules, to identify and produce relevant ESI that is responsive to an opposing party's requests for the production of documents.

2. **Boolean Keyword Searches**. If Boolean keyword searches are to be performed by a producing Party, the Parties will meet and confer regarding proposed search criteria (e.g., "search terms"). The producing Party shall run agreed-upon search terms and, to the extent feasible,

4

provide a report showing (i) the "hit count" of the raw number of documents identified per search term, and (ii) the total number of unique documents with hits across all search terms and documents within families containing such unique documents. The Parties envision an iterative process whereby counsel for the producing Party and appropriate ESI liaisons will together review the report of the results of initial searches, and, in good faith, tailor the use of search terms so as to effectively identify relevant and potentially responsive material. Once the search terms are tailored and the relevant and potentially responsive material has been identified, the producing Party may produce all documents thereby identified or may conduct a further document-by-document attorney review in order to produce all responsive Documents identified therein. Nothing in this paragraph shall be understood to relieve a producing Party of its obligations under FRCP 26 and 34.

3. **Email Threading:** The Parties agree that they may use email threading to narrow the universe of documents for review. The Parties agree that they shall: (1) produce all responsive emails in a chain; and (2) produce each responsive email in the chain individually.

4. **Technology Assisted Review**. Parties may use technology assisted review, machine learning, or analytics tools to cull the document universe with the other Parties' consent. The Parties shall not unreasonably withhold such consent.

5. **Proprietary Software.** To the extent that native files are produced that require proprietary software for access and review, the producing party shall make reasonable efforts to supply the receiving party with a copy of such software to allow the receiving party to review the files or make such files available for review in an alternative format.

6. **Password Protected Files.** The Parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files, including commercially accessible software, when appropriate and feasible.

7. **System Files**. The Parties may exclude system-generated files and folders that are not likely to contain user-created files from their review (e.g., by DeNISTing). If the Parties choose

to do so, they will notify each other of that decision prior to production in writing.

8. **De-Duplication Across Custodians**. A Party is only required to produce a single copy of a responsive Document, and a Party shall make reasonable efforts to de-duplicate responsive Electronic Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians. The fields upon which the Hash Value of emails are calculated shall be disclosed by the producing party. The producing party will provide a Duplicate Custodian field in the production Load File sufficient for the receiving party to identify each custodian of a particular document that was eliminated through de-duplication as well as the file path in which the document was kept in the ordinary course in the duplicate custodian's files. If all recipient custodians are documented for removed documents in the Duplicate Custodian field, the producing party need only produce a single copy of the particular document; however, the receiving party may request a reasonable number of duplicate copies identifying particular custodians. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. For Documents, prior drafts of documents will not be considered duplicates, although the Parties acknowledge that a draft of a document may be responsive while a final copy is not, and vice-versa. The Custodian, FilePath, and EmailFolder will be included (for all available copies of a responsive Electronic Document) in the respective CUSTODIAN(S), FILEPATH(S), and EMAIL_FOLDER(S) fields in the production Load File. In addition, if the email files were collected directly from the Microsoft Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

9. **Issue Resolution.** The Parties will meet and confer to address any issues (including under or over inclusiveness of the results from application of the search terms, predictive coding, or technology assisted review) arising during the identification and review process. If the Parties cannot reach agreement on such an issue, either Party may present the dispute to the Court for

resolution pursuant to the applicable Federal Rules of Civil Procedure and Local Rules.

10. **Known Responsive Documents.** All documents known to be responsive to the Parties' requests for production of documents (subject to any objections thereto), which fall within the parameters to which the parties have agreed or the Court has set (i.e., with respect to subject matter, date range, etc.), must be produced or, if privileged, identified on the privilege log, regardless of whether or not they contain search terms or have been classified as responsive via predictive coding or technology assisted review.

## V.     FORMAT OF PRODUCTION

1. **Non-Redacted ESI Not Produced in Native Form**. Non-redacted ESI should be produced in a form no less "searchable" than it is maintained in the **normal** course of the producing party's business. ESI will be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance Load Files (depending on the reasonable preference of the requesting party), with searchable extracted text of the Document (at the document level in a .TXT file) and the Metadata fields listed in Exhibit A, if applicable (except that the Parties agree that Metadata fields may be redacted on any basis permissible under the Fed. R. Civ. P., so long as redactions are identified as such). If documents, such as email, are produced, the relationship between related documents (e.g., email attachments) should be preserved. All non-privileged Electronic Documents attached to an email should be produced contemporaneously and sequentially immediately after the parent email.

2. **ESI to be Produced in Native Form**. Non-redacted Excel files, .CSV files, other similar spreadsheet files, presentation (e.g., PowerPoint) files, and audio or video media files, or other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course, shall be produced in their Native Format, including the formulae embedded in the spreadsheet and any Metadata contained in the file. A party may request a reasonable number of nonprivileged Word documents to be produced in Native form with comments or tracked changes. The producing party reserves the right to object if the requests

become unreasonably onerous.  Files produced in  Native  Format shall be named either with a sequential Bates number followed by the file extension or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file extension. A placeholder TIFF with language "Document Produced in  Native" or similar language shall be included for each native file produced. To the extent native files, including electronic spreadsheets, are redacted, production shall be made in TIFF format in  accordance with the "Redacted Documents"-section. To the extent other file formats present specific challenges, the Parties agree to cooperate in good faith to address the format in which those documents should be produced.

      3.    **Redacted Documents**. The Parties may redact Documents or ESI on the following bases: attorney-client privilege; attorney work-product privilege; nonresponsive commercially sensitive information (including, but not limited to, information that constitutes or contains proprietary, financial, technical, or commercially sensitive competitive information that the Producing Party maintains as confidential in its business) or nonresponsive personally sensitive information (including, but not limited to, social security numbers, financial account numbers, credit card numbers, personal phone numbers, personal email addresses, home addresses, driver's license or state identification numbers, dates of birth, passwords, or the names of minor children); or other applicable  privilege or immunity from disclosure. The Parties will include tags in the text of the document and in the Metadata indicating (1) Privileged Material Redacted, (2) Nonresponsive Commercially Sensitive Information Redacted, or (3) Nonresponsive Personally Sensitive Information Redacted. For redacted  Electronic Documents, the Parties agree to produce as redacted single-page, black and white Group IV  TIFF images with Metadata contained in a separate file. If an Electronic Document is produced in redacted form, the same Metadata fields listed in Exhibit A shall be produced for a redacted Electronic Document except that fields may be redacted to the extent that they contain redactable data. Neither party waives the right to object to any redactions.

      4.    **Hard-Copy Documents**. Hard-Copy Documents should be produced as single-

page, black and white Group IV TIFF images (300 DPI resolution) with coded data contained in a separate file. The producing party shall also provide document-level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN indicating the beginning and ending Bates numbers, attachments ranges of all documents, and the custodian information. Hard-copy documents shall be OCR'd and the OCR text shall be provided as one .TXT file per document.

5. **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments shall be maintained as it existed in the original Document, so that each document will not be split, but instead the pages thereof shall be sequenced and saved together, as they existed in the original. Pages containing affixed notes, such as Post-Its, will be scanned with and without the note, with the image with the note preceding the image without the note.

6. **Databases, Structured and/or Application ESI**. The Parties shall produce responsive ESI from any relevant database, structured and/or application ESI in a reasonably usable production format. The Parties agree to meet and confer regarding the appropriate format(s) for production to enable review by the Parties.

7. **Social Media**. Relevant ESI from social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram) may be produced by capturing responsive information through "screenshots" or "screen captures" and converting the same into images along with corresponding OCR or extracted text, unless the Parties agree to perform bulk exports of accounts, such as by exporting a profile from LinkedIn or downloading a copy of an individual's Facebook data and archive. This paragraph shall not apply to text messages.

8. **Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "burned" on the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned

a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image besides confidentiality legends (where applicable) or redactions. The Parties acknowledge that production of multiple documents at once may at times result in a Bates number that obliterates or obscures information, and the Parties agree to work together in good faith to address specific issues as they arise.

9. **Confidentiality**. Electronic data produced in discovery may be labeled with Confidentiality Designations pursuant to the Protective Order. In the case of TIFF images, confidentiality legends shall be "burned" on the image at a location that does not unreasonably obliterate or obscure any information from the source document. The Parties acknowledge that production of multiple documents at once may at times result in a confidentiality branding that obliterates or obscures information, and the Parties agree to work together in good faith to address specific issues as they arise. For materials produced in Native Format, the producing party shall supply fielded data identifying the confidential treatment of each document designated for confidentiality or shall name the file with the Bates number followed by the Confidentiality Designation and the file extension. A failure to make a designation through fielded data or a naming of the file may be corrected by notifying the other side of the mistaken designations of confidential materials. Furthermore, nothing in this Order is intended to waive the protections set forth in the Protective Order.

10. **No Color.** Documents in color need not be produced in color as a matter of course except where color provides additional information (e.g. Apple message bubbles via iMessage or standard SMS/MMS or where color is apparently necessary to fully comprehend the document because categories are distinguished by different colors of text). Photographs shall also be produced in color. A party may request that a reasonable number of specifically identified documents (e.g., social media posts) be produced in a color .PDF or .JPG format.

11. **Production Media**. Documents shall be produced on CDs, DVDs, USB hard

drives, portable hard drives, or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The volume number and Bates number range(s) of the materials shall be included on the production media label or, where it is not practicable to do so, in an accompanying letter. If a producing party encrypts or "locks" a production, the producing party shall send, under separate correspondence, the password for decrypting the production.

## VI. PRIVILEGE AND WORK PRODUCT CLAIMS

1. **Privilege Log**. The Parties recognize that Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"). The Parties agree that if the following documents are privileged, they need not be included on a privilege log: (a) privileged materials or communications created by or for the Parties' counsel as part of the investigation, prosecution, or defense of this case, including privileged material and communications created by or for members of Harvard's Office of General Counsel; (b) internal communications within the legal team representing Plaintiffs or within the legal team representing Harvard (including Harvard's Office of General Counsel) or those non-attorneys acting at the direction of counsel acting in its capacity as counsel for Plaintiffs or Harvard; (c) communications between spouses during marriage; and (d) communications between and among the Plaintiffs or between and among Harvard faculty, employees and/or agents that contains the content of privileged communications with counsel; provided, however, that to the extent that such communications also contain non-privileged material, the Parties shall produce redacted copies of such communications.

2. **Clawback Protection**. The productions of hard-copy documents and ESI are subject to the Parties' rights under the Protective Order, the rules and practices of this Court, Fed. R. Civ. P. 26(b)(5), and Federal Rule of Evidence 502, to request the return of inadvertently produced discovery.

## VII. MISCELLANEOUS

1. **Objections Preserved.** Nothing in this Order shall be interpreted to require

disclosure of irrelevant information, information that the Court has ruled is not proportional to the needs of the case, or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy documents and ESI.

2.  **No Effect on Cost Shifting.** Each party shall bear its own costs of producing relevant ESI in its possession or control. This provision does not prohibit any party from seeking cost-sharing measures under the Federal Rules.

3.  **Protective Order**. All Documents produced by the Parties will be subject to the terms of the Protective Order, including but not limited to the terms regarding secure storage of Protected Material.

4.  **Modification**. This Order may be modified by a Stipulation of the Parties with approval of this Court or by the Court for good cause shown.

Date:   July 19, 2023                         Respectfully submitted,

                                              */s/ Russell Kornblith*
                                              Russell Kornblith (*pro hac vice*)
                                              Carolin Guentert (*pro hac vice*)
                                              **SANFORD HEISLER SHARP, LLP**
                                              1350 Avenue of the Americas, 31st Floor
                                              New York, New York 10019
                                              Telephone: (646) 402-5650
                                              rkornblith@sanfordheisler.com
                                              cguentert@sanfordheisler.com


                                              Sean Ouellette (BBO# 697559)
                                              **PUBLIC JUSTICE**
                                              1620 L Street NW, Suite 630
                                              WASHINGTON, DC 20036
                                              Telephone: (202) 797-8600
                                              souellette@publicjustice.net

                                              *Attorneys for Plaintiffs*

        */s/ Victoria L. Steinberg*
Victoria L. Steinberg, BBO #666482
Rebecca M. O'Brien, BBO #693592
CLOHERTY & STEINBERG LLP
33 Arch Street, Suite 3150
Boston, MA  02110
Telephone: (617) 481-0160
vsteinberg@clohertysteinberg.com
robrien@clohertysteinberg.com


Martin F. Murphy, BBO #363250
MANATT, PHELPS & PHILLIPS, LLP
177 Huntington Avenue
Boston, MA 02114
Telephone: (617) 646-1447
mfmurphy@manatt.com

*Attorneys for Harvard*

13